| Attorney or Party Name, Address, Telephone & FAX Nos., State Bar No. & Email Address | FOR COURT USE ONLY |
|---|---|
| **Tyneia G. Merritt, Esq. (SBN 235750)**<br>**MERRITT LAW, INC., APLC**<br>**10670 Civic Center Drive, Suite 210**<br>**Rancho Cucamonga, CA 91730**<br>**Tel: 909-476-0651**<br>**E-Fax: 909-303-9013**<br>**Email: tye@mlawinc.Com**<br><br><br>☐ *Movant appearing without an attorney*<br>☒ *Attorney for Movant* | |

## UNITED STATES BANKRUPTCY COURT
### CENTRAL DISTRICT OF CALIFORNIA - RIVERSIDE DIVISION

| In re:<br><br>**Peggy Irene Clelland *aka* Peggy Irene Casey and Joel Douglas Clelland *aka* Joel Douglas**<br><br><br><br><br><br><br>Debtor(s). | CASE NO.: **6:17-bk-10928-WJ**<br><br>CHAPTER: **7** |
|---|---|
| | **NOTICE OF MOTION AND MOTION FOR RELIEF FROM THE AUTOMATIC STAY UNDER 11 U.S.C. § 362 (with supporting declarations) (REAL PROPERTY)** |
| | DATE: **April 12, 2018**<br>TIME: **10:00 a.m.**<br>COURTROOM: **304** |

| **Movant:** | **Deutsche Bank National Trust Company, as Trustee, for IndyMac Home Equity Mortgage Loan Asset-backed Trust, Series 2006-H1** |
|---|---|

1. **Hearing Location:**

   ☐ 255 East Temple Street, Los Angeles, CA 90012          ☐ 411 West Fourth Street, Santa Ana, CA 92701
   ☐ 21041 Burbank Boulevard, Woodland Hills, CA 91367    ☐ 1415 State Street, Santa Barbara, CA 93101
   ☒ 3420 Twelfth Street, Riverside, CA 92501

2. Notice is given to the Debtor and trustee (*if any*)(Responding Parties), their attorneys (*if any*), and other interested parties that on the date and time and in the courtroom stated above, Movant will request that this court enter an order granting relief from the automatic stay as to Debtor and Debtor's bankruptcy estate on the grounds set forth in the attached Motion.

3. To file a response to the motion, you may obtain an approved court form at www.cacb.uscourts.gov/forms for use in preparing your response (optional LBR form F 4001-1.RFS.RESPONSE), or you may prepare your response using the format required by LBR 9004-1 and the Court Manual.

NtcMfr_CAC_X02                                                                                                                                                4126-N-7663
This form is mandatory. It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*June 2017*                                          Page 1                                          **F 4001-1.RFS.RP.MOTION**

4. When serving a response to the motion, serve a copy of it upon the Movant's attorney (or upon Movant, if the motion was filed by an unrepresented individual) at the address set forth above

5. If you fail to timely file and serve a written response to the motion, or fail to appear at the hearing, the court may deem such failure as consent to granting of the motion.

6. ☑ This motion is being heard on REGULAR NOTICE pursuant to LBR 9013-1(d). If you wish to oppose this motion, you must file and serve a written response to this motion no later than 14 days before the hearing and appear at the hearing.

7. ☐ This motion is being heard on SHORTENED NOTICE pursuant to LBR 9075-1(b). If you wish to oppose this motion, you must file and serve a response no later than (*date*) _____ and (*time*) _____; and, you may appear at the hearing.

   a. ☐ An application for order setting hearing on shortened notice was not required (according to the calendaring procedures of the assigned judge).

   b. ☐ An application for order setting hearing on shortened notice was filed and was granted by the court and such motion and order have been or are being served upon the Debtor and upon the trustee (*if any*).

   c. ☐ An application for order setting hearing on shortened notice was filed and remains pending. After the court rules on that application, you will be served with another notice or an order that specifies the date, time and place of the hearing on the attached motion and the deadline for filing and serving a written opposition to the motion.

Date: <u>March 9, 2018</u>

**MERRITT LAW, INC., APLC**
Printed name of law firm (*if applicable*)

**Tyneia G. Merritt, Esq.**
Printed name of individual Movant or attorney for Movant

/s/ Tyneia G. Merritt
Signature of individual Movant or attorney for Movant

This form is mandatory. It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*June 2017*                                                   Page 2                                      **F 4001-1.RFS.RP.MOTION**

# MOTION FOR RELIEF FROM THE AUTOMATIC STAY AS TO REAL PROPERTY

1. **Movant is the:**

   ☑ Holder: Movant has physical possession of a promissory note that either (1) names Movant as the payee under the promissory note or (2) is indorsed to Movant, or indorsed in blank, or payable to bearer.

   ☑ Beneficiary: Movant is either (1) named as beneficiary in the security instrument on the subject property (e.g., mortgage or deed of trust) or (2) is the assignee of the beneficiary. **SEE CONTINUATION PAGE FOR STATEMENT.**

   ☐ Servicing agent authorized to act on behalf of the Holder or Beneficiary.

   ☐ Other (*specify*):

2. **The Property at Issue (Property):**

   a. Address:

   *Street address*:    **1339 Alta Ave**
   *Unit/suite number*:
   *City, state, zip code*:    **Upland, California 91786**

   b. Legal description, or document recording number (including county of recording), as set forth in Movant's deed of trust (attached as Exhibit <u>2</u>): **2005-0940520 in San Bernardino County**

3. **Bankruptcy Case History:**

   a. A ☑ voluntary ☐ involuntary  bankruptcy petition under chapter ☑ 7 ☐ 11 ☐ 12 ☐ 13 was filed on (*date*): <u>2/7/2017</u>.

   b. ☐ An order to convert case to chapter ☐ 7 ☐ 11 ☐ 12 ☐ 13 was entered on (*date*) _____.

   c. ☐ A plan, if any, was confirmed on (*date*) _____.

4. **Grounds for Relief from Stay:**

   a. ☑ Pursuant to 11 U.S.C. § 362(d)(1), cause exists to grant Movant relief from stay as follows:

   (1) ☑ Movant's interest in the Property is not adequately protected.

      (A) ☐ Movant's interest in the Property is not protected by an adequate equity cushion.

      (B) ☐ The fair market value of the Property is declining and payments are not being made to Movant sufficient to protect Movant's interest against that decline.

      (C) ☐ Proof of insurance regarding the Property has not been provided to Movant, despite the Debtor's obligation to insure the collateral under the terms of Movant's contract with the Debtor.

   (2) ☑ The bankruptcy case was filed in bad faith.

      (A) ☐ Movant is the only creditor, or one of very few creditors, listed or scheduled in the Debtor's case commencement documents.

      (B) ☐ The Property was transferred to the Debtor either just before the bankruptcy filing or after the filing.

      (C) ☐ A non-individual entity was created just prior to the bankruptcy petition date for the sole purpose of filing this bankruptcy case.

      (D) ☑ Other bankruptcy cases have been filed in which an interest in the Property was asserted.

      (E) ☐ The Debtor filed only a few case commencement documents with the bankruptcy petition. Schedules and the statement of financial affairs (or chapter 13 plan, if appropriate) have not been filed.

      (F) ☐ Other (*see attached continuation page*)

This form is mandatory. It has been approved for use by the United States Bankruptcy Court for the Central District of California.

| In re:               (Short Title) | Chapter: 7 |
|---|---|
| **Peggy Irene Clelland** *aka* **Peggy Irene Casey and Joel Douglas Clelland** *aka* **Joel Douglas**<br>Debtor(s). | Case No.     **6:17-bk-10928-WJ** |

## CONTINUATION PAGE

### (MOVANT: Deutsche Bank National Trust Company, as Trustee, for IndyMac Home Equity Mortgage Loan Asset-backed Trust, Series 2006-H1)

ATTACHMENT 1.

1. STANDING STATEMENT:

Specialized Loan Servicing LLC services the loan on the Property referenced in this Motion. In the event the automatic stay in this case is modified, this case dismisses, and/or the Debtor obtains a discharge and a foreclosure action is commenced on the mortgaged property, the foreclosure will be conducted in the name of Movant or Movant's successor or assignee. Movant, directly or through an agent, has possession of the Note. The Note is either made payable to Movant or has been duly endorsed. Movant is the original mortgagee or beneficiary or the assignee of the Mortgage/Deed of Trust.

(3) ☐ (*Chapter 12 or 13 cases only*)

(A) ☐ All payments on account of the Property are being made through the plan.
☐ Preconfirmation ☐ Postconfirmation plan payments have not been made to the chapter 12 trustee or chapter 13 trustee.

(B) ☐ Postpetition mortgage payments due on the note secured by a deed of trust on the Property have not been made to Movant.

(4) ☐ The Debtor filed a Statement of Intentions that indicates the Debtor intends to surrender the Property.

(5) ☐ The Movant regained possession of the Property on (*date*) _____,
which is ☐ prepetition ☐ postpetition.

(6) ☐ For other cause for relief from stay, see attached continuation page.

b. ☑ Pursuant to 11 U.S.C. § 362(d)(2)(A), the Debtor has no equity in the Property; and, pursuant to § 362(d)(2)(B), the Property is not necessary to an effective reorganization.

c. ☐ Pursuant to 11 U.S.C. § 362(d)(3), the Debtor has failed, within the later of 90 days after the order for relief or 30 days after the court determined that the Property qualifies as "single asset real estate" as defined in 11 U.S.C. § 101(51B) to file a reasonable plan of reorganization or to commence monthly payments.

d. ☐ Pursuant to 11 U.S.C. § 362(d)(4), the Debtor's filing of the bankruptcy petition was part of a scheme to delay, hinder, or defraud creditors that involved:

(1) ☐ The transfer of all or part ownership of, or other interest in, the Property without the consent of Movant or court approval; or

(2) ☐ Multiple bankruptcy cases affecting the Property.

5. ☐ **Grounds for Annulment of the Stay.** Movant took postpetition actions against the Property or the Debtor.

a. ☐ These actions were taken before Movant knew the bankruptcy case had been filed, and Movant would have been entitled to relief from the stay to proceed with these actions.

b. ☐ Movant knew the bankruptcy case had been filed, but Movant previously obtained relief from stay to proceed with these enforcement actions in prior bankruptcy cases affecting the Property as set forth in Exhibit ____.

c. ☐ Other (*specify*):

6. **Evidence in Support of Motion: (*Declaration(s) MUST be signed under penalty of perjury and attached to this motion*)**

a. The REAL PROPERTY DECLARATION on page 6 of this motion.

b. ☐ Supplemental declaration(s).

c. ☑ The statements made by Debtor under penalty of perjury concerning Movant's claims and the Property as set forth in Debtor's case commencement documents. Authenticated copies of the relevant portions of the case commencement documents are attached as Exhibit **4**.

d. ☐ Other: The Loan Modification Agreement attached as Exhibit _____.

7. ☐ **An optional Memorandum of Points and Authorities is attached to this motion.**

This form is mandatory. It has been approved for use by the United States Bankruptcy Court for the Central District of California.

**Movant requests the following relief:**

1. Relief from the stay is granted under: ☑ 11 U.S.C. § 362(d)(1) ☑ 11 U.S.C. § 362(d)(2) ☐ 11 U.S.C. § 362(d)(3).

2. ☑ Movant (and any successors or assigns) may proceed under applicable nonbankruptcy law to enforce its remedies to foreclose upon and obtain possession of the Property.

3. ☑ Movant, or its agents, may, at its option, offer, provide and enter into a potential forbearance agreement, loan modification, refinance agreement or other loan workout or loss mitigation agreement. Movant, through its servicing agent, may contact the Debtor by telephone or written correspondence to offer such an agreement.

4. ☐ Confirmation that there is no stay in effect.

5. ☐ The stay is annulled retroactive to the bankruptcy petition date. Any postpetition actions taken by Movant to enforce its remedies regarding the Property shall not constitute a violation of the stay.

6. ☐ The co-debtor stay of 11 U.S.C. §1201(a) or § 1301(a) is terminated, modified or annulled as to the co-debtor, on the same terms and conditions as to the Debtor.

7. ☑ The 14-day stay prescribed by FRBP 4001(a)(3) is waived.

8. ☐ A designated law enforcement officer may evict the Debtor and any other occupant from the Property regardless of any future bankruptcy filing concerning the Property for a period of 180 days from the hearing on this Motion:
   ☐ without further notice, or ☐ upon recording of a copy of this order or giving appropriate notice of its entry in compliance with applicable nonbankruptcy law.

9. ☐ Relief from the stay is granted under 11 U.S.C. § 362(d)(4): If recorded in compliance with applicable state laws governing notices of interests or liens in real property, the order is binding in any other case under this title purporting to affect the Property filed not later than 2 years after the date of the entry of the order by the court, except that a debtor in a subsequent case under this title may move for relief from the order based upon changed circumstances or for good cause shown, after notice and hearing.

10. ☐ The order is binding and effective in any bankruptcy case commenced by or against any debtor who claims any interest in the Property for a period of 180 days from the hearing of this Motion:
   ☐ without further notice, or ☐ upon recording of a copy of this order or giving appropriate notice of its entry in compliance with applicable nonbankruptcy law.

11. ☐ The order is binding and effective in any future bankruptcy case, no matter who the debtor may be:
   ☐ without further notice, or ☐ upon recording of a copy of this order or giving appropriate notice of its entry in compliance with applicable nonbankruptcy law.

12. ☑ Upon entry of the order, for purposes of Cal. Civ. Code § 2923.5, the Debtor is a borrower as defined in Cal. Civ. Code § 2920.5(c)(2)(C).

13. ☐ If relief from stay is not granted, adequate protection shall be ordered.

14. ☐ See attached continuation page for other relief requested.

Date: <u>   March 9, 2018   </u>

**MERRITT LAW, INC., APLC**
Printed name of law firm (*if applicable*)

**Tyneia G. Merritt, Esq.**
Printed name of individual Movant or attorney for Movant

*/s/ Tyneia G. Merritt*
Signature of individual Movant or attorney for Movant

MtnMfr_CAC_R02                                                                                                                                4126-N-7663

This form is mandatory. It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*June 2017*                                              Page 5                              **F 4001-1.RFS.RP.MOTION**

# REAL PROPERTY DECLARATION

I, (print name of Declarant) _____ **Shane Ellis** _____, declare:

1. I have personal knowledge of the matters set form in this declaration and, if called upon to testify, I could and would competently testify thereto. I am over 18 years of age. I have knowledge regarding Movant's interest in the real property that is the subject of this Motion (Property) because (specify):

   a. ☐ I am the Movant.

   b. ☐ I am employed by Movant as (state title and capacity):

   c. ☑ Other (specify): I am a(n) _____ **Assistant Vice President** _____ **employed by Specialized Loan Servicing LLC ("SLS"), and am authorized to sign this Declaration on behalf of SLS, as servicer for Movant: Deutsche Bank National Trust Company, as Trustee, for IndyMac Home Equity Mortgage Loan Asset-backed Trust, Series 2006-H1.**

2. a. ☐ I am one of the custodians of the books, records and files of Movant that pertain to loans and extensions of credit given to Debtor concerning the Property. I have personally worked on the books, records and files, and as to the following facts, I know them to be true of my own knowledge or I have gained knowledge of them from the business records of Movant on behalf of Movant. These books, records and files were made at or about the time of the events recorded, and which are maintained in the ordinary course of Movant's business at or near the time of the actions, conditions or events to which they relate. Any such document was prepared in the ordinary course of business of Movant by a person who had personal knowledge of the event being recorded and had or has a business duty to record accurately such event. The business records are available for inspection and copies can be submitted to the court if required.

   b. ☑ Other (see attached):

3. The Movant is:

   a. ☑ Holder: Movant has physical possession of a promissory note that (1) names Movant as the payee under the promissory note or (2) is indorsed to Movant, or indorsed in blank, or payable to bearer. A true and correct copy of the note, with affixed allonges/indorsements, is attached as Exhibit **1**.

   b. ☑ Beneficiary: Movant is either (1) named as beneficiary in the security instrument on the subject property (e.g., mortgage or deed of trust) or (2) is the assignee of the beneficiary. True and correct copies of the recorded security instrument and assignments are attached as Exhibit **2&3**

   c. ☐ Servicing agent authorized to act on behalf of the:

      ☐ Holder.

      ☐ Beneficiary.

   d. ☐ Other (specify):

4. a. The address of the Property is:

   Street address:      **1339 Alta Ave**
   Unit/suite no.:
   City, state, zip code:   **Upland, California 91786**

   b. The legal description of the Property or document recording number (including county of recording) set forth in the Movant's deed of trust is: **2005-0940520 in San Bernardino County**

This form is mandatory. It has been approved for use by the United States Bankruptcy Court for the Central District of California.

5. Type of property (*check all applicable boxes*):

   a.  ☑  Debtor's principal residence         b.  ☐  Other residence

   c.  ☐  Multi-unit residential                d.  ☐  Commercial

   e.  ☐  Industrial                       f.  ☐  Vacant land

   g.  ☐  Other (*specify*):

6. The nature of Debtor's interest in the Property:

   a.  ☐  Sole owner

   b.  ☑  Co-owner(s) (*specify*): **Peggy Clelland and Joel Clelland**

   c.  ☐  Lienholder (*specify*):

   d.  ☐  Other (*specify*):

   e.  ☑  Debtor ☑ did ☐ did not list the Property in the Debtor's schedules.

   f.  ☑  The Debtor acquired the interest in the Property by ☐ grant deed ☐ quitclaim deed ☑ trust deed.
The deed was recorded on (*date*) **12/12/2005**.

7. Movant holds a ☑ deed of trust ☐ judgment lien ☐ other (*specify*) _____
that encumbers the Property.

   a.  ☑  A true and correct copy of the document as recorded is attached as Exhibit **2**.

   b.  ☑  A true and correct copy of the promissory note or other document that evidences the Movant's claim is attached as Exhibit **1**.

   c.  ☑  A true and correct copy of the assignment(s) transferring the beneficial interest under the note and deed of trust to Movant is attached as Exhibit **3**.

8. Amount of Movant's claim with respect to the Property:

| | PREPETITION | POSTPETITION | TOTAL |
|---|---|---|---|
| a. Principal (including any deferred): | | | $ 121,891.79 |
| b. Accrued interest: | | | $ 12,496.50 |
| c. Late charges: | | | $ 727.38 |
| d. Costs (attorney's fees, foreclosure fees, other costs): | | | $ 79.45 |
| e. Advances (property taxes, insurance): | | | $ 0.00 |
| f. Less suspense account or partial balance paid: | | | $ 0.00 |
| g. TOTAL CLAIM as of (*date*): **2/27/2018** | | | $ 135,195.12 |

   h.  ☐  Loan is all due and payable because it matured on (*date*)

9. Status of Movant's foreclosure actions relating to the Property (*fill the date or check the box confirming no such action has occurred*).

   a.  Notice of default recorded on (*date*) _____ or ☑ none recorded.

   b.  Notice of sale recorded on (*date*) _____ or ☑ none recorded.

   c.  Foreclosure sale originally scheduled for (*date*) _____ or ☑ none scheduled.

   d.  Foreclosure sale currently scheduled for (*date*) _____ or ☑ none scheduled.

   e.  Foreclosure sale already held on (*date*) _____ or ☑ none held.

   f.  Trustee's deed upon sale already recorded on (*date*) _____ or ☑ none recorded.

This form is mandatory. It has been approved for use by the United States Bankruptcy Court for the Central District of California.

10. Attached (*optional*) as Exhibit _____ is a true and correct copy of a POSTPETITION statement of account that accurately reflects the dates and amounts of all charges assessed to and payments made by the Debtor since the bankruptcy petition date.

11. ☑ (*Chapter 7 and 11 cases only*) Status of Movant's loan:

   a. Amount of current monthly payment as of the date of this declaration: **$1,567.80** for the month of **February 2018.**

   b. Number of payments that have become due and were not made: **26**. Total amount: **$38,654.93**

   c. Future payments due by time of anticipated hearing date (*if applicable*): **3/20/2018**

     An additional payment of **$1,445.08** will come due on (*date*) **3/20/2018**, and on the **20th** day of each month thereafter. If the payment is not received within **NA** days of said due date, a late charge of **NA** will be charged to the loan.

   d. The fair market value of the Property is **$413,306.00**, established by:

     (1) ☐ An appraiser's declaration with appraisal is attached as Exhibit .

     (2) ☐ A real estate broker or other expert's declaration regarding value is attached as Exhibit ___.

     (3) ☑ A true and correct copy of relevant portion(s) of the Debtor's schedules is attached as Exhibit 4.

     (4) ☐ Other (*specify*):

   e. **Calculation of equity/equity cushion in property:**
     Based upon ☐ a preliminary title report ☑ the Debtor's admissions in the schedules filed in this case, the Property is subject to the following deed(s) of trust or lien(s) in the amounts specified securing the debt against the Property:

| | Name of Holder | Amount as Scheduled by Debtor (*if any*) | Amount known to Declarant and Source |
|---|---|---|---|
| 1st deed of trust: | **Cenlar** | $265,390.00 | $ **265,390.00** |
| 2nd deed of trust: | **Movant** | $ | $ **135,195.12** |
| 3rd deed of trust: | | $ | $ |
| Judgment liens: | | $ | $ |
| Taxes: | | $ | $ |
| Other: | | $ | $ |
| **TOTAL DEBT: $ 400,585.12** | | | |

   f. Evidence establishing the existence of these deed(s) of trust and lien(s) is attached as Exhibit **2&3** and consist of:

     (1) ☐ Preliminary title report.

     (2) ☑ Relevant portions of the Debtor's schedules.

     (3) ☑ Other (specify): **Deed of Trust and Assignment of Deed of Trust**

   g. ☑ **11 U.S.C. § 362(d)(1) - Equity Cushion:**
     I calculate that the value of the "equity cushion" in the Property exceeding Movant's debt and any lien(s) senior to Movant's debt is **$147,906.00** and is **35%** of the fair market value of the Property.

   h. ☑ **11 U.S.C. § 362(d)(2)(A) - Equity:**
     By subtracting the total amount of all liens on the Property from the value of the Property as set forth in Paragraph 11(e) above, I calculate that the Debtor's equity in the Property is **$12,720.88**.

DecMfr_CAC_R02                                    4126-N-7663

This form is mandatory. It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*June 2017*                Page 8              **F 4001-1.RFS.RP.MOTION**

i. ☑ Estimated costs of sale: **$33,064.48** (estimated based upon 8% of estimated gross sales price)

j. ☐ The fair market value of the Property is declining because:

12. ☐ (Chapter 12 and 13 cases only) Status of Movant's loan and other bankruptcy case information:

a. A 341(a) meeting of creditors is currently scheduled for (or concluded on) the following date: _____.
A plan confirmation hearing currently scheduled for (or concluded on) the following date: _____.
A plan was confirmed on the following date (if applicable): _____.

b. Postpetition preconfirmation payments due BUT REMAINING UNPAID since the filing of the case:

| Number of Payments | Number of Late Charges | Amount of Each Payment or Late Charge | Total |
|---|---|---|---|
| | | $ | $ |
| | | $ | $ |
| | | $ | $ |
| | | $ | $ |
| | | $ | $ |
| | | $ | $ |

(See attachment for additional breakdown of information attached as Exhibit ____.)

c. Postpetition postconfirmation payments due BUT REMAINING UNPAID since the filing of the case:

| Number of Payments | Number of Late Charges | Amount of Each Payment or Late Charge | Total |
|---|---|---|---|
| | | $ | $ |

d. Postpetition advances or other charges due but unpaid:                                    $_____
(For details of type and amount, see Exhibit ___)

e. Attorneys' fees and costs:                                                                              $_____
(For details of type and amount, see Exhibit ___)

f. Less suspense account of partial paid balance:                                          $_____**0.00**

                        TOTAL POSTPETITION DELINQUENCY:                        $_____

g. Future payments due by time of anticipated hearing date (if applicable): _____
An additional payment of $_____ will come due on (date) _____ and on the ___ day of each month thereafter. If the payment is not received by the N/A day of the month, a late charge of $ N/A will be charged to the loan.

h. Amount and date of the last 3 post-petition payments received from the Debtor in good funds, regardless of how applied (if applicable):

$_____    received on (date)    _____
$_____    received on (date)    _____
$_____    received on (date)    _____

i. ☐ The entire claim is provided for in the Chapter 12 or 13 plan and postpetition plan payments are delinquent. A plan payment history is attached as Exhibit ___. See attached declaration(s) of chapter 12 trustee or 13 trustee regarding receipt of payments under the plan (attach LBR form F4001-1.DEC.AGENT.TRUSTEE).

DecMfr_CAC_R02                                                                                                      4126-N-7663
This form is mandatory. It has been approved for use by the United States Bankruptcy Court for the Central District of California.

June 2017                                        Page 9                                        F 4001-1.RFS.RP.MOTION

13. ☐  Proof of insurance regarding the Property has not been provided to Movant, despite the Debtor's obligation to insure the collateral under the terms of Movant's contract with the Debtor.

14. ☐  The court determined on (*date*) _____ that the Property qualifies as "single asset real estate" as defined in 11 U.S.C. § 101(51B). More than 90 days have passed since the filing of the bankruptcy petition; more than 30 days have passed since the court determined the Property qualifies as single asset real estate; the Debtor has not filed a plan of reorganization that has a reasonable possibility of being confirmed within a reasonable time; or the Debtor has not commenced monthly payments to Movant as required by 11 U.S.C. § 362(d)(3).

15. ☐  The Debtor's intent is to surrender the Property. A true and correct copy of the Debtor's statement of intentions is attached as Exhibit ___.

16. ☐  Movant regained possession of the Property on (date) _____, which is ☐ prepetition ☐ postpetition.

17. ☐  The bankruptcy case was filed in bad faith:

   a.  ☐  Movant is the only creditor or one of few creditors listed in the Debtor's case commencement documents.

   b.  ☐  Other bankruptcy cases have been filed in which an interest in the Property was asserted.

   c.  ☐  The Debtor filed only a few case commencement documents. Schedules and a statement of financial affairs (or chapter 13 plan, if appropriate) have not been filed.

   d.  ☐  Other (*specify*):

18. ☑  The filing of the bankruptcy petition was part of a scheme to delay, hinder, or defraud creditors that involved:

   a.  ☐  The transfer of all or part ownership of, or other interest in, the Property without the consent of Movant or court approval. See attached continuation page for facts establishing the scheme.

   b.  ☑  Multiple bankruptcy cases affecting the Property include:

   1.  Case name: Peggy Irene Clelland_____
       Chapter: 7          Case number: 6:16-bk-19876-WJ
       Date dismissed: 1/18/2017                          Date discharged: _____ Date filed:
       11/04/2016.
       Relief from stay regarding the Property ☐ was ☐ was not granted.

   2.  Case name: _____
       Chapter: _____  Case number: _____
       Date dismissed: _____                         Date discharged: _____ Date filed:
       _____
       Relief from stay regarding the Property ☐ was ☐ was not granted.

   3.  Case name: _____
       Chapter: _____  Case number: _____
       Date dismissed: _____                         Date discharged: _____ Date filed:
       _____
       Relief from stay regarding the Property ☐ was ☐ was not granted.

   ☐  See attached continuation page for information about other bankruptcy cases affecting the Property.

   ☐  See attached continuation page for facts establishing that the multiple bankruptcy cases were part of a scheme to delay, hinder, or defraud creditors.

This form is mandatory. It has been approved for use by the United States Bankruptcy Court for the Central District of California.

19. ☐ Enforcement actions taken after the bankruptcy petition was filed are specified in the attached supplemental declaration(s).

   a. ☐ These actions were taken before Movant knew the bankruptcy case had been filed, and Movant would have been entitled to relief from stay to proceed with these actions.

   b. ☐ Although Movant knew the bankruptcy case was filed, but Movant previously obtained relief from stay to proceed with these enforcement actions in prior bankruptcy cases affecting the Property as set forth in Exhibit ____.

   c. ☐ For other facts justifying annulment, see attached continuation page.


I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.


_3/7/18_____        **Shane Ellis**_____        _____
Date                    Printed Name                   Signature

This form is mandatory. It has been approved for use by the United States Bankruptcy Court for the Central District of California.

# EXHIBIT 1

| Peggy Clelland | IndyMac Bank, F.S.B., a federally |
| | chartered savings bank |
| | 3465 East Foothill Boulevard |
| | Pasadena, CA 91107 |
| | **Lender's Name and Address** |
| | "We," "us" or "our" means the lender named above. |
| **Address** | No. Loan No: |
| 1339 Alta Ave | Date November 7, 2005 |
| Upland, CA 91786 | Credit Limit $ 125,000.00 |
| **Borrower's Name and Address** | Draw Period 120 MONTHS |
| "You" or "your" means each borrower above, | Repayment Period 120 MONTHS |
| jointly and severally. | Maturity Date: December 15, 2025 |

## HOME EQUITY LINE OF CREDIT

1. **GENERALLY:** This agreement (the "Agreement") sets out the terms and conditions of your home equity line of credit (the "Line of Credit" or the "Line of Credit Account"). Many of the terms we use in this Agreement have special meanings:

   - The "Line of Credit Account Balance" is the sum of the unpaid principal of loans made under your Line of Credit, plus unpaid but earned finance charges, plus any costs, expenses, and fees that are due.
   - The "Credit Limit" is the maximum amount of principal we ordinarily will allow you to owe us under your Line of Credit at any time.
   - The "Billing Cycle" means the period of time normally covered by monthly periodic statements and includes such period of time even when a statement is not sent because there is no balance on your Line of Credit Account for that period.
   - An "Equity Card" is any credit card we issue to allow you to obtain advances on your Line of Credit.
   - The "Draw Period" is the period during which you may request advances on your Line of Credit.
   - The "Repayment Period" is the period during which you must repay your Line of Credit Account Balance and may not request further advances.

   If any term of this Agreement violates any law or for some other reason is not enforceable, the term will not be part of this Agreement.

2. **PROMISE TO PAY:** You promise to pay to us, or our order, the total principal of all loans made under your Line of Credit, together with all finance charges, costs, expenses, and fees for which you are responsible under this Agreement. If there is more than one of you, each is jointly and severally liable on this Agreement. This means that we can require any one of you to pay all amounts due under this Agreement, including loans made to any of you, even if in excess of the authorized Credit Limit. Each of you authorizes any other Borrower, on his or her request alone, to cancel the Line of Credit, request and receive advances of principal under your Line of Credit, and to do all actions in connection with the terms of this Agreement. We can release any of you from responsibility under this Agreement, and the others will remain fully responsible hereunder.

3. **TAX DEDUCTIBILITY:** You understand that we (including our employees and representatives) do not make any representations or warranties to you about the tax consequences -- including the deductibility of interest or fees -- of you establishing or using this Line of Credit, and we will not be liable if interest or fees are not deductible. You should consult a tax advisor regarding the deductibility of interest and charges under your Line of Credit.

4. **REQUESTING A LOAN:** During the Draw Period, you may request a loan under your Line of Credit by the following methods:

   - You write a special check that we have given you for this purpose (the "Equity Check").
   - You use an Equity Card for purchase transactions or cash advances.
   - You authorize us to pay a designated third person or account.

   When you request a loan, we will advance exactly the amount you request. The smallest amount we will advance to you when you use an Equity Check is $ 250.00 (the "Minimum Advance"). We will make the advance by depositing the amount in your transaction account, by advancing the money directly to you, or by paying a designated third person or account, depending on how we agree to make the advance. We will record the amount as a loan in your Line of Credit Account.

**IndyMac Bank**
**Multistate HELOC Agreement - I/O Min Pay**

Page 1 of 9

(0409) VMP Mortgage Solutions, Inc. (800)521-7291

1064
9/04

If you request a loan by writing an Equity Check for less than the Minimum Advance, we may, at our option, grant the request. However, granting the request does not mean we will be required to grant requests for less than the Minimum Advance in the future. We always have the option to deny any such request.

By signing below, each of you requests that we issue each of you an Equity Card. Your use of this Equity Card at automated teller machines is subject to our rules relating to automated teller machine transactions.

We will not ordinarily grant any request for a loan that would cause the unpaid principal balance of your Line of Credit Account to be greater than the Credit Limit listed in this Agreement. We may, at our option, grant such a request without obligating ourselves to do so in the future.

Loans under your Line of Credit may be for any lawful purpose, except that you may not use such loans to pay amounts due on your Line of Credit Account. You will notify us immediately in the event any of your Equity Checks or any of your Equity Cards are lost or stolen.

**5.**     **HOW PERIODIC FINANCE CHARGES ARE COMPUTED:** Finance charges begin to accrue immediately when we make a loan to you. To figure the finance charge for a Billing Cycle, we apply a daily periodic rate of finance charge to the "average daily balance" of your Line of Credit Account for the Billing Cycle. We then multiply that figure by the number of days in the Billing Cycle. The average daily balance is computed as follows. First we take your Line of Credit Account Balance at the beginning of each day and subtract any unpaid finance charges that are due. Next, we subtract the portion of any payments or credits received that day that apply to the repayment of your loans. (A portion of each payment you make is applied to finance charges.) Then we add any new loans made that day. This gives us the daily balance. Then we add up all the daily balances for the Billing Cycle and divide the total by the number of days in the Billing Cycle. This gives us the "average daily balance."

The paragraph checked below applies to this Agreement.

[X] Until the end of the ___1st___ Billing Cycle after the date of this Agreement (the "Initial Rate Period"), the daily periodic rate of **FINANCE CHARGE** is _0.010932_ % which corresponds to an **ANNUAL PERCENTAGE RATE** of ___3.990___ %. The annual percentage rate corresponding to the periodic rate includes interest and not other costs.

[ ] Until the end of the _____ Billing Cycle after the date of this Agreement (the "Initial Rate Period"), the daily periodic rate of finance charge will be determined by discounting the "base rate" described below under the heading **Variable Rate** by _____ percentage points. On the date of this Agreement, this calculation results in a daily periodic rate of **FINANCE CHARGE** of _____ %, which corresponds to an **ANNUAL PERCENTAGE RATE** of _____ %. The annual percentage rate corresponding to the periodic rate includes interest and not other costs.

The periodic rate and corresponding annual percentage rate described above are the initial rates assessed under this Line of Credit, and are not based on the formula used for later rate adjustments. Had these rates been based on that formula, the daily periodic rate of **FINANCE CHARGE** would have been _0.021233_ %, which corresponds to an **ANNUAL PERCENTAGE RATE** of ___7.750___ %. At the end of the Initial Rate Period specified above, the rates will be subject to further adjustments and limitations, as described below under the heading **Variable Rate**.

**6.**     **VARIABLE RATE:** The "annual percentage rate" referred to in this section is the annual rate that corresponds to the periodic rate applied to the balance as described above. The annual percentage rate may change, and will be _750/1000ths_____ percentage points ( _0.750_ ) above the following "base rate:" the highest base rate on corporate loans posted at large U.S. money center commercial banks as published in the Money Rates table of The Wall Street Journal as the Prime Rate. The annual percentage rate may increase if this "base rate" increases. An increase will take effect on the first day of the Billing Cycle. An increase will result in an increase in the finance charge and it may have the effect of increasing your periodic minimum payment. The annual percentage rate will not increase more often than once a month. A decrease will have the opposite effect of an increase described above.

If the base rate changes more frequently than the annual percentage rate, we will always use the base rate in effect on the day we adjust the annual percentage rate to determine the new annual percentage rate. In such a case, we will ignore any changes in the base rate that occur between annual percentage rate adjustments.

This corresponding **ANNUAL PERCENTAGE RATE** will never exceed 18%, and will never exceed the highest allowable rate for this type of Agreement as determined by applicable state or federal law.

**See the Fee Schedule attached hereto and made a part hereof for additional finance charges and other charges on your Line of Credit.**

7.  **MONTHLY PAYMENTS:** We will send you a periodic statement for each Billing Cycle in which there is a balance owing under your Line of Credit, or a credit balance, or a finance charge is imposed. The periodic statement will show, among other things, the amount of the minimum monthly payment (the "Minimum Payment") and the date by which it is due. You must pay us at least the Minimum Payment indicated on the periodic statement by the date indicated on the statement.

During the **Draw Period**, the Minimum Payment is the amount, if any, by which your outstanding principal loan balance exceeds your Credit Limit, plus the greater of: (a) $100.00; or (b) the amount of accrued but unpaid finance charges, late charges, and any other charges authorized by this Agreement, including, without limitation, any expenses or advances incurred by us under the Security Instrument, as described below under the heading **Security**. During the Draw Period the minimum payment may not fully repay the principal that is outstanding on your Line of Credit.

During the **Repayment Period**, the Minimum Payment is the amount, if any, by which your outstanding principal loan balance exceeds your Credit Limit, plus: (a) the amount of accrued but unpaid finance charges, late charges, and any other charges authorized by this Agreement, including, without limitation, any expenses or advances incurred by us under the Security Instrument; and (b) _____.8333_____ % of the principal balance outstanding on the last day of the Draw Period.

If your Minimum Payment includes any other items authorized by this Agreement, we will so advise you, and the periodic statement will include an itemization of such amounts.

You must send all payments to our attention at the address indicated on the periodic statement.

**FINAL PAYMENT:** On the maturity date listed in this Agreement, you must pay the amount of any remaining Line of Credit Account Balance outstanding. The minimum payments may not be sufficient to fully repay the principal that is outstanding on your Line of Credit. If they are not, you will be required to pay the entire outstanding balance in a single balloon payment.

We are not obligated to refinance your loan at that time, but will consider your request to do so. If you refinance this account at maturity, you may have to pay some or all of the closing costs normally associated with a new loan even if you obtain financing from us.

8.  **ADDITIONAL REPAYMENT TERMS:** If your Line of Credit Account Balance on a payment date is less than the amount of the Minimum Payment, your minimum monthly payment will equal the Line of Credit Account Balance.

You can pay off all or part of what you owe at any time. However, so long as you owe any amount you must continue to make your periodic Minimum Payment.

The amounts you pay will be applied first to any fees and charges you owe other than principal and finance charges, then to any finance charges that are due, and finally to principal.

9.  **SECURITY:** We have secured your obligations under this plan by taking a security interest (by way of a separate security agreement, mortgage, deed of trust, or other instrument (the "Security Instrument") dated _____November 7, 2005_____, in the following property, described by item or type (the "Property"):
_____1339 Alta Ave, Upland, CA 91786_____

Property securing any other loans that you have with us may also secure this Agreement. You may buy property insurance from anyone you want who is acceptable to us.

**Florida:** The state documentary tax due on this Agreement has been paid on the mortgage securing this indebtedness. You agree to pay additional taxes or other changes to the extent such amounts may be imposed by third parties or government authorities in connection with any event of borrowing under this Line of Credit.

You consent to a continuing writ of garnishment effective with respect to any money, salary, or wages as may be owed to us to the fullest extent permitted by law. This consent is given pursuant to Florida Statutes Section 222.11(2).

IndyMac Bank
Multistate HELOC Agreement - I/O Min Pay
██████ (0409)

1064
9/04

**Maryland Recordation Tax:** If the entire principal amount of the Line of Credit is not disbursed by us to you upon the execution of this Agreement, you may, at your option, pay Maryland recordation tax on the entire principal amount of the Line of Credit at the time of closing, or you may pay Maryland recordation tax at the time of making of the initial and each future advance from us to you. If you pay the Maryland recordation tax on the entire principal amount of the Line of Credit at the time of closing, your total tax liability will be satisfied, regardless of the amount of any future advances that may subsequently be made by us to you. If, however, you elect to pay the required Maryland recordation tax as advances are made, you have seven (7) days to file with the clerk of the court where the security instrument is recorded a verified statement of the amount of the additional debt incurred as each advance is made, and you must pay the applicable Maryland recordation tax on that additional debt, or you may be penalized by a fine of up to $500.00 or imprisonment of up 6 months for failing to do so as provided in § 14-1012 of the Tax Property Article of the Annotated Code of Maryland.

**North Carolina:** This is an equity line of credit Agreement as defined in Section 45-81 of the North Carolina General Statutes. In accordance with the NCGS Section 75-30, you agree to accept all telephone calls made by us through the use of automatic dialing machines.

**Washington:** If this Agreement is signed by husband or wife, or by two or more unmarried individuals, each irrevocably authorizes us to charge the amount of any Equity Check signed by any one of you against the Line of Credit Account and consents to the use of Property identified in the Security Instrument as security for repayment of all such charges.

10.     **CHANGING TERMS OF THIS AGREEMENT:** Generally, we may not change the terms of this Agreement. However, we may change the terms in the following circumstances:
- If this is a variable rate plan, we may change the index and margin if the original index described in this agreement becomes unavailable. Any new index will have a historical movement similar to the original, and, together with a new margin, will produce a similar interest rate.
- We may make changes that you have agreed to in writing.
- We may make changes that unequivocally benefit you.
- We may make changes to insignificant terms of this Agreement.
- If we are required to send notice of a change in terms, we will send the notice to your address listed in this Agreement. (You should inform us of any change in address.)

11.     **YOUR RIGHT TO TERMINATE YOUR RIGHT TO OBTAIN LOANS:**

        **A. Termination.**   You may terminate your right to obtain loans by sending us a written notice that will become effective upon receipt by us. If more than one person signs this Agreement as Borrower, your right to obtain loans may be terminated by written notice pursuant to this paragraph signed by any one or more of such persons. We may also suspend your right to obtain loans pursuant to paragraph fourteen (14) below. You must notify the servicer at the following address or at a different address as required by servicer of your intent to terminate.

P.O. Box 3038, Evansville, IN 47730

        **B. Effect of Termination.**   Upon termination of your Line of Credit Account, you must continue to pay the minimum payment due on or before each payment due date until all amounts owed under this Agreement are paid in full. However, you may be required to repay all obligations immediately if we exercise our rights under paragraph thirteen (13) below. You must return unused Equity Checks upon termination. You may be required to pay an account termination fee pursuant to the Fee Schedule attached hereto and made a part hereof.

12.     **COSTS OF COLLECTION:** You agree to pay all our costs, including reasonable attorneys' fees, that we incur in legal proceedings to collect or enforce this debt should you be in default.

**Alabama:** You agree to pay our reasonable and actual attorneys' fees, incurred as a result of your default if the unpaid balance at the time of default exceeds $300.

**Arkansas:** You agree to pay our reasonable and actual attorneys' fees, not to exceed 10% of the amount of principal and accrued interest, if you are in default.

**California:** You agree to pay costs actually incurred for recording, mailing, publishing, and posting legally required notices, costs of postponement, not to exceed $50, litigation or trustee sale fees, and attorneys' fees allowed by law.

**Colorado, Missouri, New York, North Carolina, Oklahoma, South Carolina:** You agree to pay our reasonable attorneys' fees not in excess of 15% of the unpaid debt after default and referral to an attorney who is not our salaried employee, together with any assessed court costs and legal expenses, to the extent permitted by applicable law.

Case 6&#x2588;&#x2588;&#x2588;&#x2588;-WJ&#x2588;Doc 37    Filed 03/09/18    Entered 3/09/18 00:11:54    Desc
Main Document    Page 18 of 47

Loan No &#x2588;&#x2588;&#x2588;&#x2588;&#x2588;

**Louisiana:** You agree to pay our costs of collection and reasonable attorneys' fees not in excess of twenty-five (25) percent of the unpaid debt after default and referral to an attorney for collection.

**Maine:** You will pay all costs, including reasonable attorneys' fees and legal costs, incurred by us in attempting to collect, or collecting, what is owed from any real estate that secures this Agreement. You will pay all costs except attorneys' fees incurred by us in attempting to collect, or collecting, any amounts owed from personal property securing this Agreement.

**New Hampshire:** You agree to pay all our costs, including reasonable attorneys' fees that we incur in legal proceedings to collect or enforce this debt should you be in default. If you successfully assert a partial defense or set off, or recoupment or counterclaim, the court may reduce the amount of attorneys' fees we may recover from you. If you prevail in any action or defense against us, you may recover the amount of reasonable attorneys' fees from us.

**Wisconsin:** If you default, you agree to pay our statutory fees and charges and statutory attorneys' fees when and to the extent authorized by the Wisconsin Consumer Act. Fees and charges include, but are not limited to, the disposition of any Property under Wis. Stat. Ann. § 422.413, as amended.

13.     **TERMINATION OF LINE FOR CERTAIN DEFAULTS:** We may terminate your Line of Credit Account, require you to pay the entire outstanding balance in one payment, and charge you a termination fee (if provided for in this Agreement) and fees related to the collection of the amount owing, if:

      (1) You engage in fraud or material misrepresentation in connection with your Line of Credit;

      (2) You fail to make a payment as required by this Agreement; or

      (3) Your action or inaction adversely affects the collateral or our rights in the collateral.

      In that instance, we may take other action short of termination, such as charging you a fee if you fail to maintain required property insurance and we purchase insurance. In the District of Columbia, the remedy of acceleration is subject to the provisions of D.C. Code Ann. § 28-3312(5).

      Even if we choose not to use one of our remedies when you default, we do not forfeit our right to do so if you default again. If we do not use a remedy when you default, we can still consider your actions as a default in the future.

      In North Dakota, if permitted by applicable law, this obligation may be the basis for a personal action against the promisor or promisors in addition to other remedies allowed by law.

14.     **SUSPENSION OF CREDIT AND REDUCTION OF CREDIT LIMIT:** We may prohibit you from obtaining additional extensions of credit, or reduce your Credit Limit if:

      (1) The value of the dwelling securing this home equity Line of Credit declines significantly below its appraised value for purposes of this Line of Credit;

      (2) We reasonably believe you will not be able to meet the repayment requirements due to a change in your financial circumstances;

      (3) Your payment history on this home equity Line of Credit is not satisfactory;

      (4) You are in default of an obligation of this Agreement or any agreement securing this Agreement, which shall include, but is not limited to, your ongoing obligation to supply us with information we feel we need to assess your financial condition;

      (5) A governmental action prevents us from imposing the annual percentage rate provided for in this Agreement;

      (6) The action of a governmental body adversely affects our security interest to the extent that the value of the security interest is less than 120% of the home equity Line of Credit;

      (7) The annual percentage rate corresponding to the periodic rate reaches the maximum rate allowed under this Line of Credit (if provided for in this Agreement); or

      (8) A regulatory agency has notified us that continued advances would constitute an unsafe and unsound practice.

      In the event that we suspend your right to additional advances or reduce your Credit Limit, we will send you notice of our decision at the address listed in this Agreement. (You should inform us of any change in your address.) If we have based our decision to suspend or reduce your credit privileges on an assessment of your financial condition or performance under your Line of Credit, and you believe that your situation has changed, you must request that we re-evaluate your situation, and reinstate your credit privileges.

15.     **WAIVERS AND CONSENT:** To the extent not prohibited by law and subject to any required notice and opportunity to cure a default for failure to make a required payment, you waive protest, presentment for payment, demand, notice of acceleration, notice of intent to accelerate and notice of dishonor.

**Wisconsin:** In addition, subject to Wis. Stat. Ann. § 422.407, as amended, you will not assert any claims or defenses arising out of your Line of Credit against any person to whom we assign our rights under the Line of Credit (the assignee) if the assignee is unrelated to us, acquires the Line of Credit in good faith and for value, gives you a notice of the assignment, and has not received notice from you of your claims or defense within 12 months after the assignee mailed you the notice of assignment.

To the extent permitted by applicable law, you waive your right to the benefit of exemption as to your Property securing, or to secure, this Agreement. If required by law, we will provide you with separate written statement regarding the waiver of your right of exemption. In Indiana, you hereby waive any rights to relief from valuation and appraisement laws.

16.     **REPRESENTATIONS AND WARRANTIES:** You represent and warrant to us that the information contained in the loan application, in each material respect, was true at the time the loan application was completed.

You represent and warrant to us that the terms of any existing Security Instrument on the Property permit us to enter into this Agreement and that the loans secured by such existing deed of trust or mortgage are current in all material respects and are not in default.

17.     **LOAN CHARGES:** If your Line of Credit Account is subject to a law that sets maximum loan charges, and that law is finally interpreted so that the interest or other charges collected, or to be collected, in connection with your Line of Credit Account exceeds the permitted limits, then: (a) any such charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from you that exceeded permitted limits will be refunded to you. We will refund such excess either by reducing the principal owed under your Line of Credit Account or by making a direct payment to you. If we apply the excess toward reducing the principal balance, such reduction shall be treated as a partial prepayment hereunder.

18.     **APPLICABLE LAW:** Federal law applies to certain aspects of this Agreement, including, but not limited to, the interest rate and related charges. The law of the state where you and the Property are located will apply to the extent legally required. If any term of this Agreement violates any law or for some reason is not enforceable, or becomes unenforceable, that term will not be part of this Agreement.

If the Lender listed on page one of this Agreement is not IndyMac Bank, F.S.B., the following provisions apply to this Agreement: This is to inform you that your loan is an alternative mortgage loan within the definition of the Federal Alternative Mortgage Transactions Parity Act of 1982 (the "Parity Act") (12 U.S.C. §§ 3801 et seq.) and the implementing regulations adopted by the Office of Thrift Supervision ("OTS") (12 C.F.R. §§ 560.220, referencing, 560.33, 560.34, 560.35 and 560.210). Your loan will be made by us in accordance with the Parity Act requirements of the OTS rather than the provisions of state law. In this regard, pursuant to the authority granted by the Parity Act and the OTS Parity Act regulations, certain state laws will not apply to this loan.

19.     **CREDIT INFORMATION:** You agree to supply us with whatever information we reasonably feel we need to decide whether to continue this Line of Credit. We agree to make requests for this information without undue frequency, and to give you reasonable time in which to supply the information.

You authorize us to make or have made any credit inquiries we feel are necessary. You also authorize the person or agencies to whom we make these inquiries to supply us with the information we request.

As required by California law, you are hereby notified that a negative credit report reflecting on your credit record may be submitted to a credit reporting agency if you fail to fulfill the terms of your credit obligations.

## ADDITIONAL TERMS

### YOUR BILLING RIGHTS -- KEEP THIS NOTICE FOR FUTURE USE
This notice contains important information about your rights and our
responsibilities under the Fair Credit Billing Act.

#### *Notify Us In Case of Errors or Questions About Your Bill*

If you think your bill is wrong, or if you need more information about a transaction on your bill, write us at the address listed on your bill. Write to us as soon as possible. We must hear from you no later than 60 days after we sent you the first bill on which the error or problem appeared. You can telephone us, but doing so will not preserve your rights.

In your letter, give us the following information:

- Your name and account number.
- The dollar amount of the suspected error.
- Describe the error and explain, if you can, why you believe there is an error. If you need more information, describe the item you are not sure about.

If you have authorized us to pay your bill automatically from your savings, checking, share draft or other account, you can stop the payment on any amount you think is wrong. To stop the payment your letter must reach us three business days before the automatic payment is scheduled to occur.

#### *Your Rights and Our Responsibilities*
#### *After We Receive Your Written Notice*

We must acknowledge your letter within 30 days, unless we have corrected the error by then. Within 90 days, we must either correct the error or explain why we believe the bill was correct.

After we receive your letter, we cannot try to collect any amount you question, or report you as delinquent. We can continue to bill you for the amount you question, including finance charges, and we can apply any unpaid amount against your credit limit. You do not have to pay any questioned amount while we are investigating, but you are still obligated to pay the parts of your bill that are not in question.

If we find that we made a mistake on your bill, you will not have to pay any finance charges related to any questioned amount. If we didn't make a mistake, you may have to pay finance charges, and you will have to make up any missed payments on the questioned amount. In either case, we will send you a statement of the amount you owe and the date that it is due.

If you fail to pay the amount that we think you owe, we may report you as delinquent. However, if our explanation does not satisfy you and you write to us within ten days telling us that you still refuse to pay, we must tell anyone we report you to that you have a question about your bill. And, we must tell you the name of anyone we reported you to. We must tell anyone we report you to that the matter has been settled between us when it finally is.

If we don't follow these rules, we can't collect the first $50 of the questioned amount, even if your bill was correct.

#### *Special Rule for Credit Card Purchases*

If you have a problem with the quality of property or services that you purchased with a credit card, and you have tried in good faith to correct the problem with the merchant, you may have the right not to pay the remaining amount due on the property or the services. There are two limitations on this right:

(a) You must have made the purchase in your home state or, if not within your home state, within 100 miles of your current mailing address; and
(b) The purchase price must have been more than $50.

These limitations do not apply if we own or operate the merchant, or if we mailed you the advertisement for the property or services.

DEFAULT IN THE PAYMENT OF THIS LOAN AGREEEMENT MAY RESULT IN THE LOSS OF THE PROPERTY SECURING THE LOAN. UNDER FEDERAL LAW, YOU MAY HAVE THE RIGHT TO CANCEL THIS AGREEMENT. IF YOU HAVE THIS RIGHT, THE CREDITOR IS REQUIRED TO PROVIDE YOU WITH A SEPARATE NOTICE SPECIFYING THE CIRCUMSTANCES AND TIME UNDER WHICH YOU CAN EXERCISE THIS RIGHT.

Utah: THIS WRITTEN LOAN AGREEMENT REPRESENTS THE FINAL AGREEMENT BETWEEN THE PARTIES AND MAY NOT BE CONTRADICTED BY EVIDENCE OF PRIOR, CONTEMPORANEOUS, OR SUBSEQUENT ORAL AGREEMENTS.

Missouri: ORAL AGREEMENTS OR COMMITMENTS TO LOAN MONEY, EXTEND CREDIT OR TO FORBEAR FROM ENFORCING REPAYMENT OF A DEBT INCLUDING PROMISES TO EXTEND OR RENEW SUCH DEBT ARE NOT ENFORCEABLE. TO PROTECT YOU (BORROWER) AND US (LENDER) FROM MISUNDERSTANDING OR DISAPPOINTMENT, ANY AGREEMENTS WE REACH COVERING SUCH MATTERS ARE CONTAINED IN THIS WRITING, WHICH IS THE COMPLETE AND EXCLUSIVE STATEMENT OF THE AGREEMENT BETWEEN US, EXCEPT AS WE MAY LATER AGREE IN WRITING TO MODIFY IT.

Iowa: IMPORTANT: READ BEFORE SIGNING. THE TERMS OF THIS AGREEMENT SHOULD BE READ CAREFULLY BECAUSE ONLY THOSE TERMS IN WRITING ARE ENFORCEABLE. NO OTHER TERMS OR ORAL PROMISES NOT CONTAINED IN THIS WRITTEN CONTRACT MAY BE LEGALLY ENFORCED. YOU MAY CHANGE THE TERMS OF THIS AGREEMENT ONLY BY ANOTHER WRITTEN AGREEMENT. YOU ARE ENTITLED TO A COPY OF THIS AGREEMENT. YOU MAY REPAY THE UNPAID BALANCE AT ANY TIME WITHOUT PENALTY, AND IF THIS IS A CONSUMER CREDIT TRANSACTION YOU MAY BE ENTITLED TO RECEIVE A REFUND OF UNEARNED CHARGES IN ACCORDANCE WITH LAW.

Washington: PLEASE BE ADVISED THAT ORAL AGREEMENTS OR ORAL COMMUNICATIONS TO LOAN MONEY, EXTEND CREDIT, OR FOREBEAR FROM ENFORCING REPAYMENT OF THE DEBT ARE UNENFORCEABLE UNDER WASHINGTON LAW.

NOTICE TO CO-SIGNER: YOUR SIGNATURE ON THIS NOTE MEANS THAT YOU ARE EQUALLY LIABLE FOR REPAYMENT OF THIS LOAN. IF THE BORROWER DOES NOT PAY, THE LENDER HAS A LEGAL RIGHT TO COLLECT FROM YOU.

YOU SHOULD CHECK WITH YOUR LEGAL ADVISOR AND WITH OTHER MORTGAGE LIEN HOLDERS AS TO WHETHER ANY PRIOR LIENS CONTAIN ACCELERATION CLAUSES WHICH WOULD BE ACTIVATED BY A JUNIOR ENCUMBRANCE.

20.    SIGNATURES: By signing below, you agree to the terms of this Agreement and you promise to pay any amounts you owe under this Agreement. You also state that you received a completed copy of this Agreement on today's date.

CAUTION - IT IS IMPORTANT THAT YOU THOROUGHLY READ THE CONTRACT BEFORE YOU SIGN IT.

_____ (Seal)        _____ (Seal)
Peggy Clelland            -Borrower                                   -Borrower

_____ (Seal)        _____ (Seal)
                          -Borrower                                   -Borrower

_____ (Seal)        Pay To The Order Of
                          -Borrower                              _____ (Seal)
                                                                      -Borrower
                                       Without Recourse
                                       IndyMac Bank, F.S.B.
                                       By:

IndyMac Bank
Multistate HELOC Agreement - I/O Min Pay                    *Cynthia Prees*

████ 0409)                    Page 8 of 9        Cynthia Prees                    1064
                                                 Assistant Vice President          9/04

## FEE SCHEDULE

You agree to pay the following additional charges in connection with your Line of Credit:

### 1. ADDITIONAL FINANCE CHARGES: You agree to pay the following additional FINANCE CHARGES:

| | | |
|---|---|---|
| Application Fee | $ 0.00 | |
| Broker Fee | $ 0.00 | |
| Closing Agent Fee | $ 550.00 | (Not applicable in New York) |
| Flood Certification Fee | $ 0.00 | |
| Lender Fees | $ 0.00 | (Not applicable in New York) |
| Origination Fee | $ 0.00 | |
| Points | $ 125.00 | |
| Processing Fee | $ 0.00 | (Not applicable in New York) |
| Tax Service Fee | $ 0.00 | |
| (Other) _____ Other Fees | $ 1,267.00 | |

### 2. OTHER CHARGES: You agree to pay the following additional charges:

| | |
|---|---|
| • Appraisal Fee | $ 350.00 |
| • Check Re-order Fee | $ 5.00 |
| • Credit Report Fee | $ 13.00 |
| • Documentation Fee | $ 150.00 |
| • Recording/Filing Fee | $ 120.00 |
| • Title Insurance Fee | $ 908.00 |
| • Title Search Fee | $ 0.00 |
| • (Misc.) _____ Misc. Fees $ | 100.00 |

- An annual charge of $75.00.
- A termination fee of $500.00 if terminated within the first three years (not applicable in NJ, NY or SC).
- A late charge on any payment not paid within 15 days of the payment date of 5% of the payment.
- A charge of $10.00 for any advance made by special check in an amount less than the Minimum Advance (not applicable in New York).
- A charge of $10.00 per credit transaction that is in excess of your Credit Limit.
- A fee of $25.00 for each check, negotiable order of withdrawal or draft you issue in connection with this loan that is returned because it has been dishonored.
- A fee of $10.00 to stop payment.

Other charges will be assessed in accordance with the terms of the Line of Credit Agreement.

This Fee Schedule supplements the Line of Credit Agreement and is incorporated therein. Nothing contained in this Fee Schedule shall be deemed to impair in any way your obligations under the Line of Credit Agreement, the related security agreement, mortgage, or deed of trust, or any other document executed by you concerning the indebtedness evidenced by the Line of Credit Agreement.

| | | |
|---|---|---|
| _____ (Seal) | | _____ (Seal) |
| Peggy Copeland -Borrower | | -Borrower |
| _____ (Seal) | | _____ (Seal) |
| -Borrower | | -Borrower |
| _____ (Seal) | | _____ (Seal) |
| -Borrower | | -Borrower |

# EXHIBIT 2

PLEASE COMPLETE THIS INFORMATION

RECORDING REQUESTED BY:

**LARRY WALKER**
Auditor/Controller – Recorder

**608 North American Title Company**

AND WHEN RECORDED MAIL TO:

IndyMac Bank, F.S.B.
904 E 104th St.
Bld. B Suite 400/500
Kansas City, MO 64131

| Doc#: 2005 – 0940520 | Titles: 1 | Pages: 8 |
|---|---|---|
| | Fees | 29.00 |
| | Taxes | 0.00 |
| | Other | 0.00 |
| | PAID | $29.00 |

SPACE ABOVE FOR RECORDER'S USE ONLY

_Deed of Trust_

**Title of Document**

THIS AREA FOR
RECORDER'S
USE ONLY

THIS COVER SHEET ADDED TO PROVIDE ADEQUATE SPACE FOR RECORDING INFORMATION
(\$3.00 Additional Recording Fee Applies)

(Rev. 6/02:ha)

(Word/S:/Doc Exam/Cover Sheet)

Loan No: [REDACTED]
This document was prepared by Cynthia Frees

3465 East Foothill Boulevard, Pasadena, CA 91107

Please return this document after recording to:
IndyMac Bank, F.S.B. c/o Document
Management
904 E. 104th Street Building B, Suite
400/500
Kansas City, MO 64131

———— State of California ————    ———— Space Above This Line For Recording Data ————

## DEED OF TRUST
### (With Future Advance Clause)

1. **DATE AND PARTIES.** The date of this Deed of Trust (Security Instrument) is ....... November 7, 2005 .........
and the parties, their addresses and tax identification numbers, if required, are as follows:
   TRUSTOR:    Joel Clelland and Peggy Clelland, husband and wife as joint tenants

   1339 Alta Ave, Upland, CA 91786
   ☐ If checked, refer to the attached Addendum incorporated herein, for additional Trustors, their signatures and acknowledgments.
   TRUSTEE: North American Title Insurance Company
       505 South Main Street, Orange, CA 92868

   LENDER: IndyMac Bank, F.S.B., a federally chartered savings bank
       155 North Lake Avenue, Pasadena, CA 91101

2. **CONVEYANCE.** For good and valuable consideration, the receipt and sufficiency of which is acknowledged, and to secure the Secured Debt (defined below) and Trustor's performance under this Security Instrument, Trustor irrevocably grants, conveys and sells to Trustee, in trust for the benefit of Lender, with power of sale, the following described property:
   Legal description attached hereto and made a part hereof.  *See Exhibit "A"*

   | | | |
   |---|---|---|
   | The property is located in | San Bernardino | at | 1339 Alta Ave |
   | | (County) | | |

   | | | | |
   |---|---|---|---|
   | | Upland | , California | 91786 |
   | (Address) | (City) | | (ZIP Code) |

   Together with all rights, easements, appurtenances, royalties, mineral rights, oil and gas rights, all water and riparian rights, ditches, and water stock and all existing and future improvements, structures, fixtures, and replacements that may now, or at any time in the future, be part of the real estate described above (all referred to as "Property").

3. **MAXIMUM OBLIGATION LIMIT.** The total principal amount secured by this Security Instrument at any one time shall not exceed $ 125,000.00 . This limitation of amount does not include interest and other fees and charges validly made pursuant to this Security Instrument. Also, this limitation does not apply to advances made under the terms of this Security Instrument to protect Lender's security and to perform any of the covenants contained in this Security Instrument.

4. **SECURED DEBT AND FUTURE ADVANCES.** The term "Secured Debt" is defined as follows:
   A. Debt incurred under the terms of all promissory note(s), contract(s), guaranty(ies) or other evidence of debt described below and all their extensions, renewals, modifications or substitutions. *(Include items such as borrowers' names, note or contract amounts, interest rates (whether variable), maturity dates, etc.)*
   One certain home equity line of credit agreement dated November 7, 2005 executed by Peggy Clelland in the amount of $125,000.00 due and payable in full on December 15, 2025.

**CALIFORNIA - HOME EQUITY LINE OF CREDIT DEED OF TRUST** (NOT FOR FNMA, FHLMC, FHA OR VA USE)
*ExSereS* © 1994 Bankers Systems, Inc., St. Cloud, MN Form OCP-REDT-CA 3/10/2004
VMP®-C465(CA) (0403).01    VMP Mortgage Solutions, Inc. (800)521-7291    *(page 1 of 6)*

Loan No:

B. All future advances from Lender to Trustor or other future obligations of Trustor to Lender under any promissory note, contract or guaranty, or other evidence of debt executed by Trustor in favor of Lender after this Security Instrument if this Security Instrument is specifically referenced on the evidence of other debt. If more than one person signs this Security Instrument, each Trustor agrees that this Security Instrument will secure all future advances and future obligations that are given to or incurred by any one or more Trustor, or any one or more Trustor and others. All future advances and other future obligations are secured by this Security Instrument even though all or part may not yet be advanced. All future advances and other future obligations are secured as if made on the date of this Security Instrument.

C. All additional sums advanced and expenses incurred by Lender for insuring, preserving or otherwise protecting the Property and its value and any other sums advanced and expenses incurred by Lender under the terms of this Security Instrument.

D. Performance of every obligation in this Security Instrument (including any subsequent instrument amending this Security Instrument) and any instrument now or later evidencing or securing any indebtedness secured by this Security Instrument.

In the event that Lender fails to provide any necessary notice of the right of rescission with respect to any additional indebtedness secured under paragraph B of this Section, Lender waives any subsequent security interest in the Trustor's principal dwelling that is created by this Security Instrument (but does not waive the security interest for the debts referenced in paragraph A of this Section).

5. **DEED OF TRUST COVENANTS.** Trustor agrees that the covenants in this section are material obligations under the Secured Debt and this Security Instrument. If Trustor breaches any covenant in this section, Lender may refuse to make additional extensions of credit and reduce the credit limit. By not exercising either remedy on Trustor's breach, Lender does not waive Lender's right to later consider the event a breach if it happens again.

**Payments.** Trustor agrees that all payments under the Secured Debt will be paid when due and in accordance with the terms of the Secured Debt and this Security Instrument.

**Prior Security Interests.** With regard to any other mortgage, deed of trust, security agreement or other lien document that created a prior security interest or encumbrance on the Property, Trustor agrees to make all payments when due and to perform or comply with all covenants. Trustor also agrees not to allow any modification or extension of, nor to request any future advances under any note or agreement secured by the lien document without Lender's prior written approval.

**Claims Against Title.** Trustor will pay all taxes, assessments, liens, encumbrances, lease payments, ground rents, utilities, and other charges relating to the Property when due. Lender may require Trustor to provide to Lender copies of all notices that such amounts are due and the receipts evidencing Trustor's payment. Trustor will defend title to the Property against any claims that would impair the lien of this Security Instrument. Trustor agrees to assign to Lender, as requested by Lender, any rights, claims or defenses Trustor may have against parties who supply labor or materials to maintain or improve the Property.

**Property Condition, Alterations and Inspection.** Trustor will keep the Property in good condition and make all repairs that are reasonably necessary. Trustor shall not commit or allow any waste, impairment, or deterioration of the Property. Trustor agrees that the nature of the occupancy and use will not substantially change without Lender's prior written consent. Trustor will not permit any change in any license, restrictive covenant or easement without Lender's prior written consent. Trustor will notify Lender of all demands, proceedings, claims, and actions against Trustor, and of any loss or damage to the Property.

Lender or Lender's agents may, at Lender's option, enter the Property at any reasonable time for the purpose of inspecting the Property. Lender shall give Trustor notice at the time of or before an inspection specifying a reasonable purpose for the inspection. Any inspection of the Property shall be entirely for Lender's benefit and Trustor will in no way rely on Lender's inspection.

**Authority to Perform.** If Trustor fails to perform any duty or any of the covenants contained in this Security Instrument, Lender may, without notice, perform or cause them to be performed. Trustor appoints Lender as attorney in fact to sign Trustor's name or pay any amount necessary for performance. Lender's right to perform for Trustor shall not create an obligation to perform, and Lender's failure to perform will not preclude Lender from exercising any of Lender's other rights under the law or this Security Instrument.

**Leaseholds; Condominiums; Planned Unit Developments.** Trustor agrees to comply with the provisions of any lease if this Security Instrument is on a leasehold. If the Property includes a unit in a condominium or a planned unit development, Trustor will perform all of Trustor's duties under the covenants, by-laws, or regulations of the condominium or planned unit development.

**Condemnation.** Trustor will give Lender prompt notice of any pending or threatened action, by private or public entities to purchase or take any or all of the Property through condemnation, eminent domain, or any other means. Trustor authorizes Lender to intervene in Trustor's name in any of the above described actions or claims. Trustor assigns to Lender the



Loan No:

proceeds of any award or claim for damages connected with a condemnation or other taking of all or any part of the Property. Such proceeds shall be considered payments and will be applied as provided in this Security Instrument. This assignment of proceeds is subject to the terms of any prior mortgage, deed of trust, security agreement or other lien document.

**Insurance.** Trustor shall keep Property insured against loss by fire, flood, theft and other hazards and risks reasonably associated with the Property due to its type and location. This insurance shall be maintained in the amounts and for the periods that Lender requires. What Lender requires pursuant to the preceding two sentences can change during the term of the Secured Debt. The insurance carrier providing the insurance shall be chosen by Trustor subject to Lender's approval, which shall not be unreasonably withheld. If Trustor fails to maintain the coverage described above, Lender may, at Lender's option, obtain coverage to protect Lender's rights in the Property according to the terms of this Security Instrument.

All insurance policies and renewals shall be acceptable to Lender and shall include a standard "mortgage clause" and, where applicable, "loss payee clause." Trustor shall immediately notify Lender of cancellation or termination of the insurance. Lender shall have the right to hold the policies and renewals. If Lender requires, Trustor shall immediately give to Lender all receipts of paid premiums and renewal notices. Upon loss, Trustor shall give immediate notice to the insurance carrier and Lender. Lender may make proof of loss if not made immediately by Trustor.

Unless otherwise agreed in writing, all insurance proceeds shall be applied to the restoration or repair of the Property or to the Secured Debt, whether or not then due, at Lender's option. Any application of proceeds to principal shall not extend or postpone the due date of the scheduled payment nor change the amount of any payment. Any excess will be paid to the Trustor. If the Property is acquired by Lender, Trustor's right to any insurance policies and proceeds resulting from damage to the Property before the acquisition shall pass to Lender to the extent of the Secured Debt immediately before the acquisition.

**Financial Reports and Additional Documents.** Trustor will provide to Lender upon request, any financial statement or information Lender may deem reasonably necessary. Trustor agrees to sign, deliver, and file any additional documents or certifications that Lender may consider necessary to perfect, continue, and preserve Trustor's obligations under this Security Instrument and Lender's lien status on the Property.

6.  **WARRANTY OF TITLE.** Trustor warrants that Trustor is or will be lawfully seized of the estate conveyed by this Security Instrument and has the right to irrevocably grant, convey and sell the Property to Trustee, in trust, with power of sale. Trustor also warrants that the Property is unencumbered, except for encumbrances of record.

7.  **DUE ON SALE.** Lender may, at its option, declare the entire balance of the Secured Debt to be immediately due and payable upon the creation of, or contract for the creation of, a transfer or sale of all or any part of the Property. This right is subject to the restrictions imposed by federal law (12 C.F.R. 591), as applicable.

8.  **DEFAULT.** Trustor will be in default if any of the following occur:

    **Fraud.** Any Consumer Borrower engages in fraud or material misrepresentation in connection with the Secured Debt that is an open end home equity plan.

    **Payments.** Any Consumer Borrower on any Secured Debt that is an open end home equity plan fails to make a payment when due.

    **Property.** Any action or inaction by the Borrower or Trustor occurs that adversely affects the Property or Lender's rights in the Property. This includes, but is not limited to, the following: (a) Trustor fails to maintain required insurance on the Property; (b) Trustor transfers the Property; (c) Trustor commits waste or otherwise destructively uses or fails to maintain the Property such that the action or inaction adversely affects Lender's security; (d) Trustor fails to pay taxes on the Property or otherwise fails to act and thereby causes a lien to be filed against the Property that is senior to the lien of this Security Instrument; (e) a sole Trustor dies; (f) if more than one Trustor, any Trustor dies and Lender's security is adversely affected; (g) the Property is taken through eminent domain; (h) a judgment is filed against Trustor and subjects Trustor and the Property to action that adversely affects Lender's interest; or (i) a prior lienholder forecloses on the Property and as a result, Lender's interest is adversely affected.

    **Executive Officers.** Any Borrower is an executive officer of Lender or an affiliate and such Borrower becomes indebted to Lender or another lender in an aggregate amount greater than the amount permitted under federal laws and regulations.

9.  **REMEDIES ON DEFAULT.** In addition to any other remedy available under the terms of this Security Instrument, Lender may accelerate the Secured Debt and foreclose this Security Instrument in a manner provided by law if Trustor is in default. In some instances, federal and state law will require Lender to provide Trustor with notice of the right to cure, or other notices and may establish time schedules for foreclosure actions.

    At the option of the Lender, all or any part of the agreed fees and charges, accrued interest and principal shall become immediately due and payable, after giving notice if required by law, upon the occurrence of a default or anytime thereafter. Lender shall be entitled to, without limitation, the power to sell the Property.

Express © 1994 Bankers Systems, Inc., St. Cloud, MN Form OCP-REDT-CA 3/10/2004
VMP -C465(CA) (0403).01



(page 2 of 6)

Loan No: ████████

If Lender elects to foreclose by exercise of the power of sale, Lender will declare the entire Secured Debts due and payable by delivering to Trustee this Security Instrument and any evidence of the Secured Debts, receipts and evidence of expenditures made and secured, as Trustee requires. When the legally prescribed time passes after Trustee or Lender duly records a notice of default, the Trustee, Lender or other person authorized to take the sale will give a notice of sale as required by law and will cause the Property to be sold at the time and place fixed in the notice of sale. Lender may rescind any notice of default at any time before the Property's sale. Rescission will occur when Lender executes and records a notice of rescission that cancels any prior notice of default and any related acceleration of the Secured Debts. Lender's rescission will not waive any default then existing or subsequently occurring or preclude Lender exercising its remedies, including the power of sale, at another time.

The Property can be sold as a whole or in separate parcels and in any order that Trustee decides. The Property will be sold to the highest bidder for cash in lawful money of the United States, payable at sale time. The Property can be sold to anyone, including Trustor, Trustee or Lender. Trustee may postpone the sale of any part of the Property by public announcement at the time and place of this sale and afterwards at the time fixed by the preceding postponement. Upon any sale of the Property, Trustee will make and deliver a special or limited warranty deed that conveys the property sold to the purchaser or purchasers. Under this special or limited warranty deed, Trustee will covenant that Trustee has not caused or allowed a lien or an encumbrance to burden the Property and that Trustee will specially warrant and defend the Property's title to the purchaser or purchasers at the sale against all lawful claims and demand of all persons claiming by, through or under Trustee. The deed's recital of facts will be conclusive proof of the truthfulness of these facts.

The proceeds from the Property's sale will be applied to the sale expenses, Trustee's expenses, Lender's attorneys' fees due on Trustor's default, sums that Trustee or Lender paid for procuring a title search of the Property's title subsequent to the execution of this Security Instrument, all outstanding amounts due under this Security Instrument and the remainder to anyone legally entitled to the remaining amounts due.

The acceptance by Lender of any sum in payment or partial payment on the Secured Debt after the balance is due or is accelerated or after foreclosure proceedings are filed shall not constitute a waiver of Lender's right to require complete cure of any existing default. By not exercising any remedy on Trustor's default, Lender does not waive Lender's right to later consider the event a default if it happens again.

10. **EXPENSES; ADVANCES ON COVENANTS; ATTORNEYS' FEES; COLLECTION COSTS.** If Trustor breaches any covenant in this Security Instrument, Trustor agrees to pay all expenses Lender incurs in performing such covenants (including but not limited to advances and expenses described in the DEED OF TRUST COVENANTS section) or protecting its security interest in the Property. Such expenses include, but are not limited to, fees incurred for inspecting, preserving, or otherwise protecting the Property and Lender's security interest. These expenses are payable on demand and will bear interest from the date of payment until paid in full at the highest rate of interest in effect as provided in the terms of the Secured Debt. Trustor agrees to pay all costs and expenses incurred by Lender in collecting, enforcing or protecting Lender's rights and remedies under this Security Instrument. This amount may include, but is not limited to, attorneys' fees, court costs, and other legal expenses. To the extent permitted by the United States Bankruptcy Code, Trustor agrees to pay the reasonable attorneys' fees Lender incurs to collect the Secured Debt as awarded by any court exercising jurisdiction under the Bankruptcy Code. This Security Instrument shall remain in effect until released. Trustor agrees to pay for any recordation costs of such release.

11. **ENVIRONMENTAL LAWS AND HAZARDOUS SUBSTANCES.** As used in this section, (1) Environmental Law means, without limitation, the Comprehensive Environmental Response, Compensation and Liability Act (CERCLA, 42 U.S.C. 9601 et seq.), and all other federal, state and local laws, regulations, ordinances, court orders, attorney general opinions or interpretive letters concerning the public health, safety, welfare, environment or a hazardous substance; and (2) Hazardous Substance means any toxic, radioactive or hazardous material, waste, pollutant or contaminant which has characteristics which render the substance dangerous or potentially dangerous to the public health, safety, welfare or environment. The term includes, without limitation, any substances defined as "hazardous material," "toxic substances," "hazardous waste" or "hazardous substance" under any Environmental Law.

Trustor represents, warrants and agrees that:

A. Except as previously disclosed and acknowledged in writing to Lender, no Hazardous Substance is or will be located, stored or released on or in the Property. This restriction does not apply to small quantities of Hazardous Substances that are generally recognized to be appropriate for the normal use and maintenance of the Property.

B. Except as previously disclosed and acknowledged in writing to Lender, Trustor and every tenant have been, are, and shall remain in full compliance with any applicable Environmental Law.

Express © 1994 Bankers Systems, Inc., St. Cloud, MN Form OCP-REDT-CA  3/10/2004
VMP -C465(CA) (0403).01



(page 4 of 6)



Loan No: ▮▮▮▮▮▮

C. Trustor shall immediately notify Lender if a release or threatened release of a Hazardous Substance occurs on, under or about the Property or there is a violation of any Environmental Law concerning the Property. In such an event, Trustor shall take all necessary remedial action in accordance with any Environmental Law.

D. Trustor shall immediately notify Lender in writing as soon as Trustor has reason to believe there is any pending or threatened investigation, claim, or proceeding relating to the release or threatened release of any Hazardous Substance or the violation of any Environmental Law.

12. **ESCROW FOR TAXES AND INSURANCE.** Unless otherwise provided in a separate agreement, Trustor will not be required to pay to Lender funds for taxes and insurance in escrow.

13. **JOINT AND INDIVIDUAL LIABILITY; CO-SIGNERS; SUCCESSORS AND ASSIGNS BOUND.** All duties under this Security Instrument are joint and individual. If Trustor signs this Security Instrument but does not sign an evidence of debt, Trustor does so only to mortgage Trustor's interest in the Property to secure payment of the Secured Debt and Trustor does not agree to be personally liable on the Secured Debt. The duties and benefits of this Security Instrument shall bind and benefit the successors and assigns of Trustor and Lender.

14. **SEVERABILITY; INTERPRETATION.** This Security Instrument is complete and fully integrated. This Security Instrument may not be amended or modified by oral agreement. Any section in this Security Instrument, attachments, or any agreement related to the Secured Debt that conflicts with applicable law will not be effective, unless that law expressly or impliedly permits the variations by written agreement. If any section of this Security Instrument cannot be enforced according to its terms, that section will be severed and will not affect the enforceability of the remainder of this Security Instrument. Whenever used, the singular shall include the plural and the plural the singular. The captions and headings of the sections of this Security Instrument are for convenience only and are not to be used to interpret or define the terms of this Security Instrument. Time is of the essence in this Security Instrument.

15. **SUCCESSOR TRUSTEE.** Lender, at Lender's option, may from time to time remove Trustee and appoint a successor trustee without any other formality than the designation in writing. The successor trustee, without conveyance of the Property, shall succeed to all the title, power and duties conferred upon Trustee by this Security Instrument and applicable law.

16. **NOTICE.** Unless otherwise required by law, any notice shall be given by delivering it or by mailing it by first class mail to the appropriate party's address on page 1 of this Security Instrument, or to any other address designated in writing. Notice to one trustor will be deemed to be notice to all trustors. Lender and Trustor request that copies of any notice of default or notice of sale under a superior security instrument be sent to Lender and Trustor at the addresses listed in the DATE AND PARTIES section.

17. **WAIVERS.** Except to the extent prohibited by law, Trustor waives all appraisement or marshalling of assets relating to the Property.

18. **SPOUSE'S SEPARATE PROPERTY.** Any Trustor who is a married person expressly agrees that recourse may be had against his or her separate property.

19. **LINE OF CREDIT.** The Secured Debt includes a revolving line of credit. Although the Secured Debt may be reduced to a zero balance, this Security Instrument will remain in effect until released.

20. **APPLICABLE LAW.** This Security Instrument is governed by the laws as agreed to in the Secured Debt, except to the extent required by the laws of the jurisdiction where the Property is located, and applicable federal laws and regulations.

21. **RIDERS.** The covenants and agreements of each of the riders checked below are incorporated into and supplement and amend the terms of this Security Instrument. [Check all applicable boxes]

☐ Assignment of Leases and Rents    ☐ Other ............................................................................................

22. ☐ **ADDITIONAL TERMS.**




Ex̲p̲e̲r̲e̲s̲ © 1994 Bankers Systems, Inc., St. Cloud, MN Form OCP-REDT-CA  3/10/2004
VMP-**C465(CA)** (0403).01

*(page 6 of 6)*

Loan No:

23. **REQUEST FOR NOTICE.** In accordance with Section 2924b, Civil Code, request is hereby made that a copy of any notice of default and a copy of any notice of sale under the deed of trust (or mortgage) recorded N/A , in book N/A page N/A , records of N/A County, (or filed for record with recorder's serial number N/A , N/A County) California, executed by N/A as trustor (or mortgagor) in which N/A , is named as beneficiary (or mortgagee) and N/A as trustee be mailed to:

Name    N/A    at
Address    N/A

**NOTICE:** A copy of any notice of default and of any notice of sale will be sent only to the address contained in this recorded request. If your address changes, a new request must be recorded.
(Include the requester's name, by the signer, among those acknowledging below, or use a separate acknowledgment form.)

Signature on behalf of the requester named above:

Signature    N/A

**SIGNATURES:** By signing below, Trustor agrees to the terms and covenants contained in this Security Instrument and in any attachments. Trustor also acknowledges receipt of a copy of this Security Instrument on the date stated on page 1

(Signature) Peggy Clelland    (Date) 11/8/05    (Signature) Joel Clelland    (Date) 11/8/05

**ACKNOWLEDGMENT:**

STATE OF    CA    COUNTY OF San Bernardino    } ss.
On this    8    day of    November, 2005    before me    Nichole Sherie Fava
a notary public, personally appeared    Peggy Clelland and Joel Clelland

personally known to me (or proved to me on the basis of satisfactory evidence) to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.
WITNESS my hand and official seal.

Signature
Name (typed or printed) Nichole Sherie Fava
My commission expires: 1-19-08

NICHOLE SHERIE FAVA
Commission # 1463806
Notary Public - California
Orange County
My Comm. Expires Jan 19, 2008

(Seal)

---

**REQUEST FOR FULL RECONVEYANCE**

**To Trustee:** The undersigned is the holder of the note or notes secured by this Deed of Trust, which was recorded in the office of the Recorder of _____ County, State of California, in book _____, page _____ of official records. Said note or notes, together with all other indebtedness secured by this Deed of Trust, have been paid in full. You are hereby directed to cancel said note or notes and this Deed of Trust, which are delivered hereby, and to reconvey, without warranty, all the estate now held by you under this Deed of Trust to the person or persons legally entitled thereto.
Dated: _____

Assessor's Identification Number

Express © 1994 Bankers Systems, Inc., St. Cloud, MN Form OCP-REDT-CA 3/10/2004
VMP -C465(CA) (0403).01

EXHIBIT "A"
(LEGAL DESCRIPTION)

LOT 2, TRACT NO. 4705, IN THE SAN BERNARDINO, STATE OF CALIFORNIA, AS PER MAP RECORDED IN BOOK 70 OF MAPS, PAGES 89 AND 90, IN THE OFFICE OF THE COUNTY RECORDER OF SAID COUNTY.

TOGETHER WITH THE EAST 10 FEET OF LOT 496, ONTARIO COLONY LANDS, AS PER PLAT RECORDED IN BOOK 11 OF MAPS, PAGE 6, LYING ADJACENT TO AND WESTERLY OF SAID LOT 2 AND THE WEST 10 FEET OF THE EAST 20 FEET OF SAID LOT 496, LYING ADJACENT TO AND EASTERLY OF THE NORTHERLY 29.16 FEET OF LOT 5, TRACT NO. 6409, AS PER PLAT RECORDED IN BOOK 80 OF MAPS, PAGES 11 AND 12, RECORDS OF SAID COUNTY.

EXCEPT THEREFROM, ALL OIL, OIL RIGHTS, NATURAL GAS RIGHTS, MINERAL RIGHTS, AND OTHER HYDROCARBON SUBSTANCES BY WHATEVER NAME KNOWN, TOGETHER WITH APPURTENANT RIGHTS THERETO, WITHOUT, HOWEVER, ANY RIGHT TO ENTER UPON THE SURFACE OF SAID LAND NOR ANY PORTION OF THE SUBSURFACE LYING ABOVE A DEPTH OF 500 FEET, AS EXCEPTED OR RESERVED IN INSTRUMENTS OF RECORD.

Page 4

FORM NO        (10/17/92)
ALTA LOAN POLICY
FORM 1

ORDER NO.:
POLICY NO.:

## SCHEDULE A

TOTAL FEE FOR TITLE SEARCH,
EXAMINATION AND TITLE
INSURANCE $401.00

POLICY AMOUNT:  $125,000.00

POLICY DATE:  DECEMBER 12, 2005  AT 8:00 A.M.

1.  NAME OF INSURED:

    INDYMAC BANK, F.S.B., A FEDERALLY CHARTERED SAVINGS BANK

2.  THE ESTATE OR INTEREST IN THE LAND WHICH IS ENCUMBERED BY THE INSURED MORTGAGE IS:

    A FEE

3.  TITLE TO THE ESTATE OR INTEREST IN THE LAND IS VESTED IN:

    JOEL CLELLAND AND PEGGY CLELLAND, HUSBAND AND WIFE, AS JOINT TENANTS

4.  THE INSURED MORTGAGE AND ASSIGNMENTS THEREOF, IF ANY, ARE DESCRIBED AS FOLLOWS:

    A DEED OF TRUST TO SECURE AN INDEBTEDNESS IN THE AMOUNT SHOWN BELOW AND ANY OTHER
    OBLIGATIONS SECURED THEREBY:

    | | |
    |---|---|
    | RECORDED: | DECEMBER 12, 2005 AS INSTRUMENT NO. 05-940520, OF OFFICIAL RECORDS |
    | AMOUNT: | $125,000.00 |
    | DATED: | NOVEMBER 7, 2005 |
    | TRUSTOR: | JOEL CLELLAN AND PEGGY CLELLAND, HUSBAND AND WIFE, AS JOINT TENANTS |
    | TRUSTEE: | NORTH AMERICAN TITLE INSURANCE COMPANY |
    | BENEFICIARY: | INDYMAC BANK, F.S.B., A FEDERALLY CHARTERED SAVINGS BANK |

FORM NO. ███ (10/17/92)
ALTA LOAN POLICY

ORDER NO.: ███
POLICY NO.: ███

5.   THE LAND REFERRED TO IN THIS POLICY IS SITUATED IN THE STATE OF CALIFORNIA, COUNTY OF SAN BERNARDINO, AND IS DESCRIBED AS FOLLOWS:

LOT 2, TRACT NO. 4705, IN THE SAN BERNARDINO, STATE OF CALIFORNIA, AS PER MAP RECORDED IN BOOK 70 OF MAPS, PAGES 89 AND 90, IN THE OFFICE OF THE COUNTY RECORDER OF SAID COUNTY.

TOGETHER WITH THE EAST 10 FEET OF LOT 496, ONTARIO COLONY LANDS, AS PER PLAT RECORDED IN BOOK 11 OF MAPS, PAGE 6, LYING ADJACENT TO AND WESTERLY OF SAID LOT 2 AND THE WEST 10 FEET OF THE EAST 20 FEET OF SAID LOT 496, LYING ADJACENT TO AND EASTERLY OF THE NORTHERLY 29.16 FEET OF LOT 5, TRACT NO. 6409, AS PER PLAT RECORDED IN BOOK 80 OF MAPS, PAGES 11 AND 12, RECORDS OF SAID COUNTY.

EXCEPT THEREFROM, ALL OIL, OIL RIGHTS, NATURAL GAS RIGHTS, MINERAL RIGHTS, AND OTHER HYDROCARBON SUBSTANCES BY WHATEVER NAME KNOWN, TOGETHER WITH APPURTENANT RIGHTS THERETO, WITHOUT, HOWEVER, ANY RIGHT TO ENTER UPON THE SURFACE OF SAID LAND NOR ANY PORTION OF THE SUBSURFACE LYING ABOVE A DEPTH OF 500 FEET, AS EXCEPTED OR RESERVED IN INSTRUMENTS OF RECORD.

FORM NO ▮▮▮▮ (10/17/92)
ALTA LOAN POLICY
(EXTENDED COVERAGE)

ORDER NO. ▮▮▮▮
POLICY NO ▮▮▮▮

## SCHEDULE B, PART I

### EXCEPTIONS FROM COVERAGE

THIS POLICY DOES NOT INSURE AGAINST LOSS OR DAMAGE (AND THE COMPANY WILL NOT PAY COSTS, ATTORNEYS' FEES OR EXPENSES) WHICH ARISE BY REASON OF:

1.  SECOND INSTALLMENT GENERAL AND SPECIAL COUNTY AND/OR CITY TAXES FOR THE FISCAL YEAR 2005-2006, IN THE AMOUNT OF $1,894.96

2.  THE LIEN OF SUPPLEMENTAL TAXES, IF ANY, ASSESSED PURSUANT TO THE PROVISIONS OF CHAPTER 3.5 (COMMENCING WITH SECTION 75) OF THE REVENUE AND TAXATION CODE OF THE STATE OF CALIFORNIA.

3.  WATER RIGHTS, CLAIMS OR TITLE TO WATER, WHETHER OR NOT SHOWN BY THE PUBLIC RECORDS.

4.  AN EASEMENT AFFECTING ALL OF SAID LAND FOR THE PURPOSES STATED HEREIN, AND INCIDENTAL PURPOSES:

    FOR:              PIPE LINES
    RECORDED:         MARCH 6, 1902 IN BOOK 315, PAGE 296, OF OFFICIAL RECORDS

    NO REPRESENTATION IS MADE AS TO THE PRESENT OWNERSHIP OF SAID EASEMENT.

    THE EXACT LOCATION OF SAID EASEMENT IS NOT DISCLOSED OF RECORD.

5.  AN EASEMENT AFFECTING ALL OF SAID LAND FOR THE PURPOSES STATED HEREIN, AND INCIDENTAL PURPOSES:

    IN FAVOR OF:      SAN ANTONIO WATER COMPANY
    FOR:              PIPE LINES
    RECORDED:         APRIL 27, 1956 IN BOOK 3923 PAGE 294, OF OFFICIAL RECORDS

    NO REPRESENTATION IS MADE AS TO THE PRESENT OWNERSHIP OF SAID EASEMENT.

    THE EXACT LOCATION OF SAID EASEMENT IS NOT DISCLOSED OF RECORD.

6.  AN EASEMENT AFFECTING THE PORTION OF SAID LAND AND FOR THE PURPOSES STATED HEREIN, AND INCIDENTAL PURPOSES, SHOWN OR DEDICATED BY THE MAP OF:

    FOR:              PUBLIC UTILITIES
    AFFECTS:          A PORTION OF SAID LAND

7.  COVENANTS, CONDITIONS AND RESTRICTIONS (BUT DELETING THEREFROM ANY COVENANT, CONDITION OR RESTRICTION INDICATING A PREFERENCE, LIMITATION, OR DISCRIMINATION, BASED ON RACE, COLOR, RELIGION, SEX, HANDICAP, FAMILIAL STATUS, OR NATIONAL ORIGIN TO THE EXTENT SUCH COVENANTS, CONDITIONS, OR RESTRICTIONS VIOLATE 42 U.S.C. 3604(C)) AS SET FORTH IN THE DOCUMENT:

    RECORDED:         OCTOBER 23, 1957 IN BOOK 4353 PAGE 73, OF OFFICIAL RECORDS

FORM NO          (10/17/92)                                    ORDER NO.
ALTA LOAN POLICY                                              POLICY NO.

SAID COVENANTS, CONDITIONS AND RESTRICTIONS PROVIDE THAT A VIOLATION THERE OF SHALL
NOT DEFEAT THE LIEN OF ANY MORTGAGE OR DEED OF TRUST MADE IN GOOD FAITH AND FOR
VALUE.

8.    AN EASEMENT AFFECTING THE PORTION OF SAID LAND AND FOR THE PURPOSE STATED HEREIN, AND
      INCIDENTAL PURPOSES.

      IN FAVOR OF:              GENERAL TELEPHONE COMPANY

      NO REPRESENTATION IS MADE AS TO THE PRESENT OWNERSHIP OF SAID EASEMENT.

      FOR:                      PUBLIC UTILITIES
      RECORDED:                 JANUARY 16, 1958 IN BOOK 4415 PAGE 2, OF OFFICIAL RECORDS
      AFFECTS:                  A PORTION OF SAID LAND

9.    AN EASEMENT AFFECTING THE PORTION OF SAID LAND AND FOR THE PURPOSE STATED HEREIN, AND
      INCIDENTAL PURPOSES.

      IN FAVOR OF:              SOUTHERN CALIFORNIA EDISON COMPANY

      NO REPRESENTATION IS MADE AS TO THE PRESENT OWNERSHIP OF SAID EASEMENT.

      FOR:                      PUBLIC UTILITIES
      RECORDED:                 JANUARY 17, 1958 IN BOOK 4416, PAGE 219, OF OFFICIAL RECORDS
      AFFECTS:                  A PORTION OF SAID LAND

10.   A DEED OF TRUST TO SECURE AN INDEBTEDNESS IN THE AMOUNT SHOWN BELOW AND ANY OTHER
      OBLIGATIONS SECURED THEREBY:

      AMOUNT:                   $270,000.00
      DATED:                    AUGUST 6, 2004
      TRUSTOR:                  JOEL CLELLAND AND PEGGY CLELLAND, HUSBAND AND WIFE, AS JOINT
                                TENANTS
      TRUSTEE:                  LAWYERS TITLE INSURANCE CORPORATION
      BENEFICIARY:              MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC. ("MERS"),
                                SOLELY AS NOMINEE FOR INDYMAC BANK, F.S.B., A FEDERALLY
                                CHARTERED SAVINGS BANK
      RECORDED:                 AUGUST 11, 2004, AS INSTRUMENT NO. 04-0577545, OF OFFICIAL
                                RECORDS

COUNTERSIGNED:

FORM NO.███(10/17/92)  
ALTA LOAN POLICY  
(EXTENDED COVERAGE)

ORDER NO.: ███  
POLICY NO.: ███

## SCHEDULE B, PART II

IN ADDITION TO THE MATTERS SET FORTH IN PART I OF THIS SCHEDULE, THE TITLE TO THE ESTATE OR
INTEREST IN THE LAND DESCRIBED OR REFERRED TO IN SCHEDULE A IS SUBJECT TO THE FOLLOWING
MATTERS, IF ANY BE SHOWN, BUT THE COMPANY INSURES THAT THESE MATTERS ARE SUBORDINATE TO THE
LIEN OR CHARGE OF THE INSURED MORTGAGE UPON THE ESTATE OR INTEREST:

**NONE.**

COUNTERSIGNED:

_____
AUTHORIZED SIGNATORY

# EXHIBIT 3

RECORDING REQUESTED BY
VISIONET SYSTEMS, INC
AND WHEN RECORDED MAIL DOCUMENT TO:

NAME    VISIONET SYSTEMS, INC

STREET
ADDRESS    183 INDUSTRY DRIVE

CITY, STATE &
ZIP CODE    PITTSBURGH, PA 15275

Recorded In Official Records, County of San Bernardino    12/29/2015

 BOB DUTTON
ASSESSOR – RECORDER – CLERK

10:18 AM
FV
SAN

C Priority Mail

Doc#:    2015 – 0564992

| | Titles: 1 | Pages: 3 |
|---|---|---|
| Fees | | 31.00 |
| Taxes | | 0.00 |
| Other | | 0.00 |
| PAID | | $31.00 |

SPACE ABOVE FOR RECORDER'S USE ONLY

## ASSIGNMENT OF DEED OF TRUST

Title of Document

# THIS AREA FOR RECORDER'S USE ONLY

THIS COVER SHEET ADDED TO PROVIDE ADEQUATE SPACE FOR RECORDING INFORMATION
($3.00 Additional Recording Fee Applies)

This Instrument Prepared By:
**VISIONET SYSTEMS INC.**
After Recording Return To:
**VISIONET SYSTEMS INC.**
**183 INDUSTRY DRIVE**
**PITTSBURGH, PA 15275**
Voice: **1-(412) 927-0226**

Tax Parcel ID ███████

## Assignment of Deed Of Trust

**LOAN #:** ██████ **"PEGGY CLELLAND" SAN BERNARDINO COUNTY, California**

For value received, the undersigned, hereby grants, assigns, and transfers to: **Deutsche Bank National Trust Company, as Trustee, for IndyMac Home Equity Mortgage Loan Asset-Backed Trust, Series 2006-H1** all beneficial interest under that certain Deed of Trust dated **11/07/2005** executed by:

**Trustor(s): JOEL CLELLAND AND PEGGY CLELLAND, HUSBAND AND WIFE AS JOINT TENANTS**

For **INDYMAC BANK, F.S.B., A FEDERALLY CHARTERED SAVINGS BANK**, in the amount of:
**$125,000.00**, recorded **12/12/2005** as Instrument No.: **2005-0940520** of the Official Records of **San Bernardino County, California**

Property Address: **1339 ALTA AVE, UPLAND, CA 91786**
Legal and/or Assignment: **SEE EXHIBIT 'A'**

This assignment is made without recourse, representation or warranty, express or implied, by the FDIC in its corporate capacity or as Receiver.

Together with the Note or Notes therein described or referenced to, the money due and to become due thereon with interest, and all rights accrued or to accrue under said Deed of Trust.

Effective date: ___**NOV 0 5 2015**___

**FEDERAL DEPOSIT INSURANCE CORPORATION AS RECEIVER FOR INDYMAC BANK, F.S.B.**

A notary public or other officer completing this certificate verifies only the identity of the individual who signed the document to which this certificate is attached, and not the truthfulness, accuracy, or validity of that document.

By: _____

**Sujata Raman**

**Attorney In Fact**

State of ___**TEXAS**___
County of ___**TRAVIS**___

On __**NOV 0 5 2015**__ before me, ___**Lucia C. Castro**___ the undersigned, a Notary Public in and for the county of ___**TRAVIS**___ in the State of ___**TEXAS**___, personally appeared , personally known to me to be the person whose name is subscribed to the within instrument and acknowledged to me that he/she executed the same in his/her authorized capacity, and that for his/her signature on the instrument the person, or the entity upon behalf of which he/she acted, executed the instrument.

LUCIA C CASTRO
Commission # 128757157
My Commission Expires
September 27, 2019

Notary Name: ___**Lucia C. Castro**___
My Commission Expires: ___**9-27-19**___

EXHIBIT "A"
(LEGAL DESCRIPTION)

LOT 2, TRACT NO. 4705, IN THE SAN BERNARDINO, STATE OF CALIFORNIA, AS PER MAP RECORDED IN
BOOK 70 OF MAPS, PAGES 89 AND 90, IN THE OFFICE OF THE COUNTY RECORDER OF SAID COUNTY.

TOGETHER WITH THE EAST 10 FEET OF LOT 496, ONTARIO COLONY LANDS, AS PER PLAT RECORDED
IN BOOK 11 OF MAPS, PAGE 6, LYING ADJACENT TO AND WESTERLY OF SAID LOT 2 AND THE WEST 10
FEET OF THE EAST 20 FEET OF SAID LOT 496, LYING ADJACENT TO AND EASTERLY OF THE
NORTHERLY 29.16 FEET OF LOT 5, TRACT NO. 6409, AS PER PLAT RECORDED IN BOOK 80 OF MAPS,
PAGES 11 AND 12, RECORDS OF SAID COUNTY.

EXCEPT THEREFROM, ALL OIL, OIL RIGHTS, NATURAL GAS RIGHTS, MINERAL RIGHTS, AND OTHER
HYDROCARBON SUBSTANCES BY WHATEVER NAME KNOWN, TOGETHER WITH APPURTENANT RIGHTS
THERETO, WITHOUT, HOWEVER, ANY RIGHT TO ENTER UPON THE SURFACE OF SAID LAND NOR ANY
PORTION OF THE SUBSURFACE LYING ABOVE A DEPTH OF 500 FEET, AS EXCEPTED OR RESERVED IN
INSTRUMENTS OF RECORD.

# EXHIBIT 4

**Fill in this information to identify your case:**

| | |
|---|---|
| Debtor 1 | **Peggy Irene Clelland** |
| | First Name / Middle Name / Last Name |
| Debtor 2 | **Joel Douglas Clelland** |
| (Spouse if, filing) | First Name / Middle Name / Last Name |
| United States Bankruptcy Court for the: | CENTRAL DISTRICT OF CALIFORNIA |
| Case number (if known) | |

☐ Check if this is an amended filing

## Official Form 106D

# Schedule D: Creditors Who Have Claims Secured by Property          12/15

Be as complete and accurate as possible. If two married people are filing together, both are equally responsible for supplying correct information. If more space is needed, copy the Additional Page, fill it out, number the entries, and attach it to this form. On the top of any additional pages, write your name and case number (if known).

**1. Do any creditors have claims secured by your property?**

☐ No. Check this box and submit this form to the court with your other schedules. You have nothing else to report on this form.

■ Yes. Fill in all of the information below.

### Part 1: List All Secured Claims

2. **List all secured claims.** If a creditor has more than one secured claim, list the creditor separately for each claim. If more than one creditor has a particular claim, list the other creditors in Part 2. As much as possible, list the claims in alphabetical order according to the creditor's name.

| | | Column A Amount of claim Do not deduct the value of collateral. | Column B Value of collateral that supports this claim | Column C Unsecured portion If any |
|---|---|---|---|---|
| **2.1** Cenlar<br>Creditor's Name | Describe the property that secures the claim:<br>**1339 Alta Ave Upland, CA 91786**<br>**San Bernardino County** | $265,390.00 | $413,306.00 | $0.00 |

**P.o.Box 77404**
**Trenton, NJ 08628**

Number, Street, City, State & Zip Code

**As of the date you file, the claim is:** Check all that apply.
☐ Contingent
☐ Unliquidated
☐ Disputed

**Nature of lien.** Check all that apply.

**Who owes the debt?** Check one.
☐ Debtor 1 only
■ Debtor 2 only
☐ Debtor 1 and Debtor 2 only
☐ At least one of the debtors and another
☐ Check if this claim relates to a community debt

☐ An agreement you made (such as mortgage or secured car loan)
☐ Statutory lien (such as tax lien, mechanic's lien)
☐ Judgment lien from a lawsuit
■ Other (including a right to offset)   **First Mortgage**

| | |
|---|---|
| | Opened 3/24/10 Last Active |
| Date debt was incurred | 11/04/15 |

Last 4 digits of account number   **6061**

| | | | | |
|---|---|---|---|---|
| **2.2** **Specialized Loan Servi**<br>Creditor's Name | Describe the property that secures the claim:<br>**1339 Alta Ave Upland, CA 91786**<br>**San Bernardino County** | $122,323.00 | $413,306.00 | $0.00 |

**Attn: Bankruptcy**
**8742 Lucent Blvd.  Suite 300**
**Highlands Ranch, CO 80129**

Number, Street, City, State & Zip Code

**As of the date you file, the claim is:** Check all that apply.
☐ Contingent
☐ Unliquidated
☐ Disputed

**Nature of lien.** Check all that apply.

**Who owes the debt?** Check one.
■ Debtor 1 only
☐ Debtor 2 only
☐ Debtor 1 and Debtor 2 only
☐ At least one of the debtors and another

☐ An agreement you made (such as mortgage or secured car loan)
☐ Statutory lien (such as tax lien, mechanic's lien)
☐ Judgment lien from a lawsuit

Software Copyright (c) 1996-2016 Best Case, LLC - www.bestcase.com          Best Case Bankruptcy

**Fill in this information to identify your case:**

| | | | |
|---|---|---|---|
| Debtor 1 | **Peggy Irene Clelland** | | |
| | First Name | Middle Name | Last Name |
| Debtor 2 | **Joel Douglas Clelland** | | |
| (Spouse if, filing) | First Name | Middle Name | Last Name |
| United States Bankruptcy Court for the: | CENTRAL DISTRICT OF CALIFORNIA | | |
| Case number (if known) | | | |

☐ Check if this is an amended filing

## Official Form 106C

# Schedule C: The Property You Claim as Exempt

4/16

Be as complete and accurate as possible. If two married people are filing together, both are equally responsible for supplying correct information. Using the property you listed on *Schedule A/B: Property* (Official Form 106A/B) as your source, list the property that you claim as exempt. If more space is needed, fill out and attach to this page as many copies of *Part 2: Additional Page* as necessary. On the top of any additional pages, write your name and case number (if known).

**For each item of property you claim as exempt, you must specify the amount of the exemption you claim.** One way of doing so is to state a specific dollar amount as exempt. Alternatively, you may claim the full fair market value of the property being exempted up to the amount of any applicable statutory limit. Some exemptions—such as those for health aids, rights to receive certain benefits, and tax-exempt retirement funds—may be unlimited in dollar amount. However, if you claim an exemption of 100% of fair market value under a law that limits the exemption to a particular dollar amount and the value of the property is determined to exceed that amount, your exemption would be limited to the applicable statutory amount.

**Part 1:    Identify the Property You Claim as Exempt**

1. **Which set of exemptions are you claiming?** *Check one only, even if your spouse is filing with you.*

   ■ You are claiming state and federal nonbankruptcy exemptions.   11 U.S.C. § 522(b)(3)

   ☐ You are claiming federal exemptions.   11 U.S.C. § 522(b)(2)

2. **For any property you list on *Schedule A/B* that you claim as exempt, fill in the information below.**

| Brief description of the property and line on *Schedule A/B* that lists this property | Current value of the portion you own<br>Copy the value from *Schedule A/B* | Amount of the exemption you claim<br>*Check only one box for each exemption.* | Specific laws that allow exemption |
|---|---|---|---|
| **1339 Alta Ave Upland, CA 91786  San Bernardino County**<br>Line from *Schedule A/B*: **1.1** | $413,306.00 | ■    $25,593.00<br>☐ 100% of fair market value, up to any applicable statutory limit | C.C.P. § 703.140(b)(1) |
| **2003 Toyota Corolla 140000 miles**<br>Line from *Schedule A/B*: **3.1** | $3,394.00 | ■    $3,394.00<br>☐ 100% of fair market value, up to any applicable statutory limit | C.C.P. § 703.140(b)(2) |
| **2006 Chevy Tahoe LS 230000 miles**<br>Line from *Schedule A/B*: **3.2** | $3,300.00 | ■    $2,157.00<br>☐ 100% of fair market value, up to any applicable statutory limit | C.C.P. § 703.140(b)(5) |
| **3 Bedroom Sets, 1 Dining Room Set, 1 Living Room Set, Washer, Dryer, 1 Fridge, 1 Stove**<br>Line from *Schedule A/B*: **6.1** | $3,000.00 | ■    $3,000.00<br>☐ 100% of fair market value, up to any applicable statutory limit | C.C.P. § 703.140(b)(3) |
| **3 TV's, 2 Cellphones, 1 Tablet**<br>Line from *Schedule A/B*: **7.1** | $500.00 | ■    $500.00<br>☐ 100% of fair market value, up to any applicable statutory limit | C.C.P. § 703.140(b)(3) |

Software Copyright (c) 1996-2016 Best Case, LLC - www.bestcase.com

Debtor 1  **Peggy Irene Clelland**
Debtor 2  **Joel Douglas Clelland**

Case number (if known) _____

| Brief description of the property and line on *Schedule A/B* that lists this property | Current value of the portion you own | Amount of the exemption you claim | Specific laws that allow exemption |
|---|---|---|---|
| | Copy the value from *Schedule A/B* | *Check only one box for each exemption.* | |
| **Misc Décor, Comic Books** Line from *Schedule A/B*: **8.1** | $300.00 | ■ $300.00<br>☐ 100% of fair market value, to any applicable statutory limit | C.C.P. § 703.140(b)(3) |
| **1 Handgun, 1 Shotgun** Line from *Schedule A/B*: **10.1** | $200.00 | ■ $200.00<br>☐ 100% of fair market value, to any applicable statutory limit | C.C.P. § 703.140(b)(5) |
| **4 Suits, Everyday Wear** Line from *Schedule A/B*: **11.1** | $500.00 | ■ $500.00<br>☐ 100% of fair market value, up to any applicable statutory limit | C.C.P. § 703.140(b)(3) |
| **2 Wedding Bands, Misc Costume Jewelry** Line from *Schedule A/B*: **12.1** | $200.00 | ■ $200.00<br>☐ 100% of fair market value, up to any applicable statutory limit | C.C.P. § 703.140(b)(4) |
| **Checking: United Catholics Federal Credit Union** Line from *Schedule A/B*: **17.1** | $50.00 | ■ $50.00<br>☐ 100% of fair market value, up to any applicable statutory limit | C.C.P. § 703.140(b)(5) |
| **Savings: United Catholics Federal Credit Union** Line from *Schedule A/B*: **17.2** | $25.00 | ■ $25.00<br>☐ 100% of fair market value, up to any applicable statutory limit | C.C.P. § 703.140(b)(5) |
| **Savings: Chaffey FCU** Line from *Schedule A/B*: **17.3** | $100.00 | ■ $100.00<br>☐ 100% of fair market value, up to any applicable statutory limit | C.C.P. § 703.140(b)(5) |
| **Checking: US Bank** Line from *Schedule A/B*: **17.4** | $50.00 | ■ $50.00<br>☐ 100% of fair market value, up to any applicable statutory limit | C.C.P. § 703.140(b)(5) |
| **Savings: US Bank** Line from *Schedule A/B*: **17.5** | $50.00 | ■ $50.00<br>☐ 100% of fair market value, up to any applicable statutory limit | C.C.P. § 703.140(b)(5) |
| **457: VOYA** Line from *Schedule A/B*: **21.1** | $9,500.00 | ■ $9,500.00<br>☐ 100% of fair market value, up to any applicable statutory limit | C.C.P. § 703.140(b)(10)(E) |
| **403(b): New York Life** Line from *Schedule A/B*: **21.2** | $1,100.00 | ■ $1,100.00<br>☐ 100% of fair market value, up to any applicable statutory limit | C.C.P. § 703.140(b)(10)(E) |

Debtor 1    **Peggy Irene Clelland**
Debtor 2    **Joel Douglas Clelland**                                                                     Case number (if known) _____

| Brief description of the property and line on *Schedule A/B* that lists this property | Current value of the portion you own | Amount of the exemption you claim | Specific laws that allow exemption |
|---|---|---|---|
| | Copy the value from *Schedule A/B* | *Check only one box for each exemption.* | |
| **457: VOYA** <br> Line from *Schedule A/B*: **21.3** | $2,500.00 | ■ $2,500.00 <br> ☐ 100% of fair market value, up to any applicable statutory limit | C.C.P. § 703.140(b)(10)(E) |
| **Knights of Columbus Life Insurance** <br> **Beneficiary: Peggy Clelland** <br> Line from *Schedule A/B*: **31.1** | $2,383.00 | ■ $2,383.00 <br> ☐ 100% of fair market value, up to any applicable statutory limit | C.C.P. § 703.140(b)(8) |
| **Transamerica Life Insurance** <br> **Beneficiary: Peggy Clelland** <br> Line from *Schedule A/B*: **31.2** | $6,332.00 | ■ $6,332.00 <br> ☐ 100% of fair market value, up to any applicable statutory limit | C.C.P. § 703.140(b)(8) |

3. **Are you claiming a homestead exemption of more than $160,375?**
   (Subject to adjustment on 4/01/19 and every 3 years after that for cases filed on or after the date of adjustment.)

   ■ No

   ☐ Yes. Did you acquire the property covered by the exemption within 1,215 days before you filed this case?

       ☐ No

       ☐ Yes

| Debtor 1 | **Peggy Irene Clelland** | | | Case number (if know) | |
|---|---|---|---|---|---|
| | First Name | Middle Name | Last Name | | |
| Debtor 2 | **Joel Douglas Clelland** | | | | |
| | First Name | Middle Name | Last Name | | |

☐ Check if this claim relates to a
  community debt

■ Other (including a right to offset)    **Purchase Money Security**

| | **Opened 11/01/05 Last Active** | | |
|---|---|---|---|
| Date debt was incurred | **12/23/15** | Last 4 digits of account number | **6333** |

Add the dollar value of your entries in Column A on this page. Write that number here: **$387,713.00**

If this is the last page of your form, add the dollar value totals from all pages. Write that number here: **$387,713.00**

**Part 2:**  List Others to Be Notified for a Debt That You Already Listed

Use this page only if you have others to be notified about your bankruptcy for a debt that you already listed in Part 1. For example, if a collection agency is trying to collect from you for a debt you owe to someone else, list the creditor in Part 1, and then list the collection agency here. Similarly, if you have more than one creditor for any of the debts that you listed in Part 1, list the additional creditors here. If you do not have additional persons to be notified for any debts in Part 1, do not fill out or submit this page.

☐ Name, Number, Street, City, State & Zip Code
**Ocwen Loan Sevicing Llc**
**1661 Worthington R**
**West Palm Beac, FL 33409**

On which line in Part 1 did you enter the creditor? **2.1**

Last 4 digits of account number **3488**

☐ Name, Number, Street, City, State & Zip Code
**Specialized Loan Servi**
**8742 Lucent Blvd.#300**
**Highlands Ranch, CO 80129**

On which line in Part 1 did you enter the creditor? **2.2**

Last 4 digits of account number ___

Official Form 106D    Additional Page of **Schedule D: Creditors Who Have Claims Secured by Property**    page 2 of 2

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding. My business address is:

**10670 Civic Center Drive, Suite 210, Rancho Cucamonga, CA 91730**

A true and correct copy of the foregoing document entitled as **NOTICE OF MOTION AND MOTION FOR RELIEF FROM THE AUTOMATIC STAY UNDER 11 U.S.C. § 362 (with supporting declarations) (REAL PROPERTY)** will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner stated below:

**1.   TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**: Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On (*date*) __03/09/2018____, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

| | | |
|---|---|---|
| *U.S. Trustee* | *Trustee* | *Debtors' Attorney* |
| ustpregion16.rs.ecf@usdoj.gov | Lynda T. Bui | Julie J. Villalobos |
| | trustee.bui@shbllp.com | Julie@oaktreelaw.com |

Courtesy NEF: Valerie Smith, claims@recoverycorp.com

☐   Service information continued on attached page

**2.   SERVED BY UNITED STATES MAIL**:
On (*date*) _03/09/2018_, I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.

| | | |
|---|---|---|
| *U.S. Bankruptcy Court Judge* | *Debtor* | Joint Debtor |
| Honorable Wayne E. Johnson | Peggy Irene Clelland | Joel Douglas Clelland |
| United States Bankruptcy Court, | 1339 Alta Ave | 1339 Alta Avenue |
| 3420 Twelfth Street, Suite 384 | Upland, CA 91786-2812 | Upland, CA 91786 |
| Riverside, CA 92501-3819 | | |

☐   Service information continued on attached page

**3.   SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL** (state method for each person or entity served): Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on (*date*) _____, I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows. Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge will be completed no later than 24 hours after the document is filed.

☐   Service information continued on attached page

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

| | | |
|---|---|---|
| March 9, 2018 | Priscilla Ramirez | /s/Priscilla Ramirez |
| *Date* | *Printed Name* | *Signature* |

This form is mandatory. It has been approved for use by the United States Bankruptcy Court for the Central District of California.