| Attorney or Party Name, Address, Telephone & FAX Nos., State Bar No. & Email Address | FOR COURT USE ONLY |
|---|---|
| Lynda T. Bui, Trustee<br>3550 Vine Street, Suite 210<br>Riverside, California 92507<br>Telephone: (949) 340-3400<br>Facsimile: (949) 340-3000<br>Email: trustee.bui@shbllp.com<br><br>Chapter 7 Trustee<br><br><br><br>☐ *Individual appearing without attorney*<br>☐ *Attorney for:* | |

## UNITED STATES BANKRUPTCY COURT
## CENTRAL DISTRICT OF CALIFORNIA - RIVERSIDE DIVISION

| In re:<br><br>PEGGY IRENE CLELLAND<br>aka Peggy Irene Casey, and<br>JOEL DOUGLAS CLELLAND<br>aka Joel Clelland,<br><br><br>Debtor(s). | CASE NO.: 6:17-bk-10928-WJ<br><br>CHAPTER: 7<br><br><br>**NOTICE OF SALE OF ESTATE PROPERTY** |

| **Sale Date:** 01/08/2019 | **Time:** 1:00 pm |
|---|---|
| **Location:** Courtroom 304, U.S. Bankruptcy Court, 3420 Twelfth Street, Riverside, CA 92501 | |

**Type of Sale**: ☒ Public   ☐ Private       **Last date to file objections**: 12/26/2018

**Description of property to be sold**: Residential property located at 1339 Alta Avenue, Upland, CA 91786

**Terms and conditions of sale**: See attached for more information.

**Proposed sale price**: $382,250.00, subject to lender approval

---

This form is mandatory. It has been approved for use in the United States Bankruptcy Court for the Central District of California.

**Overbid procedure (*if any*)**: Not applicable

**If property is to be sold free and clear of liens or other interests, list date, time and location of hearing:**

1/8/2019 at 1:00 pm

United States Bankruptcy Court

Courtroom 304

3420 Twelfth Street

Riverside, CA 92501

**Contact person for potential bidders (*include name, address, telephone, fax and/or email address*):**

Lynda T. Bui, Chapter 7 Trustee

3550 Vine Street, Suite 210

Riverside, California  92507

Telephone: (949) 340-3400

Facsimile: (949) 340-3000

Email:  trustee.bui@shbllp.com

Date: 12/18/2018

This form is mandatory.  It has been approved for use in the United States Bankruptcy Court for the Central District of California.

December 2012                                    Page 2                            **F 6004-2.NOTICE.SALE**

| Attorney or Party Name, Address, Telephone & FAX Nos., State Bar No. & Email Address | FOR COURT USE ONLY |
|---|---|
| Lynda T. Bui, Trustee<br>3550 Vine Street, Suite 210<br>Riverside, California  92507<br>Telephone: (949) 340-3400<br>Facsimile: (949) 340-3000<br>Email:  trustee.bui@shbllp.com<br><br>Chapter 7 Trustee<br><br><br>☐ *Individual appearing without attorney*<br>☐ *Attorney for:* | |

## UNITED STATES BANKRUPTCY COURT
## CENTRAL DISTRICT OF CALIFORNIA - RIVERSIDE DIVISION

| In re:<br><br>PEGGY IRENE CLELLAND<br>aka Peggy Irene Casey, and<br>JOEL DOUGLAS CLELLAND<br>aka Joel Clelland,<br><br><br><br><br><br><br>Debtor(s). | CASE NO.: 6:17-bk-10928-WJ<br><br>CHAPTER: 7 |
|---|---|
| | **NOTICE OF MOTION FOR:**<br><br>Chapter 7 Trustee's Motion for Order: (1) Authorizing the Short Sale of Real Property of the Estate Free and Clear of Liens Pursuant to Bankruptcy Code §§ 363(b) and 363(f); (2) Approving Payment of Real Estate Commission; and (3) Granting Related Relief<br><br>*(Specify name of Motion)* |
| | DATE: 01/08/2019<br>TIME:  1:00 pm<br>COURTROOM: 304<br>PLACE: 3420 Twelfth Street<br>                  Riverside, CA 92501 |

1.  TO (*specify name*):  United States Trustee, Debtors, Creditors, Parties in Interest, and their respective counsel

2.  NOTICE IS HEREBY GIVEN that on the following date and time and in the indicated courtroom, Movant in the above-captioned matter will move this court for an Order granting the relief sought as set forth in the Motion and accompanying supporting documents served and filed herewith. Said Motion is based upon the grounds set forth in the attached Motion and accompanying documents.

3.  **Your rights may be affected**. You should read these papers carefully and discuss them with your attorney, if you have one. (If you do not have an attorney, you may wish to consult one.)

---

This form is mandatory.  It has been approved for use in the United States Bankruptcy Court for the Central District of California.

4. **Deadline for Opposition Papers:** This Motion is being heard on regular notice pursuant to LBR 9013-1. If you wish to oppose this Motion, you must file a written response with the court and serve a copy of it upon the Movant or Movant's attorney at the address set forth above no less than fourteen (14) days prior to the above hearing date.  If you fail to file a written response to this Motion within such time period, the court may treat such failure as a waiver of your right to oppose the Motion and may grant the requested relief.

5. **Hearing Date Obtained Pursuant to Judge's Self-Calendaring Procedure:** The undersigned hereby verifies that the above hearing date and time were available for this type of Motion according to the judge's self-calendaring procedures.

Date:   12/18/2018

_____
Printed name of law firm


/s/ Lynda T. Bui
_____
Signature


/s/ Lynda T. Bui
_____
Printed name of attorney

This form is mandatory.  It has been approved for use in the United States Bankruptcy Court for the Central District of California.

*December 2012*                              Page 2                    **F 9013-1.1.HEARING.NOTICE**

Lynda T. Bui, Trustee
3550 Vine Street, Suite 210
Riverside, California  92507
Telephone:    (949) 340-3400
Facsimile:    (949) 340-3000
Email:        trustee.bui@shbllp.com

Chapter 7 Trustee

# UNITED STATES BANKRUPTCY COURT

## CENTRAL DISTRICT OF CALIFORNIA, RIVERSIDE DIVISION

| | |
|---|---|
| In re | Case No.  6:17-bk-10928-WJ |
| **PEGGY IRENE CLELLAND** **aka Peggy Irene Casey, and** **JOEL DOUGLAS CLELLAND** **aka Joel Clelland,** | Chapter 7 |
| | **CHAPTER 7 TRUSTEE'S MOTION FOR ORDER:** |
| | **(1) AUTHORIZING THE SHORT SALE OF REAL PROPERTY OF THE ESTATE FREE AND CLEAR OF LIENS PURSUANT TO BANKRUPTCY CODE §§ 363(b) AND 363(f);** |
| Debtors. | **(2) APPROVING PAYMENT OF REAL ESTATE COMMISSION; AND** |
| | **(3) GRANTING RELATED RELIEF** |
| | **MEMORANDUM OF POINTS AND AUTHORITIES AND DECLARATIONS OF LYNDA T. BUI AND PATRICK BUTLER IN SUPPORT THEREOF** |
| | **Real Property located at:** **1339 Alta Avenue, Upland, CA 91786** |
| | **Hearing Date:** Date:  January 8, 2019 Time:  1:00 pm Place: Courtroom 304           3420 Twelfth Street           Riverside, CA 92501 |

LYNDA T. BUI
CHAPTER 7 TRUSTEE
3550 Vine Street, Suite 210
Riverside, CA 92507

1

23018-000/50 Sale Mtn TC Clelland Re 1339 Alta Avenue, Upland, CA.docx

**TO THE HONORABLE WAYNE JOHNSON, UNITED STATE BANKRUPTCY JUDGE, THE OFFICE OF THE UNITED STATES TRUSTEE, THE DEBTORS AND ALL CREDITORS AND OTHER INTERESTED PARTIES AND THEIR COUNSEL OF RECORD:**

Lynda T. Bui, the Chapter 7 trustee ("Trustee") for the bankruptcy estate ("Estate") of Peggy Irene Clelland and Joel Douglas Clelland ("Debtor"), brings this *Chapter 7 Trustee's Motion for Order: (1) Authorizing the **Short Sale** of Real Property of the Estate Free and Clear of Liens Pursuant to Bankruptcy Code §§ 363(b) and 363(f); (2) Approving Payment of Real Estate Commission; and (3) Granting Related Relief* ("Sale Motion") and respectfully represents as follows:

## I.      **BACKGROUND**

The Debtors commenced this bankruptcy case under Chapter 7 by filing a Voluntary Petition on February 7, 2017.  Lynda T. Bui is the duly appointed, qualified and acting Chapter 7 trustee for the Estate.

The last date to file claims in the case was August 14, 2017.  Government claims were due by August 7, 2017.  The Court's Claims Register indicates there have been nine claims filed totaling $43,880.14, consisting of $506.71 in priority claims and $43,373.43 in general unsecured claims.

Property of the Estate includes the Debtors' interest in the real property located at 1339 Alta Avenue, Upland, California 91786 ("Property").   Attached as **Exhibit 1** to the Declaration of Lynda T. Bui ("Bu Declaration") are true and correct copies of the Debtors' Schedules A/B, C and D.  On their Schedule A, the Debtors valued their interest in the Property at $413,306.00  and listed two liens on their Schedule D in favor of (i) Cenlar (Senior Secured Creditor ) in the amount of $265,390.00 and (ii)  Specialized Loan Servicing, LLC ("Junior Secured Creditor ") in the amount of $122,323.00, for total liens of $387,713.00 (the Senior Secured Creditor and Junior Secured Creditor are collectively referred to as the "Secured Creditors").  Based on the Schedules there does not appear to be equity in the Property for the benefit of the Estate.

A Preliminary Title Report on the Property dated December 13, 2018 is attached to the Declaration of Lynda T. Bui ("Bui Declaration") as **Exhibit 2**.  The outstanding liens against the Property are as shown on the Preliminary Title Report.  Based on the Debtors' Schedules and the Preliminary Title Report, the Property is over-encumbered.

The Court has ordered Secured Creditors' relief from the automatic stay in this case.[1]  In addition, the Senior Secured Creditor has scheduled a foreclosure sale on the Property for January 9, 2019 at 1:00 p.m.  Attached as **Exhibit 3** to the Bui Declaration is a true and correct copy of the Senior Secured Creditor's Notice of Trustee's Sale which indicates the amount owed on its lien is $309,255.62.

Pursuant to Court order entered on August 14, 2018 (docket 49), the Trustee was authorized to employ the Broker Team of Sentinel Real Estate & Investments (through its sales agent Gregory Shipp) and BK Global Real Estate Services as her real estate broker for the Property.

Pursuant to order entered on September 18, 2018 (docket 54) ("Settlement Order"), the Court approved a certain Settlement Agreement between the Trustee on behalf of the Estate and the Debtors.   Under the Settlement Agreement: (i) the Debtors agreed to cooperate with the Trustee's efforts to market the Property for a short sale and cooperate in the short sale process, (ii) the Trustee would file a Motion with the Bankruptcy Court to request approval of the short sale that provides payment of all expenses associated with the short sale, including payment of a standard real estate brokerage commission, and a payment to the Estate to provide for meaningful distribution on allowed unsecured claims,

---

[1]  On March 29, 2018, the Court entered an order (docket 39) granting Lakeview Loan Servicing, LLC (loan servicer for the current beneficiary of first trust deed on the Property) relief from automatic stay of 11 U.S.C. § 362(a) to allow it to move forward with a foreclosure upon and to obtain possession of the Property in accordance with applicable non-bankruptcy law.

On April 17, 2018, the Court entered an order (docket 44) granting Deutsche Bank National Trust Company, as Trustee, for IndyMac Home Equity Mortgage Loan Asset-backed Trust, Series 2006-H1 (current beneficiary of the second trust deed on the Property) relief from automatic stay of 11 U.S.C. § 362(a) to allow it to move forward with a foreclosure upon and to obtain possession of the Property in accordance with applicable non-bankruptcy law.

1    (iii) any "net proceeds"[2] generated from the Trustee's short sale of the Property shall be

2    split as follows: 50% to the Estate ("Estate Settlement Amount"), and 50% to the Debtors

3    ("Debtors' Settlement Amount"), (iv) the Estate Settlement Amount shall be used by the

4    Estate for payment of administrative claims of the Estate and allowed unsecured claims

5    against the Estate, and (v) as the Property is encumbered by liens that exceed its value

6    and there is no equity, in exchange for the Debtors' Settlement Amount,  the Debtors

7    agreed to waive their claimed exemption in the Property of $25,593.00 under C.C.P. §

8    703.140(b)(1).  A true and correct copy of the Settlement Order is attached to the Bui

9    Declaration as **Exhibit 4** and a true and correct copy of the Settlement Agreement is

10    attached to the Bui Declaration as **Exhibit 5**.

11        Attached as **Exhibit 6** to the Bui Declaration is a true and correct copy of the

12    purchase offer for the Property received from Yao Juan Xu ("Buyer") or his assignee[3],

13    whose address is 4394 Hiwassee, Claremont, CA 91711.  The Buyer has offered to

14    purchase the Property for $382,250.00.

15        Through the proposed sale, the lien of the Senior Secured Creditor will be paid an

16    amount as agreed to by the Senior Secured Creditor so as to satisfy the lien, and the lien

17    of the Junior Secured Creditor will be paid no less than $23,000.00 as agreed to by the

18    Junior Secured Creditor.  Attached here as **Exhibit 7** is a true and correct copy of the letter

19    from the Junior Secured Creditor approving the short sale of the Property.

20        The following chart provides information in compliance with LBR 6004-1(c)(3):

| LBR 6004-1(c)(3) Requirement | Information |
|---|---|
| *LBR 6004-1(c)(3)(A)*<br>Date, Time, and Place of hearing on the proposed sale: | Hearing Date and Time: January 8, 2019 at 1:00 p.m.<br>Hearing Place:    U.S. Bankruptcy Court<br>    Courtroom 304<br>    3420 Twelfth Street<br>    Riverside, CA 92501 |

[2] The term "net proceeds" shall mean the gross proceeds generated from the sale of the Property, *less* (i) satisfaction of the Secured Creditors' liens, including all arrearages; (ii) payment of all outstanding property taxes; and (iii) typical pro-rations and closing costs, including escrow fees and real estate commissions.

[3] The Trustee has final discretion to approve or not approve the assignee.

| **LBR 6004-1(c)(3) Requirement** | **Information** |
|---|---|
| LBR 6004-1(c)(3)(B)<br>Name and address of the proposed buyer: | Yao Juan Xu (or his assignee[4]) whose address is 4394 Hiwassee, Claremont, CA 91711. |
| LBR 6004-1(c)(3)(C)<br>Description of the property to be sold: | Real property located at: 1339 Alta Avenue, Upland, CA 91786 |
| LBR 6004-1(c)(3)(D)<br>Terms and conditions of the proposed sale, including the price and all contingencies: | Buyer has offered $382,250.00.   Under the transaction, payment of all expenses associated with the short sale, including payment of a maximum 6% real estate brokerage commission to the Broker Team and a fee for the Estate of approximately $20,000.00, provide for meaningful distribution on allowed unsecured claims will be paid.  The Property will not be sold unless the Estate receives this fee.  Upon close of escrow, the liens of Secured Creditors will be released and all of their claims against the Property and the Estate with respect to the Property (including any deficiency claims resulting from the Trustee's sale of the Property), will be waived. |
| LBR 6004-1(c)(3)(E)<br>Whether the proposed sale is free and clear of liens, claims or interests, or subject to them, and a description of all such liens, claims or interests: | Liens impacting the Property are identified in the Title Report attached as **Exhibit 2**. The liens of the Secured Creditors will be paid in amounts as agreed to by the Secured Creditors and such liens will be released.  Pursuant to Bankruptcy Code sections 363(f)(1) and 363(f)(5) any and all liens that are junior to that of the Secured Creditors, will be released, discharged and terminated at the close of escrow to the extent they are not satisfied or released prior to closing, and the Property will be sold free and clear of the liens that are junior to the Secured Creditors and such liens will not attach to the sale proceeds. |
| LBR 6004-1(c)(3)(F)<br>Whether the proposed sale is subject to higher and better bids: | Yes to the extent the lender requires the highest and best offer and one that is consistent with the lender's own appraisal. |
| LBR 6004-1(c)(3)(G)<br>Consideration to be received by the Estate, including estimated commissions, fees and other costs of sale: | The Estate is expected to receive $20,000.00.  The estimated costs of sale is 8% of the sale price (includes broker commission).  Sale price and costs of sale are subject to the Secured Creditors' approval. |
| LBR 6004-1(c)(3)(H)<br>If authorization if sought to pay commission, the identity of the auctioneer, broker, or sales agent and the amount or percentage of the proposed commission to be paid: | The Broker Team's commission shall not to exceed six percent of the purchase price.  The broker representing the purchaser of the Property is Sentinel Real Estate & Investments through its sales agent Jameson Shipp ("Selling Broker"), the commission will be split between the Broker Team and the Selling Broker as follows:<br><br><table><tr><td>Broker Team<br>Bk Global Real Estate Services</td><td>2% or $7,645.00</td></tr><tr><td>Broker Team<br>Sentinel Real Estate & Investments through its agent Gregory Shipp</td><td>2% or $7,645.00</td></tr><tr><td>Selling Broker<br>Sentinel Real Estate & Investments through its agent Jameson Shipp</td><td>2% or $7,645.00</td></tr></table> |

---

[4] The Trustee has final discretion to approve or not approve the assignee.

LYNDA T. BUI
CHAPTER 7 TRUSTEE
3550 Vine Street, Suite 210
Riverside, CA 92507

23018-000/50 Sale Mtn TC Clelland Re 1339 Alta Avenue, Upland, CA.docx

| **LBR 6004-1(c)(3) Requirement** | **Information** |
|---|---|
| *LBR 6004-1(c)(3)(I)*<br>A description of the estimated or possible tax consequences to the Estate, if known, and how any tax liability generated by the sale of the property will be paid: | Trustee believes there will be no tax liability from the sale because she is informed that the Property is being sold for less than the Debtors' purchase price for the Property and there will be no gain from the sale. |
| *LBR 6004-1(c)(3)(J)*<br>Deadline to file and serve objection: | Objections, if any, must be filed and served 14 days prior to the Hearing Date (or by December 26, 2018). |

## II.    RELIEF REQUESTED

Through this Sale Motion, the Trustee is seeking authority sell the Property on an as-is, where-is basis, without any warranties or representations, to the Buyer on the terms and conditions of the purchase offer attached as **Exhibit 6** to the Bui Declaration and the Junior Secured Creditor approval letter attached as **Exhibit 7** to the Bui Declaration. Through the sale, all liens shown on the Preliminary Title Report will be fully satisfied as agreed to by the Secured Creditors.  All costs of sale including escrow fees, and a broker's commission of no more than 6% will be paid through escrow and the Estate will receive proceeds of approximately $20,000.00 (50% of which will be paid to the Debtors under the Settlement Agreement and Settlement Order).

The Trustee believes that it is in the best interest of the Estate and its creditors to short sell the Property as proposed in this Sale Motion.  The alternative is abandon the Estate's interest in the Property and creditors will not receive anything from the Property as both Secured Creditors have obtained relief from stay and the Senior Secured Creditor has a foreclosure sale scheduled on the Property (scheduled for January 9, 2019).

Nothing in the Sale Motion is intended to impair any Secured Creditors' right to foreclose on the Property.

Pursuant to Local Bankruptcy Rule 6004-1(g), once the short sale closes, the Trustee will file with the Court a *Report of Sale* which details the sale terms approved by the Junior Secured Creditor.

# III.    ARGUMENT

**A.    There is a Good Business Reason for the Sale and the Sale is in the Best Interest of the Estate.[5]**

The duties of a trustee in a Chapter 7 filing are enumerated in 11 U.S.C. §704, which provides in relevant part as follows:

(a) The trustee shall—

(1) collect and reduce to money the property of the estate for which such trustee serves, and close such estate as expeditiously as is compatible with the best interests of parties in interest;

(2) be accountable for all property received;

11 U.S.C. §704(a).  Further, the Trustee, after notice and hearing, may sell property of the estate.  11 U.S.C. § 363(b).  Courts ordinarily will approve a proposed sale if there is a good business reason for the sale and the sale is in the bests interests of the estate.  *In re Wilde Horse Enterprises, Inc.*, 136 B.R. 830, 841 (Bankr. C.D. Cal. 1991); *In re Lionel Corp.*, 722 F.2d 1063, 1069 (2d Cir. 1983).  In this case, the sale is anticipated to net the Estate of approximately $20,000.00 that will be paid as part of the short sale.

**B.    The Proposed Sale Should be Allowed Free and Clear of Liens**

Bankruptcy Code Section 363(f) allows a trustee to sell property of the bankruptcy estate "free and clear of any interest in such property of an entity," if any one of the following five conditions is met:

(1)    applicable non-bankruptcy law permits a sale of such property free and clear of such interest;

(2)    such entity consents;

[…]

(5)    such entity could be compelled, in a legal or equitable proceeding, to accept money satisfaction of such interest.

11 U.S.C. § 363(f).

---

[5]    Although Local Bankruptcy Rule 6004-1(c)(2)(C) does not require that a memorandum of points and authorities be filed in support of the Motion, the Trustee is nevertheless submitting one.

LYNDA T. BUI
CHAPTER 7 TRUSTEE
3550 Vine Street, Suite 210
Riverside, CA 92507

23018-000/50 Sale Mtn TC Clelland Re 1339 Alta Avenue, Upland, CA.docx

1    Section 363(f) is written in the disjunctive and thus only one of the enumerated

2 conditions needs to be satisfied for Court approval to be appropriate.  The Secured

3 Creditors will be paid amounts as agreed to by the Secured Creditors and will consent to

4 the sale, and therefore the Trustee will have satisfied § 363(f)(2).

5    With respect to liens that are junior to the Secured Creditors, if any, (to the extent

6 they are not satisfied or released prior to closing), out of an abundance of caution, the

7 Trustee proposes to sell under § 363(f)(1) and/or 363(f)(5) as in California, judicial and

8 non-judicial foreclosures can be used to wipe out such junior liens. *See* Bankruptcy Code

9 section 363(f)(1) (stating that a trustee may sell property of the estate free and clear of

10 liens or other interest when applicable nonbankruptcy law permits such a sale free and

11 clear of liens and interests).  The BAP in *Clear Chanel* stated that an example of a section

12 363(f)(1) sale is the Uniform Commercial Code section 9-320, which permits a sale free

13 and clear of a consensual security interest if the collateral is sold in the ordinary course of

14 business of the debtor.  *See Clear Channel Outdoor, Inc. v. Knupfer* (*In re* PW, LLC), 391

15 B.R. 25, 41 (9th Cir B.A.P. 2008), fn. 21; Cal. Civ. Code §2924 *et seq*.   Similarly,

16 Bankruptcy courts have expressed that the availability of foreclosure sales outside of

17 bankruptcy represent a "legal or equitable proceeding", thus allowing a bankruptcy trustee

18 to sell the subject property free and clear of liens under § 363(f)(5).  See e.g*., In re Jolan,*

19 *Inc.*, 403 B.R. 866, 869-870 (Bankr. W.D. Wash,. 2009); *In re Boston Generating, LLC*, 440

20 B.R. 302, 333 (Bankr. S.D.N.Y. 2010); *In re Aerisa, Inc.*, 2:09-bk-18456-RJH (Bankr. D.

21 Ariz).

22    In this case, if the Secured Creditors, elected to foreclose on their interest outside

23 of bankruptcy, every junior interest in the Property, would be extinguished notwithstanding

24 the fact that the foreclosure sale price may or may not pay such extinguished interests in

25 full, or at all.  In such a foreclosure proceeding, liens junior to the Secured Creditors would

26 be forced to accept the distribution allowed by the resulting foreclosure sale price, in full

27

28

1  satisfaction of its released lien.[6]  This hypothetical foreclosure sale clearly meets each

2  element of section 363(f)(5) to authorize the sale of the Property free and clear of all

3  interests, as it actively demonstrates that a junior interest "could be compelled, in a legal

4  or equitable proceeding [i.e. the foreclosure sale], to accept money satisfaction [i.e. the

5  distribution allowed pursuant to the foreclosure sale price]  of such  interest." 11 U.S.C. §

6  363(f)(5).

7        Accordingly, the Court has the authority to approve the sale of the Property free and

8  clear of the liens that are junior to the Secured Creditors' liens under Bankruptcy Code

9  sections 363(f)(1) and/or 363(f)(5).

10  **C.**　　**The Court has Authority to Waive the Fourteen-Day Stay of Sale.**

11        Federal Rule of Bankruptcy Procedure 6004(h) provides that "[a]n order authorizing

12  the use, sale or lease of property other than cash collateral is stayed until the expiration of

13  14 days after entry of the order, unless the Court orders otherwise." Fed. Rule Bankr. P.

14  6004(h).  The Trustee desires to close the sale of the Property as soon as practicable after

15  entry of an order approving the sale.  Accordingly, the Trustee requests that the Court, in

16  the discretion provided it under Federal Rule of Bankruptcy Procedure 6004(h), waive the

17  fourteen-day stay requirement.

18  **IV.**　　**CONCLUSION**

19       **WHEREFORE,** based upon the foregoing, the Trustee respectfully submits that

20  good cause exists for granting the Sale Motion and requests that the Court enter an order

21  which provides as follows:

22       1.　　Authorizing (i) the Trustee to short sell the Property on an as-is, where-is

23  basis, without any warranties or representations, to a buyer approved by the Junior

24  Secured Creditor ("Approved Buyer"), in an amount approved by Junior Secured Creditor,

25  under the terms and conditions set forth above and as approved by the Junior Secured

26

27  —————————————————

28  [6] In the hypothetical foreclosure setting for a money satisfaction of the Secured Creditor's interest, the holders of the Junior Liens may still have general unsecured claims against the Estate for the amounts that are not paid.

LYNDA T. BUI
CHAPTER 7 TRUSTEE
3550 Vine Street, Suite 210
Riverside, CA 92507

Creditor, including (i) authorizing the Trustee to comply with any written short sale approval letter from the Junior Secured Creditor, including the letter attached as **Exhibit 7**, (ii) authorizing payment of customary and normal closing costs at close of escrow, including a real estate commission of no more than 6%, (iii) upon close of escrow, the liens of the Secured Creditors shown on the Title Report are released or paid in amounts as agreed to by the Secured Creditors and all of their claims against the Property and the Estate with respect to the Property (including any deficiency claims resulting from the Trustee's sale of the Property), will be waived prior to closing or at the time of closing; (iv) approving the sale of the Property free and clear of any and all liens that are junior to the liens of the Secured Creditors, if any, (to the extent they are not satisfied or released prior to closing) pursuant to Bankruptcy Code §§ 363(f)(1) and 363(f)(5), and (v) approve the payment of approximately $20,000.00 to the Estate through the short sale transaction.

2.    Authorizing the Trustee to sign any and all documents convenient and necessary to effectuate the sale.

3.    Waiving the fourteen day stay of the order approving the sale of the Property under Federal Rules of Bankruptcy Procedure 6004(h).

4.    Pursuant to Local Bankruptcy Rule 6004-1(g), the Trustee will file a Report of Sale detailing the terms of sale with the Court once the sale closes.

5.    From the "net proceeds" generated from sale of the Property, authorizing the Trustee to pay the Debtors' Settlement Amount (fifty percent of the net proceeds) as provided for in the Settlement Agreement attached as **Exhibit 5** to the Bui Declaration.

6.    And for such other and further relief as the Court deems just and proper under the circumstances of this case.

Dated:  December 18, 2018          /s/ Lynda T. Bui

Lynda T. Bui, solely in her capacity as the
Chapter 7 Trustee for the bankruptcy estate of
Peggy Irene Clelland and Joel Douglas Clelland

LYNDA T. BUI
CHAPTER 7 TRUSTEE
3550 Vine Street, Suite 210
Riverside, CA 92507

23018-000/50 Sale Mtn TC Clelland Re 1339 Alta Avenue, Upland, CA.docx

# DECLARATION

## DECLARATION OF LYNDA T. BUI

I, Lynda T. Bui, declare:

1.    I am the duly appointed, qualified and acting Chapter 7 trustee for the bankruptcy estate ("Estate") of Peggy Irene Clelland and Joel Douglas Clelland ("Debtors"). I have personal knowledge of the facts set forth here, and if called and sworn as a witness, I could and would competently testify to the facts.

2.    I make this Declaration in support of my *Motion for Order: (1) Authorizing the* **Short Sale** *of Real Property of the Estate Free and Clear of Liens Pursuant to Bankruptcy Code §§ 363(b) and 363(f); (2) Approving Payment of Real Estate Commission; and (3) Granting Related Relief* ("Sale Motion").  All capitalized terms not otherwise defined herein shall have the meaning set forth in the Sale Motion.

3.    I have filed this Sale Motion to obtain an order approving the short sale of the Property on an "as-is, where-as" basis, to a buyer approved by the Junior Secured Creditor in an amount approved by the Junior Secured Creditor and that results in the Estate receiving approximately $20,000.00.

4.    Attached here as **Exhibit 1** are true and correct copies of the Debtors' Schedules A/B, C and D**.**

5.    Attached here as **Exhibit 2** is a true and correct copy of the Preliminary Title Report for the Property dated December 13, 2018.

6.    The Court has ordered Secured Creditors' relief from the automatic stay in this case.[7] In addition, the Senior Secured Creditor has scheduled a foreclosure sale on

---

[7]  On March 29, 2018, the Court entered an order (docket 39) granting Lakeview Loan Servicing, LLC (loan servicer for the current beneficiary of first trust deed on the Property) relief from automatic stay of 11 U.S.C. § 362(a) to allow it to move forward with a foreclosure upon and to obtain possession of the Property in accordance with applicable non-bankruptcy law.

On April 17, 2018, the Court entered an order (docket 44) granting Deutsche Bank National Trust Company, as Trustee, for IndyMac Home Equity Mortgage Loan Asset-backed Trust, Series 2006-H1 (current beneficiary of the second trust deed on the Property) relief from automatic stay of 11 U.S.C. § 362(a) to allow it to move forward with a foreclosure upon and to obtain possession of the Property in accordance with applicable non-bankruptcy law.

1  the Property for January 9, 2019 at 1:00 p.m.  Attached here as **Exhibit 3** is a true and

2  correct copy of the Notice of Trustee's Sale.

3       7.     A true and correct copy of the Settlement Order is attached here as **Exhibit 4**

4  and  true  and correct copy of the Settlement Agreement is here as **Exhibit 5**.

5       8.     Attached here as **Exhibit 6** is a true and correct copy of the offer for the

6  Property received from Yao Juan Xu (or his assignee[8]).

7       9.     Under the sale, (i) the lien of the Senior Secured Creditor will be paid in full

8  on an amount as agreed to by the Senior Secured Creditor so as to satisfy the lien, (ii) the

9  lien of the Junior Secured Creditor will be paid no less than $23,000.00 as agreed to by

10  the Junior Secured Creditor (attached here as **Exhibit 7** is a true and correct copy of the

11  letter from the Junior Secured Creditor approving the short sale of the Property), (iii)

12  through escrow, payment of all expenses associated with the short sale will be paid.  These

13  expenses include payment of a maximum 6% real estate brokerage commission to the

14  Broker Team and a fee for the Estate of approximately $20,000.00 (50% of which will be

15  paid to the Debtors under the previous Settlement Agreement and Settlement Order).

16       10.     I believe this short sale is in the best interest of the Estate as it will create

17  "equity" where there was none.  In addition, I currently have cash on hand exceeding

18  $20,000.00 from other assets.  Accordingly, I expect to distribute a meaningful distribution

19  to creditors in the range of 25% to 50%.

20    ////

21    ////

22    ////

23

24

25

26

27

28

---

[8] The Trustee has final discretion to approve or not approve the assignee.

LYNDA T. BUI
CHAPTER 7 TRUSTEE
3550 Vine Street, Suite 210
Riverside, CA 92507

23018-000/50 Sale Mtn TC Clelland Re 1339 Alta Avenue, Upland, CA.docx

11.    For the reasons set forth in the Sale Motion and this Declaration, I respectfully request that the Court grant the Sale Motion so that I do not lose this favorable business opportunity to generate a substantial amount of funds for the Estate from an asset that otherwise has no equity.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on December 18, 2018, at Riverside, California.


*/s/ Lynda T. Bui*

Lynda T. Bui

# DECLARATION

## **DECLARATION OF PATRICK BUTLER**

I, Patrick Butler, declare and state as follows:

1.      The matters stated herein are true and correct and within my personal knowledge. If called as a witness, I could and would competently testify to the matters.  I am a real estate broker, duly licensed in the State of Florida and associated with BK Global Real Estate Services ("Firm"), an entity duly licensed as a real estate brokerage firm in Florida, with an office located at 1095 Broken Sound Parkway, N.W., Suite 100, Boca Raton, FL 33487; telephone 855-658-1254.

2.      I am the Firm's broker-in-charge and am authorized by the Firm to and make this declaration in support of the *Chapter 7 Trustee's Motion for Order: (1) Authorizing the* **Short Sale** *of Real Property of the Estate Free and Clear of Liens Pursuant to Bankruptcy Code §§ 363(b) and 363(f); (2) Approving Payment of Real Estate Commission; and (3) Granting Related Relief* ("Sale Motion") filed by Lynda T. Bui, the Chapter 7 trustee ("Trustee") for the bankruptcy estate ("Estate") of Peggy Irene Clelland and Joel Douglas Clelland("Debtors").   All capitalized terms not otherwise defined herein shall have the meaning set forth in the Sale Motion.

3.      I have read the Sale Motion and am familiar with the real property located at 1339 Alta Avenue, Upland, California 91786 ("Property").

4.      As background, I would like to explain to the Court my understanding of the basic procedures that we go through to obtain the lender's short sale approval for any real property.   As a caveat, all lenders have their own procedures in addition to the basic requirements.  With respect to the basic requirement true for all short sales, we start with obtaining the listing from the bankruptcy trustee.  After a physical inspection of the property, we take pictures and put the property on the market.  To the extent that there are any showings requested, we accommodate that as well.  We coordinate with the debtor or the occupant of the property.  When we receive any offer, we send out a request for highest and best offer along with all the bankruptcy terms before submitting the highest and best to the bankruptcy trustee for review and execution.  Once we have an accepted offer, we

1   present that offer with a package of all required documents (which are lender specific).

2   The package is often voluminous and lenders can change requirements midstream and we

3   would need to submit completed documents on their forms.  Routinely, if there is anything

4   missing or not properly completed, the lender will not review the file or consider the short

5   sale.  Assuming all documents are completed and are properly submitted, the lender

6   usually obtains an independent appraisal of the property.  Depending on the lender, at this

7   stage, the file is assigned a negotiator.

8        5.     The package for a short sale for any lender always includes a proposed

9   preliminary HUD-1 which details what funds will come in for the sale and the costs to be

10   paid as well as the payoff to the lender and the payment to the Estate.  The HUD-1 is the

11   basis for which every real estate sale transaction in the United States is founded on.  There

12   is not a transaction in any 50 states that is completed without a HUD-1. The buyer, seller

13   and lender review and approve the HUD-1 before funds are dispersed through escrow in

14   the state of California. The HUD-1 is signed by all parties in agreement to the payoff of

15   each line item in the sale. The lienholder acknowledges that their final approval of closing

16   a property would be the approval of said HUD-1.  If for any reason the lender does not

17   approve a line item, it would not sign the HUD-1, and escrow could not disburse funds or

18   close the sale.

19        6.     Once the package is complete, the negotiator then reviews the entire

20   package, including the type and qualification of the proposed buyer and the proposed HUD-

21   1 and all the itemized proposed payments.  If the negotiator does not approve a certain

22   cost or payment, he or she will require that the items be deleted or otherwise modified.

23   Using the proposed HUD-1, the negotiator will cause the written short sale approval letter

24   to be generated and sent to the bankruptcy trustee and/or the borrower(s).  The short

25   approval letter usually only provides for 30 days to close escrow.  An extension is often

26   difficult to obtain.  In addition, not closing escrow within the 30 days can substantially delay

27   closing because some lenders re-start the process, others require new appraisals, and yet

28   others will proceed with foreclosure.  It is not uncommon to see the lender negotiate the

LYNDA T. BUI
CHAPTER 7 TRUSTEE
3550 Vine Street, Suite 210
Riverside, CA 92507

23018-000/50 Sale Mtn TC Clelland Re 1339 Alta Avenue, Upland, CA.docx

short sale at the same time it proceeds with the foreclosure process such that upon expiration of the approval, the subject property forecloses.  For the above reasons and based on my years of experience, it is most beneficial to obtain the Court order approving the short sale such that escrow can close shortly after the lender approves the short sale.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on December 18, 2018 at Boca Raton, Florida.


_____
Patrick Butler

LYNDA T. BUI
CHAPTER 7 TRUSTEE
3550 Vine Street, Suite 210
Riverside, CA 92507

23018-000/50 Sale Mtn TC Clelland Re 1339 Alta Avenue, Upland, CA.docx

# EXHIBIT 1

**Fill in this information to identify your case and this filing:**

| Debtor 1 | **Peggy Irene Clelland** | | |
|---|---|---|---|
| | First Name | Middle Name | Last Name |
| Debtor 2 | **Joel Douglas Clelland** | | |
| (Spouse, if filing) | First Name | Middle Name | Last Name |
| United States Bankruptcy Court for the: | CENTRAL DISTRICT OF CALIFORNIA | | |
| Case number | | | |

☐ Check if this is an amended filing

## Official Form 106A/B

# Schedule A/B: Property

12/15

In each category, separately list and describe items. List an asset only once. If an asset fits in more than one category, list the asset in the category where you think it fits best. Be as complete and accurate as possible. If two married people are filing together, both are equally responsible for supplying correct information. If more space is needed, attach a separate sheet to this form. On the top of any additional pages, write your name and case number (if known). Answer every question.

**Part 1:**  Describe Each Residence, Building, Land, or Other Real Estate You Own or Have an Interest In

1.  **Do you own or have any legal or equitable interest in any residence, building, land, or similar property?**

☐ No. Go to Part 2.

■ Yes. Where is the property?

| 1.1 | | **What is the property?** Check all that apply | Do not deduct secured claims or exemptions. Put the amount of any secured claims on *Schedule D: Creditors Who Have Claims Secured by Property.* |
|---|---|---|---|
| **1339 Alta Ave** | | ■ Single-family home | |
| Street address, if available, or other description | | ☐ Duplex or multi-unit building | |
| | | ☐ Condominium or cooperative | |
| | | ☐ Manufactured or mobile home | **Current value of the entire property?** / **Current value of the portion you own?** |
| **Upland**   CA   **91786-0000** | | ☐ Land | $413,306.00  /  $413,306.00 |
| City   State   ZIP Code | | ☐ Investment property | |
| | | ☐ Timeshare | **Describe the nature of your ownership interest** (such as fee simple, tenancy by the entireties, or a life estate), if known. |
| | | ☐ Other _____ | |
| | | **Who has an interest in the property?** Check one | Fee simple |
| **San Bernardino** | | ☐ Debtor 1 only | |
| County | | ☐ Debtor 2 only | |
| | | ■ Debtor 1 and Debtor 2 only | ■ Check if this is community property (see instructions) |
| | | ☐ At least one of the debtors and another | |
| | | Other information you wish to add about this item, such as local property identification number: | |

2.  **Add the dollar value of the portion you own for all of your entries from Part 1, including any entries for pages you have attached for Part 1. Write that number here.............................................................=>**

| $413,306.00 |
|---|

**Part 2:**  Describe Your Vehicles

**Do you own, lease, or have legal or equitable interest in any vehicles, whether they are registered or not?** Include any vehicles you own that someone else drives. If you lease a vehicle, also report it on *Schedule G: Executory Contracts and Unexpired Leases.*

# Exhibit 1

Software Copyright (c) 1996-2016 Best Case, LLC - www.bestcase.com                Best Case Bankruptcy

Debtor 1  **Peggy Irene Clelland**
Debtor 2  **Joel Douglas Clelland**

Case number *(if known)* _____

**3. Cars, vans, trucks, tractors, sport utility vehicles, motorcycles**

☐ No

☑ Yes

| | | | Do not deduct secured claims or exemptions. Put the amount of any secured claims on *Schedule D: Creditors Who Have Claims Secured by Property.* |
|---|---|---|---|

**3.1** Make: **Toyota**

Model: **Corolla**

Year: **2003**

Approximate mileage: **140000**

Other information:

**Who has an interest in the property?** Check one

☐ Debtor 1 only

☐ Debtor 2 only

☑ Debtor 1 and Debtor 2 only

☐ At least one of the debtors and another

☑ Check if this is community property
(see instructions)

**Current value of the entire property?**  $3,394.00

**Current value of the portion you own?**  $3,394.00

**3.2** Make: **Chevy**

Model: **Tahoe LS**

Year: **2006**

Approximate mileage: **230000**

Other information:

**Who has an interest in the property?** Check one

☐ Debtor 1 only

☐ Debtor 2 only

☑ Debtor 1 and Debtor 2 only

☐ At least one of the debtors and another

☑ Check if this is community property
(see instructions)

**Current value of the entire property?**  $3,300.00

**Current value of the portion you own?**  $3,300.00

**4. Watercraft, aircraft, motor homes, ATVs and other recreational vehicles, other vehicles, and accessories**
*Examples:* Boats, trailers, motors, personal watercraft, fishing vessels, snowmobiles, motorcycle accessories

☑ No

☐ Yes

**5** Add the dollar value of the portion you own for all of your entries from Part 2, including any entries for pages you have attached for Part 2. Write that number here...........................................................................=>   $6,694.00

| **Part 3:** | Describe Your Personal and Household Items |
|---|---|

Do you own or have any legal or equitable interest in any of the following items?

**Current value of the portion you own?**
Do not deduct secured claims or exemptions.

**6. Household goods and furnishings**
*Examples:* Major appliances, furniture, linens, china, kitchenware

☐ No

☑ Yes.  Describe.....

| 3 Bedroom Sets, 1 Dining Room Set, 1 Living Room Set, Washer, Dryer, 1 Fridge, 1 Stove | $3,000.00 |
|---|---|

**7. Electronics**
*Examples:* Televisions and radios; audio, video, stereo, and digital equipment; computers, printers, scanners; music collections; electronic devices including cell phones, cameras, media players, games

☐ No

☑ Yes.  Describe.....

| 3 TV's, 2 Cellphones, 1 Tablet | $500.00 |
|---|---|

# Exhibit 1

| Debtor 1 | **Peggy Irene Clelland** | | |
| Debtor 2 | **Joel Douglas Clelland** | Case number *(if known)* | |

**8.  Collectibles of value**
   *Examples:* Antiques and figurines; paintings, prints, or other artwork; books, pictures, or other art objects; stamp, coin, or baseball card collections;
   other collections, memorabilia, collectibles
   ☐ No
   ■ Yes.  Describe.....

| Misc Décor, Comic Books | $300.00 |

**9.  Equipment for sports and hobbies**
   *Examples:* Sports, photographic, exercise, and other hobby equipment; bicycles, pool tables, golf clubs, skis; canoes and kayaks; carpentry tools;
   musical instruments
   ■ No
   ☐ Yes.  Describe.....

**10.  Firearms**
   *Examples:* Pistols, rifles, shotguns, ammunition, and related equipment
   ☐ No
   ■ Yes.  Describe.....

| 1 Handgun, 1 Shotgun | $200.00 |

**11.  Clothes**
   *Examples:* Everyday clothes, furs, leather coats, designer wear, shoes, accessories
   ☐ No
   ■ Yes.  Describe.....

| 4 Suits, Everyday Wear | $500.00 |

**12.  Jewelry**
   *Examples:* Everyday jewelry, costume jewelry, engagement rings, wedding rings, heirloom jewelry, watches, gems, gold, silver
   ☐ No
   ■ Yes.  Describe.....

| 2 Wedding Bands, Misc Costume Jewelry | $200.00 |

**13.  Non-farm animals**
   *Examples:* Dogs, cats, birds, horses
   ■ No
   ☐ Yes.  Describe.....

**14.  Any other personal and household items you did not already list, including any health aids you did not list**
   ■ No
   ☐ Yes.  Give specific information.....

**15.**  Add the dollar value of all of your entries from Part 3, including any entries for pages you have attached
   for Part 3. Write that number here ..................................................................................

| $4,700.00 |

| **Part 4:** | **Describe Your Financial Assets** |

| **Do you own or have any legal or equitable interest in any of the following?** | **Current value of the portion you own?** Do not deduct secured claims or exemptions. |

**16.  Cash**
   *Examples:* Money you have in your wallet, in your home, in a safe deposit box, and on hand when you file your petition
   ■ No
   ☐ Yes...........................................................................

# Exhibit 1

Software Copyright (c) 1996-2016 Best Case, LLC - www.bestcase.com                    Best Case Bankruptcy

| Debtor 1 | **Peggy Irene Clelland** | | |
|---|---|---|---|
| Debtor 2 | **Joel Douglas Clelland** | | Case number *(if known)* |

**17. Deposits of money**

*Examples:* Checking, savings, or other financial accounts; certificates of deposit; shares in credit unions, brokerage houses, and other similar institutions. If you have multiple accounts with the same institution, list each.

☐ No

■ Yes........................    Institution name:

| | | | |
|---|---|---|---|
| 17.1. | **Checking** | **United Catholics Federal Credit Union** | **$50.00** |
| 17.2. | **Savings** | **United Catholics Federal Credit Union** | **$25.00** |
| 17.3. | **Savings** | **Chaffey FCU** | **$100.00** |
| 17.4. | **Checking** | **US Bank** | **$50.00** |
| 17.5. | **Savings** | **US Bank** | **$50.00** |

**18. Bonds, mutual funds, or publicly traded stocks**

*Examples:* Bond funds, investment accounts with brokerage firms, money market accounts

■ No

☐ Yes..................    Institution or issuer name:

**19. Non-publicly traded stock and interests in incorporated and unincorporated businesses, including an interest in an LLC, partnership, and joint venture**

■ No

☐ Yes.  Give specific information about them...................    Name of entity:    % of ownership:

**20. Government and corporate bonds and other negotiable and non-negotiable instruments**

*Negotiable instruments* include personal checks, cashiers' checks, promissory notes, and money orders.
*Non-negotiable instruments* are those you cannot transfer to someone by signing or delivering them.

■ No

☐ Yes. Give specific information about them    Issuer name:

**21. Retirement or pension accounts**

*Examples:* Interests in IRA, ERISA, Keogh, 401(k), 403(b), thrift savings accounts, or other pension or profit-sharing plans

☐ No

■ Yes. List each account separately.

| | Type of account: | Institution name: | |
|---|---|---|---|
| | **457** | **VOYA** | **$9,500.00** |
| | **403(b)** | **New York Life** | **$1,100.00** |
| | **457** | **VOYA** | **$2,500.00** |

**22. Security deposits and prepayments**

Your share of all unused deposits you have made so that you may continue service or use from a company

*Examples:* Agreements with landlords, prepaid rent, public utilities (electric, gas, water), telecommunications companies, or others

■ No

☐ Yes. .....................    Institution name or individual:

# Exhibit 1

| Debtor 1 | **Peggy Irene Clelland** | | | |
|---|---|---|---|---|
| Debtor 2 | **Joel Douglas Clelland** | | Case number *(if known)* | |

**23. Annuities** (A contract for a periodic payment of money to you, either for life or for a number of years)

■ No

☐ Yes.............    Issuer name and description.

**24. Interests in an education IRA, in an account in a qualified ABLE program, or under a qualified state tuition program.**
26 U.S.C. §§ 530(b)(1), 529A(b), and 529(b)(1).

■ No

☐ Yes.............    Institution name and description. Separately file the records of any interests.11 U.S.C. § 521(c):

**25. Trusts, equitable or future interests in property (other than anything listed in line 1), and rights or powers exercisable for your benefit**

■ No

☐ Yes.  Give specific information about them...

**26. Patents, copyrights, trademarks, trade secrets, and other intellectual property**
*Examples:* Internet domain names, websites, proceeds from royalties and licensing agreements

■ No

☐ Yes.  Give specific information about them...

**27. Licenses, franchises, and other general intangibles**
*Examples:* Building permits, exclusive licenses, cooperative association holdings, liquor licenses, professional licenses

■ No

☐ Yes.  Give specific information about them...

| Money or property owed to you? | Current value of the portion you own? Do not deduct secured claims or exemptions. |
|---|---|

**28. Tax refunds owed to you**

■ No

☐ Yes. Give specific information about them, including whether you already filed the returns and the tax years.......

**29. Family support**
*Examples:* Past due or lump sum alimony, spousal support, child support, maintenance, divorce settlement, property settlement

■ No

☐ Yes. Give specific information......

**30. Other amounts someone owes you**
*Examples:* Unpaid wages, disability insurance payments, disability benefits, sick pay, vacation pay,  workers' compensation, Social Security
benefits; unpaid loans you made to someone else

■ No

☐ Yes.  Give specific information..

**31. Interests in insurance policies**
*Examples:* Health, disability, or life insurance; health savings account (HSA); credit, homeowner's, or renter's insurance

■ No

■ Yes. Name the insurance company of each policy and list its value.

| Company name: | Beneficiary: | Surrender or refund value: |
|---|---|---|
| **Knights of Columbus Life Insurance** | **Peggy Clelland** | **$2,383.00** |
| **Transamerica Life Insurance** | **Peggy Clelland** | **$6,332.00** |

**32. Any interest in property that is due you from someone who has died**
If you are the beneficiary of a living trust, expect proceeds from a life insurance policy, or are currently entitled to receive property because
someone has died.

■ No

☐ Yes.  Give specific information..

# Exhibit 1

Debtor 1   **Peggy Irene Clelland**
Debtor 2   **Joel Douglas Clelland**                                        Case number *(if known)* _____

33. **Claims against third parties, whether or not you have filed a lawsuit or made a demand for payment**
   *Examples:* Accidents, employment disputes, insurance claims, or rights to sue
   ■ No
   ☐ Yes. Describe each claim.........

34. **Other contingent and unliquidated claims of every nature, including counterclaims of the debtor and rights to set off claims**
   ■ No
   ☐ Yes. Describe each claim.........

35. **Any financial assets you did not already list**
   ■ No
   ☐ Yes. Give specific information..

36. **Add the dollar value of all of your entries from Part 4, including any entries for pages you have attached
   for Part 4. Write that number here.................................................................................................**    | **$22,090.00** |

| Part 5: | Describe Any Business-Related Property You Own or Have an Interest In. List any real estate in Part 1. |

37. **Do you own or have any legal or equitable interest in any business-related property?**
   ■ No. Go to Part 6.
   ☐ Yes. Go to line 38.

| Part 6: | Describe Any Farm- and Commercial Fishing-Related Property You Own or Have an Interest In.
If you own or have an interest in farmland, list it in Part 1. |

46. **Do you own or have any legal or equitable interest in any farm- or commercial fishing-related property?**
   ■ No. Go to Part 7.
   ☐ Yes. Go to line 47.

| Part 7: | Describe All Property You Own or Have an Interest in That You Did Not List Above |

53. **Do you have other property of any kind you did not already list?**
   *Examples:* Season tickets, country club membership
   ■ No
   ☐ Yes. Give specific information.........

54. **Add the dollar value of all of your entries from Part 7. Write that number here** ....................................    | **$0.00** |

| Part 8: | List the Totals of Each Part of this Form |

55. **Part 1: Total real estate, line 2** ...................................................................................................    **$413,306.00**

56. **Part 2: Total vehicles, line 5**                                      **$6,694.00**
57. **Part 3: Total personal and household items, line 15**                 **$4,700.00**
58. **Part 4: Total financial assets, line 36**                            **$22,090.00**
59. **Part 5: Total business-related property, line 45**                        **$0.00**
60. **Part 6: Total farm- and fishing-related property, line 52**               **$0.00**
61. **Part 7: Total other property not listed, line 54**              +         **$0.00**

62. **Total personal property. Add lines 56 through 61...**                **$33,484.00**    Copy personal property total →    **$33,484.00**

63. **Total of all property on Schedule A/B. Add line 55 + line 62**                                              | **$446,790.00** |

# Exhibit 1

| Fill in this information to identify your case: | |
|---|---|

| Debtor 1 | **Peggy Irene Clelland** | | |
|---|---|---|---|
| | First Name | Middle Name | Last Name |
| Debtor 2 | **Joel Douglas Clelland** | | |
| (Spouse if, filing) | First Name | Middle Name | Last Name |
| United States Bankruptcy Court for the: | CENTRAL DISTRICT OF CALIFORNIA | | |
| Case number | | | |
| (if known) | | | |

☐ Check if this is an amended filing

## Official Form 106C

# Schedule C: The Property You Claim as Exempt    4/16

Be as complete and accurate as possible. If two married people are filing together, both are equally responsible for supplying correct information. Using the property you listed on *Schedule A/B: Property* (Official Form 106A/B) as your source, list the property that you claim as exempt. If more space is needed, fill out and attach to this page as many copies of *Part 2: Additional Page* as necessary. On the top of any additional pages, write your name and case number (if known).

**For each item of property you claim as exempt, you must specify the amount of the exemption you claim.** One way of doing so is to state a specific dollar amount as exempt. Alternatively, you may claim the full fair market value of the property being exempted up to the amount of any applicable statutory limit. Some exemptions—such as those for health aids, rights to receive certain benefits, and tax-exempt retirement funds—may be unlimited in dollar amount. However, if you claim an exemption of 100% of fair market value under a law that limits the exemption to a particular dollar amount and the value of the property is determined to exceed that amount, your exemption would be limited to the applicable statutory amount.

### Part 1:    Identify the Property You Claim as Exempt

1. **Which set of exemptions are you claiming?** *Check one only, even if your spouse is filing with you.*

   ■ You are claiming state and federal nonbankruptcy exemptions.  11 U.S.C. § 522(b)(3)

   ☐ You are claiming federal exemptions.  11 U.S.C. § 522(b)(2)

2. **For any property you list on *Schedule A/B* that you claim as exempt, fill in the information below.**

| Brief description of the property and line on *Schedule A/B* that lists this property | Current value of the portion you own<br><br>Copy the value from *Schedule A/B* | Amount of the exemption you claim<br><br>*Check only one box for each exemption.* | | Specific laws that allow exemption |
|---|---|---|---|---|
| **1339 Alta Ave Upland, CA 91786  San Bernardino County**<br>Line from *Schedule A/B*: **1.1** | $413,306.00 | ■ | $25,593.00 | C.C.P. § 703.140(b)(1) |
| | | ☐ | 100% of fair market value, up to any applicable statutory limit | |
| **2003 Toyota Corolla 140000 miles**<br>Line from *Schedule A/B*: **3.1** | $3,394.00 | ■ | $3,394.00 | C.C.P. § 703.140(b)(2) |
| | | ☐ | 100% of fair market value, up to any applicable statutory limit | |
| **2006 Chevy Tahoe LS 230000 miles**<br>Line from *Schedule A/B*: **3.2** | $3,300.00 | ■ | $2,157.00 | C.C.P. § 703.140(b)(5) |
| | | ☐ | 100% of fair market value, up to any applicable statutory limit | |
| **3 Bedroom Sets, 1 Dining Room Set, 1 Living Room Set, Washer, Dryer, 1 Fridge, 1 Stove**<br>Line from *Schedule A/B*: **6.1** | $3,000.00 | ■ | $3,000.00 | C.C.P. § 703.140(b)(3) |
| | | ☐ | 100% of fair market value, up to any applicable statutory limit | |
| **3 TV's, 2 Cellphones, 1 Tablet**<br>Line from *Schedule A/B*: **7.1** | $500.00 | ■ | $500.00 | C.C.P. § 703.140(b)(3) |
| | | ☐ | 100% of fair market value, up to any applicable statutory limit | |

# Exhibit 1

Software Copyright (c) 1996-2016 Best Case, LLC - www.bestcase.com    Best Case Bankruptcy

| Debtor 1 | **Peggy Irene Clelland** |
|---|---|
| Debtor 2 | **Joel Douglas Clelland** |

Case number (if known)

| Brief description of the property and line on *Schedule A/B* that lists this property | Current value of the portion you own<br><br>Copy the value from *Schedule A/B* | Amount of the exemption you claim<br><br>*Check only one box for each exemption.* | Specific laws that allow exemption |
|---|---|---|---|
| **Misc Décor, Comic Books**<br>Line from *Schedule A/B*: **8.1** | $300.00 | ■ $300.00<br>☐ 100% of fair market value, up to any applicable statutory limit | **C.C.P. § 703.140(b)(3)** |
| **1 Handgun, 1 Shotgun**<br>Line from *Schedule A/B*: **10.1** | $200.00 | ■ $200.00<br>☐ 100% of fair market value, up to any applicable statutory limit | **C.C.P. § 703.140(b)(5)** |
| **4 Suits, Everyday Wear**<br>Line from *Schedule A/B*: **11.1** | $500.00 | ■ $500.00<br>☐ 100% of fair market value, up to any applicable statutory limit | **C.C.P. § 703.140(b)(3)** |
| **2 Wedding Bands, Misc Costume Jewelry**<br>Line from *Schedule A/B*: **12.1** | $200.00 | ■ $200.00<br>☐ 100% of fair market value, up to any applicable statutory limit | **C.C.P. § 703.140(b)(4)** |
| **Checking: United Catholics Federal Credit Union**<br>Line from *Schedule A/B*: **17.1** | $50.00 | ■ $50.00<br>☐ 100% of fair market value, up to any applicable statutory limit | **C.C.P. § 703.140(b)(5)** |
| **Savings: United Catholics Federal Credit Union**<br>Line from *Schedule A/B*: **17.2** | $25.00 | ■ $25.00<br>☐ 100% of fair market value, up to any applicable statutory limit | **C.C.P. § 703.140(b)(5)** |
| **Savings: Chaffey FCU**<br>Line from *Schedule A/B*: **17.3** | $100.00 | ■ $100.00<br>☐ 100% of fair market value, up to any applicable statutory limit | **C.C.P. § 703.140(b)(5)** |
| **Checking: US Bank**<br>Line from *Schedule A/B*: **17.4** | $50.00 | ■ $50.00<br>☐ 100% of fair market value, up to any applicable statutory limit | **C.C.P. § 703.140(b)(5)** |
| **Savings: US Bank**<br>Line from *Schedule A/B*: **17.5** | $50.00 | ■ $50.00<br>☐ 100% of fair market value, up to any applicable statutory limit | **C.C.P. § 703.140(b)(5)** |
| **457: VOYA**<br>Line from *Schedule A/B*: **21.1** | $9,500.00 | ■ $9,500.00<br>☐ 100% of fair market value, up to any applicable statutory limit | **C.C.P. § 703.140(b)(10)(E)** |
| **403(b): New York Life**<br>Line from *Schedule A/B*: **21.2** | $1,100.00 | ■ $1,100.00<br>☐ 100% of fair market value, up to any applicable statutory limit | **C.C.P. § 703.140(b)(10)(E)** |

# Exhibit 1

| Debtor 1 | Peggy Irene Clelland |
|----------|----------------------|
| Debtor 2 | Joel Douglas Clelland |

Case number (if known) _____

| Brief description of the property and line on *Schedule A/B* that lists this property | Current value of the portion you own<br><br>Copy the value from *Schedule A/B* | Amount of the exemption you claim<br><br>*Check only one box for each exemption.* | Specific laws that allow exemption |
|---|---|---|---|
| **457: VOYA**<br>Line from *Schedule A/B*: **21.3** | **$2,500.00** | ■ **$2,500.00**<br>☐ 100% of fair market value, up to any applicable statutory limit | **C.C.P. § 703.140(b)(10)(E)** |
| **Knights of Columbus Life Insurance**<br>Beneficiary: Peggy Clelland<br>Line from *Schedule A/B*: **31.1** | **$2,383.00** | ■ **$2,383.00**<br>☐ 100% of fair market value, up to any applicable statutory limit | **C.C.P. § 703.140(b)(8)** |
| **Transamerica Life Insurance**<br>Beneficiary: Peggy Clelland<br>Line from *Schedule A/B*: **31.2** | **$6,332.00** | ■ **$6,332.00**<br>☐ 100% of fair market value, up to any applicable statutory limit | **C.C.P. § 703.140(b)(8)** |

3. **Are you claiming a homestead exemption of more than $160,375?**
   (Subject to adjustment on 4/01/19 and every 3 years after that for cases filed on or after the date of adjustment.)

   ■ No

   ☐ Yes. Did you acquire the property covered by the exemption within 1,215 days before you filed this case?

       ☐ No

       ☐ Yes

# Exhibit 1

Software Copyright (c) 1996-2016 Best Case, LLC - www.bestcase.com        Best Case Bankruptcy

**Fill in this information to identify your case:**

| | |
|---|---|
| Debtor 1 | **Peggy Irene Clelland** |
| | First Name      Middle Name      Last Name |
| Debtor 2 | **Joel Douglas Clelland** |
| (Spouse if, filing) | First Name      Middle Name      Last Name |
| United States Bankruptcy Court for the: | CENTRAL DISTRICT OF CALIFORNIA |
| Case number (if known) | _____ |

☐ Check if this is an amended filing

Official Form 106D

## Schedule D: Creditors Who Have Claims Secured by Property

12/15

Be as complete and accurate as possible. If two married people are filing together, both are equally responsible for supplying correct information. If more space is needed, copy the Additional Page, fill it out, number the entries, and attach it to this form. On the top of any additional pages, write your name and case number (if known).

**1. Do any creditors have claims secured by your property?**

☐ No. Check this box and submit this form to the court with your other schedules. You have nothing else to report on this form.

☐ Yes. Fill in all of the information below.

**Part 1: List All Secured Claims**

**2. List all secured claims.** If a creditor has more than one secured claim, list the creditor separately for each claim. If more than one creditor has a particular claim, list the other creditors in Part 2. As much as possible, list the claims in alphabetical order according to the creditor's name.

| | Column A<br>Amount of claim<br>Do not deduct the value of collateral. | Column B<br>Value of collateral that supports this claim | Column C<br>Unsecured portion<br>If any |
|---|---|---|---|

**2.1 Cenlar**
Creditor's Name

P.o.Box 77404
Trenton, NJ 08628
Number, Street, City, State & Zip Code

**Who owes the debt?** Check one.
☐ Debtor 1 only
☑ Debtor 2 only
☐ Debtor 1 and Debtor 2 only
☐ At least one of the debtors and another
☐ Check if this claim relates to a community debt

Date debt was incurred **Opened 3/24/10 Last Active 11/04/15**

**Describe the property that secures the claim:**

**1339 Alta Ave Upland, CA 91786 San Bernardino County**

**As of the date you file, the claim is:** Check all that apply.
☐ Contingent
☐ Unliquidated
☐ Disputed

**Nature of lien.** Check all that apply.
☐ An agreement you made (such as mortgage or secured car loan)
☐ Statutory lien (such as tax lien, mechanic's lien)
☐ Judgment lien from a lawsuit
☑ Other (including a right to offset)    **First Mortgage**

Last 4 digits of account number **6061**

Column A: **$265,390.00**    Column B: **$413,306.00**    Column C: **$0.00**

**2.2 Specialized Loan Servi**
Creditor's Name

**Attn: Bankruptcy
8742 Lucent Blvd. Suite 300
Highlands Ranch, CO 80129**
Number, Street, City, State & Zip Code

**Who owes the debt?** Check one.
☑ Debtor 1 only
☐ Debtor 2 only
☐ Debtor 1 and Debtor 2 only
☐ At least one of the debtors and another

**Describe the property that secures the claim:**

**1339 Alta Ave Upland, CA 91786 San Bernardino County**

**As of the date you file, the claim is:** Check all that apply.
☐ Contingent
☐ Unliquidated
☐ Disputed

**Nature of lien.** Check all that apply.
☐ An agreement you made (such as mortgage or secured car loan)
☐ Statutory lien (such as tax lien, mechanic's lien)
☐ Judgment lien from a lawsuit

Column A: **$122,323.00**    Column B: **$413,306.00**    Column C: **$0.00**

# Exhibit 1

| | | |
|---|---|---|
| Debtor 1 | **Peggy Irene Clelland** | Case number (if known) |
| | First Name  Middle Name  Last Name | |
| Debtor 2 | **Joel Douglas Clelland** | |
| | First Name  Middle Name  Last Name | |

☐ Check if this claim relates to a community debt    ■ Other (including a right to offset)  **Purchase Money Security**

| | **Opened 11/01/05 Last Active** | | |
|---|---|---|---|
| Date debt was incurred | **12/23/15** | Last 4 digits of account number | **6333** |

| | |
|---|---|
| Add the dollar value of your entries in Column A on this page. Write that number here: | **$387,713.00** |
| If this is the last page of your form, add the dollar value totals from all pages. Write that number here: | **$387,713.00** |

**Part 2:  List Others to Be Notified for a Debt That You Already Listed**

Use this page only if you have others to be notified about your bankruptcy for a debt that you already listed in Part 1. For example, if a collection agency is trying to collect from you for a debt you owe to someone else, list the creditor in Part 1, and then list the collection agency here. Similarly, if you have more than one creditor for any of the debts that you listed in Part 1, list the additional creditors here. If you do not have additional persons to be notified for any debts in Part 1, do not fill out or submit this page.

| | |
|---|---|
| ☐ Name, Number, Street, City, State & Zip Code **Ocwen Loan Sevicing Llc** **1661 Worthington R** **West Palm Beac, FL 33409** | On which line in Part 1 did you enter the creditor?  **2.1** Last 4 digits of account number  **3488** |
| ☐ Name, Number, Street, City, State & Zip Code **Specialized Loan Servi** **8742 Lucent Blvd.#300** **Highlands Ranch, CO 80129** | On which line in Part 1 did you enter the creditor?  **2.2** Last 4 digits of account number  ___ |

# Exhibit 1

| | | |
|---|---|---|
| Official Form 106D | Additional Page of **Schedule D: Creditors Who Have Claims Secured by Property** | page 2 of 2 |

# EXHIBIT 2

**Bright Line Title, LLC**

**5404 Cypress Center Drive, Suite 150**

**Tampa FL 33609**

# Exhibit 2

American Land Title Association
ALTA Commitment Form
Adopted 6-17-06

 **FIDELITY NATIONAL TITLE INSURANCE COMPANY** **800-943-1196**

**SCHEDULE A**

Loan No.:                              Title No.:  APS18-67325

1.      Effective date:  13th day of December, 2018
        Issue Date: 12/13/2018
        This Title Insurance Commitment is good for 60 days from the effective date. If you close a transaction based on
        this Title Insurance Commitment without a title update, Fidelity National Title Insurance Company will not issue a
        Title Insurance Policy.

2.      Policy (or Policies) to be issued:

        (a)    Owner's Policy 2006 Owner's Policy          Policy         $382,250.00
               Form                                        Amount

               Proposed Insured:      Yao Juan Xu

               Policy Premium: $1,326.00 (Additional discounts may apply)

        (b)    Loan Policy 2006 Loan Policy Form           Policy         $0.00
                                                           Amount

               Proposed Insured:

               Policy Premium: $0.00 (Additional discounts may apply)

        (c)    Proposed Insured        Policy              $0.00
                                       Amount

3.      The estate or interest in the land described or referred to in this Commitment is:

**Copyright 2006-2009 American Land Title Association.  All rights reserved.**

The use of this Form is restricted to ALTA licensees and ALTA members
in good standing as of the date of use.  All other uses are prohibited.
Reprinted under license from the American Land Title Association.

**Exhibit 2**



**FEE SIMPLE**

The estate is subject to, and the Company does not insure title to, and excepts from the description of the land, coal, lignite, oil, gas and other minerals in, under and that may be produced from the land, together with all rights, privileges, and immunities relating thereto

**Copyright 2006-2009 American Land Title Association. All rights reserved.**

The use of this Form is restricted to ALTA licensees and ALTA members
in good standing as of the date of use. All other uses are prohibited.
Reprinted under license from the American Land Title Association.

Exhibit 2



American Land Title Association

ALTA Commitment Form
Adopted 6-17-06

4.      Title to the Fee Simple estate or interest in the land is at the Effective Date vested in:

**JOEL D. CLELLAND AND PEGGY I. CLELLAND, AS TRUSTEES OF THE CLELLAND FAMILY TRUST, DATED MAY 18, 2010**

**Deed Type: Quitclaim Deed**
**Grantors: JOEL D. CLELLAND AND PEGGY I. CLELLAND**
**Grantees: JOEL D. CLELLAND AND PEGGY I. CLELLAND, AS TRUSTEES OF THE CLELLAND FAMILY TRUST, DATED MAY 18, 2010**
**Dated: May 18, 2010**
**Recorded Date: August 15, 2013**
**Consideration: $0.00**
**BOOK:**
**PAGE:**
**Instrument: 2013-0360308**
**Notes:**


**Deed Type: Grant Deed**
**Grantors: FRANK LEGGETT AND ROXANNE LEGGETT, HUSBAND AND WIFE AS JOINT TENANTS**
**Grantees: JOEL CLELLAND AND PEGGY CLELLAND, HUSBAND AND WIFE AS JOINT TENANTS**
**Dated: July 15, 2004**
**Recorded Date: August 11, 2004**
**Consideration: $0.00**
**BOOK:**
**PAGE:**
**Instrument: 2004-0577544**
**Notes:**


**Deed Type: Grant Deed**
**Grantors: PMI MORTGAGE INSURANCE CO., AN ARIZONA CORPORATION**
**Grantees: FRANK LEGGETT AND ROXANNE LEGGETT, HUSBAND AND WIFE AS JOINT TENANTS**
**Dated: January 24, 2000**
**Recorded Date: February 10, 2000**
**Consideration: $0.00**
**BOOK:**
**PAGE:**
**Instrument: 20000047299**
**Notes:**


5.      The land referred to in this Commitment is described as follows:

SEE EXHIBIT "A" ATTACHED HERETO AND MADE A PART HEREOF

Commonly known as 1339 Alta Avenue, Upland, CA 91786
However, by showing this address no additional coverage is provided

Copyright 2006-2009 American Land Title Association.  All rights reserved.

The use of this Form is restricted to ALTA licensees and ALTA members
in good standing as of the date of use.  All other uses are prohibited.
Reprinted under license from the American Land Title Association.

Exhibit 2



**American Land Title Association**                                **ALTA Commitment Form**
                                                                        **Adopted 6-17-06**

Countersigned: _____
                          Authorized Signatory
         Michele W. Jorgensen, Senior Vice President

**Copyright 2006-2009 American Land Title Association.  All rights reserved.**

The use of this Form is restricted to ALTA licensees and ALTA members
in good standing as of the date of use.  All other uses are prohibited.
Reprinted under license from the American Land Title Association.

**Exhibit 2**

AMERICAN
LAND TITLE
ASSOCIATION

**FIDELITY NATIONAL TITLE INSURANCE COMPANY**  800-943-1196

**Title No** APS18-67325

**LEGAL DESCRIPTION**

**EXHIBIT "A"**

THE LAND REFERRED TO HEREIN BELOW IS SITUATED IN THE COUNTY OF SAN BERNARDINO, STATE OF CALIFORNIA, AND IS DESCRIBED AS FOLLOWS:

LOT 2 OF TRACT 4705 AS PER MAP RECORDED IN BOOK 70, PAGES 89 AND 90 OF MAPS, IN THE OFFICE OF THE COUNTY RECORDER OF SAN BERNARDINO.

Parcel ID: 1045-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

Commonly known as 1339 Alta Avenue, Upland, CA 91786
However, by showing this address no additional coverage is provided

# Exhibit 2

American Land Title Association

**ALTA Commitment Form**
**Adopted 6-17-06**

 **FIDELITY NATIONAL TITLE INSURANCE COMPANY** 800-943-1196

**Title No.** APS18-67325

**SCHEDULE B – SECTION I**

**REQUIREMENTS**

The following requirements must be met:

1) Pay the agreed amounts for the interest in the land and/or the mortgage to be insured.

2) Pay us the premiums, fees and charges for the policy.

3) If the insured premises include a mobile or manufactured home that has not been permanently affixed to the premises, Company will not issue a final policy of title insurance and any and all obligations created under this commitment will be void.

4) Instrument(s) creating the estate or interest (Title) to be insured, executed, delivered and recorded in the Public Records of the appropriate county.

5) You must tell us in writing the name of anyone not referred to in this Commitment who will get an interest in the land or who will make a loan on the land. We may then make additional requirements or exceptions.

6) Pay all taxes, charges, and assessments affecting the land that are due and payable.

7) Duly executed Title/Owner's Affidavit.

8) Documents for recordation pertinent to this transaction are required to be presented for recording in the format required by the appropriate county recording jurisdiction

9) Tax Information to follow as Exhibit B.

10) A judgment search has been performed in the county land records, for buyer(s) Roberto C. Trevino and seller(s) Lynda T Bui as Trustee for the Bankruptcy Estate of Peggy Clelland and JOEL D CLELLAND AND PEGGY I CLELLAND, AS TRUSTEES OF THE CLELLAND FAMILY TRUST, DATED MAY 18, 2010. Results of this search for the name of buyer(s) Roberto C. Trevino and seller(s) Lynda T Bui as Trustee for the Bankruptcy Estate of Peggy Clelland and JOEL D CLELLAND AND PEGGY I CLELLAND, AS TRUSTEES OF THE CLELLAND FAMILY TRUST, DATED MAY 18, 2010 will be named in this commitment, if any. (All results herein are for information purposes only and are not warranted for content, accuracy or any other implied or explicit purpose)

11) Company requires a Grant Deed for the consideration amount of $400,000.00 from Lynda T. Bui as Trustee for the Bankruptcy Estate of Peggy Clelland, to Roberto C. Trevino, be executed, and delivered in recordable form.

12) Obtain and File Satisfactory resolution of the following matters:

1. Bankruptcy filing, **PEGGY IRENE CLELLAND** and **JOEL DOUGLAS CLELLAND** case number: 6:17-bk-10928-WJ filed 2/7/2017 San Bernardino- California. Prior case filing 11/04/2018 case number 6;2016bk19876 dismissed 1/18/2017.

2. Company requires evidence of satisfaction or release of bankruptcy filing, case number 15-04922-LT13, by Roberto Trevino and Linda J. Sandoval dated July 27, 2015 and filed in the San Diego District Court –

**Exhibit 2**

American Land Title Association

ALTA Commitment Form
Adopted 6-17-06

Bankruptcy Division, SAN DIEGO-CA District of SAN DIEGO-CA. (All results herein are for information purposes only and are not warranted for content, accuracy or any other implied or explicit purpose)

2. Company requires evidence of satisfaction/release or subordination of a Open/Line of Credit Deed of Trust instrument from JOEL CLELLAND AND PEGGY CLELLAND, HUSBAND AND WIFE AS JOINT TENANTS (borrower) dated November 7, 2005 and recorded on December 12, 2005 in  (instrument) 2005-0940520, of the official property records of SAN BERNARDINO County, CALIFORNIA in the amount of $125,000.00 and in favor of INDYMAC BANK, F.S.B., A FEDERALLY CHARTERED SAVINGS BANK (lender).  "TRUSTEE, as trustee NORTH AMERICAN TITLE INSURANCE COMPANY.Assigned to DEUTSCHE BANK NATIONAL TRUST COMPANY, AS TRUSTEE, FOR INDYMAC HOME EQUITY MORTGAGE LOAN ASSET-BACKED TRUST, SERIES 2006-H1 by instrument recorded in   (instrument) 2015-0564992 REC ON 12/29/2015.

SUBORDINATION AGREEMENT RECORDED ON 4/1/2010 IN INSTRUMENT NO. 2010-0124724.

(Company must be provided with executed copy of revolving credit/equity line account termination request signed and dated by all borrowers, in addition to satisfaction or release of any/all open-end Mortgages/Deeds of Trust noted herein.)

3. Company requires evidence of satisfaction or release of a Deed of Trust  from JOEL CLELLAND AND PEGGY CLELLAND, HUSBAND AND WIFE AS JOINT TENANTS (borrower) dated March 24, 2010 and recorded on April 1, 2010 in  (instrument) 2010-0124723, of the official property records of SAN BERNARDINO County, CALIFORNIA in the amount of $292,500.00 and in favor of MORTGAGE ELECTRONIC REGISTRATION SYSTEMS INC., AS A NOMINEE FOR ONEWEST BANK, FSB (lender) "TRUSTEE, as trustee FIDELITY NATIONAL TITLE INSURANCE CO.  Assigned to LAKEVIEW LOAN SERVICING, LLC by instrument recorded in   (instrument) 2016-0316046 REC ON 08/05/2016.

4. Evidence to be furnished that the Trust Agreement / Trust Certificate dated May 18, 2010 is still in full force and effect at the time of the conveyance of premises being insured hereunder and that there have been no modifications or charges made to same.

5. Trust Agreement / Trust Certificate dated May 18, 2010 under which current owners hold title to subject property to be produced for review by this Company.  NOTE:  The express right is reserved to make additional searches and raise additional exceptions upon review of same.  (IF APPLICABLE)
(i)    Affidavit to be submitted by the Trustees that there have been no changes or modifications to the Trust Agreement since its inception.  (IF APPLICABLE)

6. Production for examination and filing with this Company of the Trust Agreement / Trust Certificate dated May 18, 2010 under which THE CLELLAND FAMILY TRUST holds title to subject premises.  NOTE:  The express right is reserved to make additional searches and raise additional exceptions upon examination and review of said Trust Agreement.


14) Company must act as settlement agent, if an entity other than Company acts as settlement agent title policy will not be issued.

15) Company requires spousal joinder to the security instrument to be insured under this commitment to insure. Company will require joinder to the security instrument or waiver of homestead, community property, dower, and/or courtesy should the state allow this waiver to be made by separate instrument.

**NOTICE: Please be aware that due to the conflict between federal and state laws concerning the cultivation, distribution, manufacture or sale of marijuana, the Company is not able to close or insure any transaction involving Land that is associated with these activities.**

# Exhibit 2

**FIDELITY NATIONAL TITLE INSURANCE COMPANY**  800-943-1196

Title No APS18-67325

### SCHEDULE B – SECTION II

### EXCEPTIONS

Schedule B of the policy or policies to be issued will contain exceptions to the following matters unless the same are disposed of to the satisfaction of the Company:

1. Defects, liens, encumbrances, adverse claims or other matters, if any, created, first appearing in the public records or attaching subsequent to the Effective Date but prior to the date the proposed Insured acquires for value of record the estate or interest or mortgage thereon covered by this Commitment.

2. Any lien, or right to alien, for services, labor or material heretofore or hereafter furnished, imposed by law and not shown by the public records.

3. Any encroachment, conflicts in boundary lines, discrepancies, easements, measurement, encumbrance, violation, variation, adverse circumstance or other state of facts affecting the title that would be disclosed by an accurate and complete survey of the land.  The term "encroachment" includes encroachments of existing improvements located on the land onto adjoining land, and encroachments onto the land of existing improvements located on adjoining land.

4. The exact acreage or square footage of the premises will not be insured.

5. Rights, facts, interests or claims of present tenants, lessees or parties in possession which are not shown by the Public Records, but which could be ascertained by an inspection of said Land or by making inquiry of persons in possession thereof.

6. Streams, riparian rights, littoral rights and the title to any filled-in-lands.

7. Taxes or special assessments which are not shown as existing liens by the public records.

8. Covenants, conditions and restrictions and other instruments recorded in the public records and purporting to impose a transfer fee or conveyance fee payable upon the conveyance of a interest in real property or payable for the right to make or accept such a transfer, and any and all fees, liens or charges, whether recorded or unrecorded, if any, currently due payable or that will become due or payable, and any other rights deriving therefrom, that are assessed pursuant thereto.

9. Any easements or servitudes not appearing in the public records.

10. Any lease, grant, exception or reservation of minerals or mineral rights appearing in the public records.

11. Any lien for service, installation, connection, maintenance, tap, capacity, or construction or similar charges for sewer, water, electricity, natural gas or other utilities, or for garbage collection and disposal by any utility service provider or authority that delivers such services and levies such charges, not shown as an existing lien by the Public Records.

12. Homeowner's or other association dues, assessments or fees for which no notice of delinquency, lien, claim of lien or assessment has been filed of record in the real property records.

13. Any matters listed as requirements on Schedule B-I that are not resolved to the satisfaction of Company will be shown as an exception on final policy.

# Exhibit 2

**American Land Title Association**                    **ALTA Commitment Form**
**Adopted 6-17-06**

Company will not issue a policy to the proposed insured(s) if the contemplated transaction involves a Short Sale. A short sale is defined as any sale or refinance transaction where the current mortgagee(s) or beneficiary(ies) of a deed of trust have agreed to satisfy/reconvey their interest for less than the full amount owed under the mortgage/deed of trust. It is the insured's obligation to notify Company if this transaction involves Short Sale.

14. Terms, provisions, covenants, conditions, restrictions, easements, charges, assessments and liens provided in the Covenants, Conditions and Restrictions recorded in  (book) 4353 (page) 73, but omitting any covenant, condition or restriction, if any, based on race, color, religion, sex, handicap, familial status, or national origin unless and only to the extent that the covenant, condition or restriction (a) is exempt under Title 42 of the United States Code, or (b) relates to handicap, but does not discriminate against handicapped persons.

15. EASEMENT (S) FOR THE PURPOSES(S) SHOWN BELOW AND RIGHTS INCIDENTAL THERETO AS DELINEATED OR AS OFFERED FOR DEDICATION, ON THE MAP OF SAID TRACT. PURPOSE: PUBLIC UTILITIES AFFECTS: THE WEST 6 FEET OF LOT 2.

16. EASEMENT(S) FOR T HE PURPOSE(S) SHOWN BELOW AND RIGHTS INCIDENTAL THERETO AS GRANTED IN A DOCUMENT. GRANTED TO: GENERAL TELEPHONE COMPANY PURPOSE: EITHER OR BOTH POLE LINES AND UNDERGROUND CONDUITS RECORDED: JANUARY 16, 1958, BOOK 4415, PAGE2, OF OFFICIAL RECORDS AFFECTS: AS SHOWN ON MAP OF SAID TRACT.

17. EASEMENT(S) FOR THE PURPOSE(S) SHOWN BELOW AND RIGHTS INCIDENTAL THERETO AS GRANTED IN A DOCUMENT. GRANTED TO: SOUTHERN CALIFORNIA EDISON COMPANY PURPOSE: EITHER OR BOTH POLE LINES AND UNDERGROUND CONDUITS RECORDED: JANUARY 17, 1958, BOOK 4416, PAGE 219, OF OFFICIAL RECORDS AFFECTS: THE WEST 10 FEET OF SAID LAND.

18. EASEMENT(S) FOR THE PURPOSE(S) SHOWN BELOW AND RIGHTS INCIDENTAL THERETO AS GRANTED IN A DOCUMENT. GRANTED TO: SAN ANTONIO WATER CO. PURPOSE: PIPELINES RECORDED: NOVEMBER 21, 1958, BOOK 4660, PAGE 467, OF OFFICIAL RECORDS AFFECTS: OVER AND ACROSS ANY AND ALL STREETS AND ALLEYS IN SAID DESCRIBED PARCELS OR ANY OF THEM.

19. Note: According to the public records, there have been no deeds conveying the land described herein within a period of twenty four (24) months prior to the date of this report, except as follows:

None

NOTE:   Any map/plat provided is provided as a courtesy as an aid in locating the herein described Land in relation to adjoining streets, natural boundaries and other land.  Except to the extent a policy of title insurance is expressly modified by endorsement, if any, the Company does not insure dimensions, distances, locations of easements or acreage shown thereon.

# Exhibit 2

WIRE SAFE™ | Inquire before you wire!

**Wire Fraud Alert**

This Notice is not intended to provide legal or professional advice.  If you have any questions, please consult with a lawyer.

All parties to a real estate transaction are targets for wire fraud and many have lost hundreds of thousands of dollars because they simply relied upon the wire instructions received via email, without further verification.  **If funds are to be wired in conjunction with this real estate transaction, we strongly recommend verbal verification of wire instructions through a known, trusted phone number prior to sending funds.**

In addition, the following non-exclusive self-protection strategies are recommended to minimize exposure to possible wire fraud.

- **NEVER RELY** on emails purporting to change wire instructions.  Parties to a transaction rarely change wire instructions in the course of a transaction.
- **ALWAYS VERIFY** wire instructions, specifically the ABA routing number and account number, by calling the party who sent the instructions to you.  DO NOT use the phone number provided in the email containing the instructions, use phone numbers you have called before or can otherwise verify.  **Obtain the phone number of relevant parties to the transaction as soon as an escrow account is opened.**  DO NOT send an email to verify as the email address may be incorrect or the email may be intercepted by the fraudster.
- **USE COMPLEX EMAIL PASSWORDS** that employ a combination of mixed case, numbers, and symbols.  Make your passwords greater than eight (8) characters.  Also, change your password often and do NOT reuse the same password for other online accounts.
- **USE MULTI-FACTOR AUTHENTICATION** for email accounts.  Your email provider or IT staff may have specific instructions on how to implement this feature.

For more information on wire-fraud scams or to report an incident, please refer to the following links:

| *Federal Bureau of Investigation* | *Internet Crime Compliant Center* |
|:---:|:---:|
| *http://www.fbi.gov* | *http://www.ic3.gov* |

Wire Fraud Alert
Original Effective Date:  5/11/2017
Current Version Date:  5/11/2017         TM and ©Fidelity National Financial, Inc. and/or an affiliate.

All rights reserved

# Exhibit 2

**Exhibit 2**

**FIDELITY**
NATIONAL AGENCY SOLUTIONS

**6500 Pinecrest Drive, Suite 600 Plano, TX 75024**
**800-943-1196**

**File Number: BLTI-APS18-67325**
**Transactee: Roberto C. Trevino**
**Property Address: 1339 Alta Avenue, Upland, CA  91786**

**ACCOUNT INFORMATION**

**BANK OF AMERICA**
**275 Valencia, 2nd Floor**
**BREA, CA 92823-6340**

**ROUTING NUMBER:  0260-0959-3 (FOR WIRES ONLY)**

**Fidelity National Title Insurance Company,**
**FIDELITY NATIONAL AGENCY SOLUTIONS DIVISION**
**ESCROW ACCOUNT NUMBER:  1235183426**

**PLEASE REFERENCE THE FULL BORROWERS NAME AND PROPERTY ADDRESS**
**ON ALL WIRES**

**THANK YOU**

# Exhibit 2

RECORDING REQUESTED BY:
**Roberto C. Trevino**
WHEN RECORDED MAIL TO:
Roberto C. Trevino
1339 Alta Avenue, Upland, CA  91786

_____

## CALIFORNIA NON DURABLE LIMITED POWER OF ATTORNEY

**CAUTION**: THIS IS AN IMPORTANT DOCUMENT. IT GIVES THE PERSON WHOM YOU DESIGNATE (YOUR "AGENT" OR "ATTORNEY IN FACT" HEREINAFTER CALLED "AGENT/AIF") CERTAIN LIMITED POWERS TO ACT ON YOUR BEHALF FOR A SPECIFIC TRANSACTION DURING A CERTAIN PERIOD OF TIME, WITH RESPECT TO ANY LOSS OF, MISPLACEMENT OF, INACCURACY IN, OR FAILURE TO SIGN THE DOCUMENTS SPECIFIED BELOW. YOUR AGENT/AIF WILL CONTINUE TO HAVE THESE POWERS AFTER THE LOAN CLOSING, FOR THE LIMITED PURPOSE TO REPLACE OR CORRECT SUCH DOCUMENTS IF THE DOCUMENT CORRECTION/COMPLETION IS NECESSARY TO COMPLETE THE RECORDING OF THE SECURITY INSTRUMENT/CONVEYANCE DEED OR OTHER DOCUMENTS SPECIFIED BELOW.  IF THE ATTORNEY IN FACT HAS ACTUAL KNOWLEDGE OF ANY INCOMPETENCE BEFORE, DURING OR AFTER CLOSING, THE POWERS CONTAINED HEREIN WILL CEASE TO EXIST.  BEFORE YOU DECIDE WHETHER TO SIGN OR IF YOU DO NOT UNDERSTAND THE PURPOSE OR EFFECT OF THIS FORM, YOU SHOULD CONSULT AN ATTORNEY.

## TRANSACTION SPECIFICS

Principal:                    Roberto C. Trevino
Secured Property Address    1339 Alta Avenue, Upland, CA 91786

Lender:                       BK Global
Loan Number                           Loan Amount        $0.00

BE IT KNOWN, that I / We,  Roberto C. Trevino

Whose residence address is:  1339 Alta Avenue, Upland, CA  91786

Make and appoint, as my / our true and lawful Attorneys in Fact or Agents to act for me / us in my / our name(s), place and stead, the following persons who are employees of Fidelity National Financial, Inc, namely: Adeline Gibson, Elizabeth McCool, Michele Jorgensen, or Erin Kropp, whose business address is 6500 Pinecrest Drive, Suite 600, Plano, TX 75024. Each of my / our agents may exercise the powers conferred in this power of attorney separately, without the consent of the other agent. My /Our agents may delegate the powers, tasks and duties to one of the other agents but to no other person. My / Our Agents/AIFs may exercise the powers to accomplish the following specific and limited purposes:

(A)    With respect to any loss of, misplacement of, inaccuracy in, or failure to sign the documents specified below to execute, initial or take all necessary actions for correction purposes only to secure the interest of BK Global in the property located at 1339 Alta Avenue, Upland, CA 91786 as insured by Fidelity National Title Insurance Company:

1.    Security Instrument to BK Global in the amount of $0.00 dollars which has been executed on _____by Roberto C. Trevino_____;

2.    Deed conveying the Secured Property from _____ to _____ executed on _____.  **THIS IS ONLY NECESSARY IF A DEED IS BEING USED IN THE TRANSACTION.**

3.    Documents needed by any governmental or taxing authorities to complete the recording of the  Security Instrument and Conveyance Deed as stated in paragraph (A) (1) and (A) (2) above;

Further giving and granting said Agent/AIF, full power and authority to do and perform all and every act and thing whatsoever necessary to be done in and about the specific and limited premises (setout herein) as fully, to all intents and purposes, as might or could be done if personally present, with full power of substitution and revocation, hereby ratifying and confirming all that said attorney in fact (also called agent) should lawfully do or cause to be done by virtue hereof.

# Exhibit 2

This Power of Attorney is effective immediately and is limited to the specific transaction described above. This Power of Attorney shall not be effective in the event of my disability or incapacity. This Power of Attorney will terminate upon the proper recording of all documents (as stated above in Section A of this Power of Attorney) necessary or requested as part of this transaction by the title insurer, lender or other parties to the transaction, except with respect to any loss of, misplacement of, inaccuracy in, or failure to sign the documents listed in Section A of this Power of Attorney, these powers will continue to exist for the limited purpose to replace or correct such documentation.

I / We acknowledge that I / We have agreed to and assume the obligations, terms and conditions of the sale and/or loan transaction as described in the documents executed by me / us (or my representative) at closing. I / We understand that my / Our Agent/AIF is exercising his/her power for the sole purpose of resolving clerical matters as described in Section A.

**Conflict of Interest Disclosure**. I / We understand that Fidelity National Financial, Inc. or one of its subsidiaries receives fees for escrow, title insurance premium, and title services from the closing. I / We further understand that these fees will be detailed on my / our Settlement Statement that accompanies my / our loan documents.

TO INDUCE ANY THIRD PARTY TO ACT, I / WE AGREE THAT ANY THIRD PARTY RECEIVING AN EXECUTED COPY OR FACSIMILE OF THIS INSTRUMENT MAY ACT ON THIS INSTRUMENT. ANY REVOCATION OR TERMINATION OF THIS INSTRUMENT WILL BE INEFFECTIVE AS TO SUCH THIRD PARTY UNTIL SUCH THIRD PARTY HAS ACTUAL OR CONSTRUCTIVE NOTICE OF SUCH REVOCATION OR TERMINATION. I / We, FOR MYSELF / OURSELVES AND FOR MY / OUR HEIRS, EXECUTORS, LEGAL REPRESENTATIVES AND ASSIGNS, AGREE TO INDEMNIFY AND HOLD HARMLESS ANY SUCH THIRD PARTY FROM AND AGAINST ANY AND ALL CLAIMS THAT MAY ARISE AGAINST SUCH THIRD PARTY BY REASON OF SUCH THIRD PARTY HAVING REASONABLY RELIED ON THE PROVISIONS OF THIS INSTRUMENT.

I / We, Roberto C. Trevino, the **principal**, sign my / our name to this power of attorney this_____day of_____, 20__, and, being first duly sworn, do declare to the undersigned authority that I / We sign and execute this instrument as my / our power of attorney for a refinance and that I / we sign it willingly, or willingly direct another to sign for me / us, that I / We execute it as my / our free and voluntary act for the purposes expressed in the power of attorney and that I / we am / are eighteen years of age or older, of sound mind and under no constraint or undue influence.


Dated: _____, 20_____.


_____        _____
PRINCIPAL                                                                      PRINCIPAL


**ACKNOWLEDGEMENT**

STATE OF CALIFORNIA            )

COUNTY OF                            )

On_____ before me, _____ (here insert name and title of the officer), personally appeared_____(the Principal) ,who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

Witness my hand and official seal.

Signature _____ (Seal)


# Exhibit 2

## WAIVER OF SETTLEMENT AGENT RESPONSIBILITY

Date: 06/11/2018

File No: BLTI-APS18-67325

Settlement Agent: Fidelity National Title Insurance

Seller:

Purchaser:

Property: 1339 Alta Avenue, Upland, CA  91786

To: Escrow Holder

Escrow Holder is released from and shall have no liability, obligation or responsibility with respect to, (a) withholding of funds pursuant to Section 1445 of the Internal Revenue Code 1986 as amended, (b) advising the parties as to the requirements of such Section or (c) determining whether the transferor is a foreign person under such Section, acting as the Qualified Substitute or otherwise making any inquiry concerning compliance with such Section for any party to the transaction.


PURCHASER(S):


_____


_____




F.I.R.P.T.A – Waiver of Settlement Agent Responsibility




# Exhibit 2

# EXHIBIT 3

TS No. CA05000416-18-1

NOTICE OF SALE
SUMMARY OF KEY INFORMATION

The attached notice of sale was sent to JOEL CLELLAND AND PEGGY CLELLAND, HUSBAND AND WIFE, AS JOINT TENANTS, in relation to 1339 ALTA AVENUE, UPLAND, CA 91786.

YOU ARE IN DEFAULT UNDER A DEED OF TRUST OR MORTGAGE DATED March 24, 2010.    UNLESS YOU TAKE ACTION TO PROTECT YOUR PROPERTY, IT MAY BE SOLD AT A PUBLIC SALE.

IF YOU NEED AN EXPLANATION OF THE NATURE OF THE PROCEEDING AGAINST YOU, YOU SHOULD CONTACT A LAWYER.

The total amount due in the notice of sale is $309,255.62.

Your property is scheduled to be sold on January 9, 2019 at 01:00 PM, at the main (south) entrance to the City of Chino Civic Center, 13220 Central Ave, Chino, CA 91710.

However, the sale date shown on the attached notice of sale may be postponed one or more times by the mortgagee, beneficiary, trustee, or a court, pursuant to Section 2924g of the California Civil Code.    The law requires that information about trustee sale postponements be made available to you and to the public, as a courtesy to those not present at the sale.    If you wish to learn whether your sale date has been postponed, and, if applicable, the rescheduled time and date for the sale of this property, you may call In Source Logic at 702-659-7766 or visit this Internet Web site address www.insourcelogic.com using the file number assigned to this case CA05000416-18-1. Information about postponements that are very short in duration or that occur close in time to the scheduled sale may not immediately be reflected in the telephone information or on the Internet Web site.    The best way to verify postponement information is to attend the scheduled sale.

If you would like additional copies of this summary, you may obtain them by calling 949-252-8300 TDD: 866-660-4288.

Civil Code Section 2923.3(d)(2) (Revised 3/28/13)

# Exhibit 3

**California Civil Code section 2924.8 Notice of Foreclosure Sale**

Dear resident of property subject to foreclosure sale:

Foreclosure process has begun on this property, which may affect your right to continue to live in this property. Twenty days or more after the date of this notice, this property may be sold at foreclosure. If you are renting this property, the new property owner may either give you a new lease or rental agreement or provide you with a 90-day eviction notice. You may have a right to stay in your home for longer than 90 days. If you have a fixed-term lease, the new owner must honor the lease unless the new owner will occupy the property as a primary residence or in other limited circumstances. Also, in some cases and in some cities with a "just cause for eviction" law, you may not have to move at all. All rights and obligations under your lease or tenancy, including your obligation to pay rent, will continue after the foreclosure sale. You may wish to contact a lawyer or your local legal aid office or housing counseling agency to discuss any rights you may have.

Spanish Translation

Estimado residente de la propiedad sujeta a la venta por ejecución hipotecaria:

Ha comenzado el proceso de ejecución hipotecaria sobre esta propiedad, lo que podría afectar su derecho a seguir viviendo en ella. Dentro de un plazo de veinte días o más posteriores a la fecha de este aviso, es posible que esta propiedad se venda por ejecución hipotecaria. Si usted alquila esta propiedad, el nuevo propietario de la misma podría ofrecerle un nuevo acuerdo de alquiler o arrendamiento o enviarle un aviso de desalojo con 90 días de anticipación. Usted tendría derecho a permanecer en su hogar durante un periodo superior a 90 días. Si tiene un arrendamiento a plazo fijo, el nuevo propietario debe cumplir el arrendamiento a menos que esta persona ocupe la propiedad en carácter de residencia principal o en otras circunstancias limitadas. Asimismo, en algunos casos y en algunas ciudades que tengan una ley de "motivo justo para el desalojo", es posible que no tenga que mudarse en absoluto. Continuarán todos los derechos y obligaciones en virtud del arrendamiento o tenencia, inclusive su obligación de pagar el alquiler..

Chinese Translation

親愛的圍臨法拍物業的住戶：

此物業的法拍程序已經開始，這可能會影響到您繼續在此物業居住的權利。 自本通知發出的第二十天起，此物業可以法拍方式出售。如果您正在租住此物業，新的業主會給您一份新的租約，或向您發出90天的搬遷通知。您有權 在您的房屋內居住90天以上。如果您持有固定期限的租約，新的業主必須遵守新租約，除非新業主欲將該房屋作為zhuyao住處，或處於其他限制條件。而且，在某些個案和實施"正當理由搬遷"法規的某些城市，您可能根本就無需遷走。您租約或租賃期內的所有權利和義務，包括您支付租金的義務，在法 拍後也仍將繼續。您可聯絡律師、您當地的法律援助辦公室或防務咨詢機構，以討論您可擁有的權利。

Tagalog Translation

Minamahal na residente ng ari-ariang sakop ng pagbebenta dahil sa pagka-remata:

Ang proseso ng pagreremata ay nagsimula na para sa ari-ariang ito, na maaaring makaapekto sa inyong karapatan na patuloy na manirahan sa ari-arian. Dalawampung araw o higit pa makalipas ang petsa ng abisong ito, ang ari-arian na ito ay maaaring maibenta sa pagkaremata. Kung kayo ay nangungupahan sa ariarian na ito, ang bagong magmamay-ari ng ari-arian ay maaaring bigyan kayo ng bagong kasunduan sa pag-arkila o pangungupahan o maaaring magbigay sa inyo ng 90-araw na abiso ng pagpapalayas. Maaaring may karapatan kayong manatili sa inyong tahanan nang mahigit sa 90 araw. Kung kayo ay may kasunduan sa pagaarkila na may takdang panahon, ang bagong may-ari ay dapat kilalanin ang kasunduan maliban kung gagamitin ng bagong may-ari ang ari-arian bilang pangunahing tirahan, o sa ibang mga limitadong kalagayan. Dagdag pa, sa ilang mga kaso at sa ilang mga siyudad na may batas sa "makatarungang dahilan para saapagpapalayas", maaaring hindi mo kinakailangang umalis. Lahat ng mga karapatan at pananagutan sa ilalim ng iyong kasunduan sa pag-arkila o pangungupahan, kabilang na ang iyong pananagutan na magbayad ng upa, ay magpapatuloy matapos ang pagbebenta dahil sa pagkaremata. Maaari mong naisin na makipagugnayan sa iyong abogado o sa iyong lokal na opisina ng tulong na pang-legal o ahensiya ng tagapagpayo sa pabahay upang talakayin ang anumang mga karapatan na maaaring mayroon ka.

Vietnamese Translation

Gửi người sống tại cơ ngơi bị phát mại:

Quá trình phát mại cơ ngơi này đã bắt đầu và có thể ảnh hưởng đến quyền tiếp tục sống tại cơ ngơi này của quý vị. Sau hai mươi ngày trở lên của thông báo này, cơ ngơi này có thể bị phát mại. Nếu quý vị đang thuê cơ ngơi này, chủ sở hữu mới của cơ ngơi này có thể cung cấp cho quý vị một thỏa thuận thuê mới hoặc một thong báo ra khỏi nhà trong 90 ngày. Quý vị có thể có quyền ở lại lâu hơn 90 ngày. Nếu quý vị có một hợp đồng thuê nhà định hạn, chủ sở hữu mới phải tôn trọng hợp đồng thuê nhà trừ khi chủ sở hữu mới sẽ sử dụng cơ ngơi này như là nơi cư trú chính hoặc trong các trường hợp hạn chế khác. Ngoài ra, trong một số trường hợp và tại một số thành phố có luật "lý do ra khỏi nhà chính đáng", quý vị có thể không phải chuyển nhà. Tất cả các quyền và nghĩa vụ theo hợp đồng thuê nhà của quý vị, bao gồm nghĩa vụ trả tiền thuê nhà của quý vị, sẽ tiếp tục có hiệu lực sau khi phát mại. Quý vị có thể liên hệ với một luật sư hoặc văn phòng trợ giúp pháp lý địa phương của quý vị hoặc cơ quan tư vấn về nhà ở để thảo luận về các quyền quý vị có thể có.

Korean Translation

경매처분에 괴면한 주택 소유주 여러분께,

이 주택에 계속 거주하실 수 있는 귀하의 권리에 영향을 줄 수 있는 경매 절차가 시작되었습니다. 이 통지서 날짜로부터 20일 정도가 지난 후, 이 주택은 경매로 대각될 수 있습니다. 이 주택을 임차하고 계시다면, 새로운 주택 소유주가 귀하에게 새 리스 또는 임차 계약서를 제공하거나, 아니면 90일 이내 퇴거 통지서를 드릴 것입니다. 귀하에게는 90일 이상 자택에 주거하실 권리가 있습니다. 만약 고정기간 리스 계약을 체결하셨다면, 새로운 소유주가 해당 주택을 주된 주거지로 점유하거나 제한된 상황이 아닌 한, 새로운 소유주는 해당 리스 계약을 존중해야 합니다. 또한, "경당한 사유에 의한 퇴거(just cause for eviction)"법에 따른 일부 경우와 일부 도시에 계시는 경우, 전혀 이사하지 않아도 될 가능성도 있습니다. 임차료를 지불해야 하는 의무를 포함하여 귀하의 리스 또는 임차계약 하의 모든 권리와 의무는 경매 판매 이후에도 계속됩니다. 귀하의 변호사 또는 지역 법률 지원 사무소 또는 주택 상담 기관에 연락하여 귀하의 권리에 대해 상담하실 수도 있습니다.

1339 ALTA AVENUE, UPLAND, CA 91786

# Exhibit 3

CA05000416-18-1

RECORDING REQUESTED BY:

ServiceLink

WHEN RECORDED MAIL TO:

Trustee Corps
17100 Gillette Ave
Irvine, CA 92614

---

| APN: 1045-455-18-0-000 | TS No: CA05000416-18-1 | TO No: 180326496-CA-VOI |
|---|---|---|

## NOTICE OF TRUSTEE'S SALE

NOTE: THERE IS A SUMMARY OF THE INFORMATION IN THIS DOCUMENT ATTACHED
注：本文件包含一个信息摘要
참고사항: 본 첨부 문서에 정보 요약서가 있습니다
NOTA: SE ADJUNTA UN RESUMEN DE LA INFORMACIÓN DE ESTE DOCUMENTO
TALA: MAYROONG BUOD NG IMPORMASYON SA DOKUMENTONG ITO NA NAKALAKIP
LƯU Ý: KÈM THEO ĐÂY LÀ BẢN TRÌNH BÀY TÓM LƯỢC VỀ THÔNG TIN TRONG TÀI LIỆU NÀY
**(The above statement is made pursuant to CA Civil Code Section 2923.3(d)(1).    The Summary will be
provided to Trustor(s) and/or vested owner(s) only, pursuant to CA Civil Code Section 2923.3(d)(2).)**

**YOU ARE IN DEFAULT UNDER A DEED OF TRUST DATED March 24, 2010.    UNLESS YOU TAKE
ACTION TO PROTECT YOUR PROPERTY, IT MAY BE SOLD AT A PUBLIC SALE.    IF YOU NEED AN
EXPLANATION OF THE NATURE OF THE PROCEEDINGS AGAINST YOU, YOU SHOULD CONTACT
A LAWYER.**

On **January 9, 2019** at **01:00 PM**, at the **main (south) entrance to the City of Chino Civic Center,
13220 Central Ave, Chino, CA 91710, MTC Financial Inc. dba Trustee Corps**, as the duly Appointed
Trustee, under and pursuant to the power of sale contained in that certain Deed of Trust recorded on April
1, 2010 as Instrument No. 2010-0124723, of official records in the Office of the Recorder of San
Bernardino County, California, executed by JOEL CLELLAND AND PEGGY CLELLAND, HUSBAND AND
WIFE, AS JOINT TENANTS, as Trustor(s), in favor of MORTGAGE ELECTRONIC REGISTRATION
SYSTEMS, INC. as nominee for ONEWEST BANK, FSB as Beneficiary, **WILL SELL AT PUBLIC
AUCTION TO THE HIGHEST BIDDER**, in lawful money of the United States, all payable at the time of
sale, that certain property situated in said County, California describing the land therein as: **AS MORE
FULLY DESCRIBED IN SAID DEED OF TRUST**

The property heretofore described is being sold "as is".    The street address and other common
designation, if any, of the real property described above is purported to be: 1339 ALTA AVENUE,
UPLAND, CA 91786

# Exhibit 3

The undersigned Trustee disclaims any liability for any incorrectness of the street address and other common designation, if any, shown herein.

Said sale will be made without covenant or warranty, express or implied, regarding title, possession, or encumbrances, to pay the remaining principal sum of the Note(s) secured by said Deed of Trust, with interest thereon, as provided in said Note(s), advances if any, under the terms of the Deed of Trust, estimated fees, charges and expenses of the Trustee and of the trusts created by said Deed of Trust.

The total amount of the unpaid balance of the obligations secured by the property to be sold and reasonable estimated costs, expenses and advances at the time of the initial publication of this Notice of Trustee's Sale is estimated to be $309,255.62 (Estimated).   However, prepayment premiums, accrued interest and advances will increase this figure prior to sale.    Beneficiary's bid at said sale may include all or part of said amount.    In addition to cash, the Trustee will accept a cashier's check drawn on a state or national bank, a check drawn by a state or federal credit union or a check drawn by a state or federal savings and loan association, savings association or savings bank specified in Section 5102 of the California Financial Code and authorized to do business in California, or other such funds as may be acceptable to the Trustee.   In the event tender other than cash is accepted, the Trustee may withhold the issuance of the Trustee's Deed Upon Sale until funds become available to the payee or endorsee as a matter of right.   The property offered for sale excludes all funds held on account by the property receiver, if applicable.

**If the Trustee is unable to convey title for any reason, the successful bidder's sole and exclusive remedy shall be the return of monies paid to the Trustee and the successful bidder shall have no further recourse.**

## Notice to Potential Bidders

If you are considering bidding on this property lien, you should understand that there are risks involved in bidding at a Trustee auction.    You will be bidding on a lien, not on the property itself.    Placing the highest bid at a Trustee auction does not automatically entitle you to free and clear ownership of the property. You should also be aware that the lien being auctioned off may be a junior lien.    If you are the highest bidder at the auction, you are or may be responsible for paying off all liens senior to the lien being auctioned off, before you can receive clear title to the property.    You are encouraged to investigate the existence, priority, and size of outstanding liens that may exist on this property by contacting the county recorder's office or a title insurance company, either of which may charge you a fee for this information. If you consult either of these resources, you should be aware that the same Lender may hold more than one mortgage or Deed of Trust on the property.

TS No: CA05000416-18-1

# Exhibit 3

## Notice to Property Owner

The sale date shown on this Notice of Sale may be postponed one or more times by the Mortgagee, Beneficiary, Trustee, or a court, pursuant to Section 2924g of the California Civil Code.    The law requires that information about Trustee Sale postponements be made available to you and to the public, as a courtesy to those not present at the sale.    If you wish to learn whether your sale date has been postponed, and, if applicable, the rescheduled time and date for the sale of this property, you may call In Source Logic at 702-659-7766 for information regarding the Trustee's Sale or visit the Internet Web site address listed below for information regarding the sale of this property, using the file number assigned to this case, CA05000416-18-1.    Information about postponements that are very short in duration or that occur close in time to the scheduled sale may not immediately be reflected in the telephone information or on the Internet Web site.    The best way to verify postponement information is to attend the scheduled sale.

Date: November 29, 2018

MTC Financial Inc. dba Trustee Corps
TS No. CA05000416-18-1
17100 Gillette Ave
Irvine, CA 92614
Phone: 949-252-8300
TDD: 866-660-4288

_____

Myron Ravelo, Authorized Signatory

**SALE INFORMATION CAN BE OBTAINED ON LINE AT www.insourcelogic.com**
**FOR AUTOMATED SALES INFORMATION PLEASE CALL:**
**In Source Logic AT 702-659-7766**

Trustee Corps may be acting as a debt collector attempting to collect a debt.
Any information obtained may be used for that purpose.

**To the extent your original obligation was discharged, or is subject to an automatic stay of bankruptcy under Title 11 of the United States Code, this notice is for compliance and/or informational purposes only and does not constitute an attempt to collect a debt or to impose personal liability for such obligation.    However, a secured party retains rights under its security instrument, including the right to foreclose its lien.**

TS No: CA05000416-18-1

# Exhibit 3

# EXHIBIT 4

1    Lynda T Bui, Trustee
     3550 Vine Street, Ste. 210
2    Riverside, CA 92507
     Telephone:    (949) 340-3400
3    Facsimile:    (949) 340-3000
     Email: Trustee.Bui@shbllp.com
4

5    Chapter 7 Trustee

6

7

FILED & ENTERED

SEP 18 2018

CLERK U.S. BANKRUPTCY COURT
Central District of California
BY gooch    DEPUTY CLERK

8                    UNITED STATES BANKRUPTCY COURT

9                    CENTRAL DISTRICT OF CALIFORNIA

10                        RIVERSIDE DIVISION

11   In re:                              Case No.  6:17-bk-10928-WJ

12   PEGGY IRENE CLELLAND                CHAPTER 7
     aka Peggy Irene Casey, and
13   JOEL DOUGLAS CLELLAND               **ORDER APPROVING COMPROMISE
     aka Joel Clelland,                  UNDER RULE 9019 BETWEEN THE
14                                       BANKRUPTCY ESTATE AND THE
                        Debtors.         DEBTORS**
15
                                         [No Hearing Required LBR 9013-1(o)]
16

17

18

19

20

21

22

23

24

25

26

27

28

Lynda T. Bui,
Chapter 7 Trustee
3550 Vine Street
Suite 210
Riverside, CA 92507

**Exhibit 4**

1

23018-000\56\Compromise Order TC Clelland  v2

The Court has reviewed the "Motion to Approve Compromise Under Rule 9019 Between the Bankruptcy Estate and the Debtors" ("Motion") (docket number 51) filed by Lynda T. Bui, solely in her capacity as the chapter 7 trustee ("Trustee") for the bankruptcy estate of Peggy Irene Clelland and Joel Douglas Clelland.  No objection having been filed, and good cause appearing, the Court hereby ORDERS as follows:

1.    The Motion is granted.

2.    The settlement agreement attached as Exhibit 1 to the declaration of Lynda T. Bui in support of the Motion is approved.

3.    Not less than 40% of the estate settlement amount (as that term is defined in the settlement agreement), shall be used to pay non-administrative creditors in this case.

4.    The Trustee is authorized to execute any and all documents reasonably necessary to carry out the terms of the settlement agreement.

### 

Date: September 18, 2018

Wayne Johnson
United States Bankruptcy Judge

# Exhibit 4

2

Lynda T. Bui,
Chapter 7 Trustee
3550 Vine Street
Suite 210
Riverside, CA 92507

23018-000\56\Compromise Order TC Clelland  v2

# EXHIBIT 5

## SETTLEMENT AGREEMENT

This Settlement Agreement ("Agreement") is entered into by and between Lynda T. Bui, solely in her capacity as the Chapter 7 Trustee ("Trustee") for the bankruptcy estate of **Peggy Irene Clelland and Joel Douglas Clelland** ("Debtors"), on the one hand and the Debtors, on the other hand.  The Trustee and the Debtors will be collectively referred to herein as the "Parties".

## I.    RECITALS

This Agreement is made by the Parties hereto with reference to the following facts:

1.      The Debtors filed a chapter 7 bankruptcy petition on February 7, 2017, in the United States Bankruptcy Court, Central District of California, Case No. 6:17-bk-10928-WJ.

2.      Lynda T. Bui is the duly appointed, qualifying, and acting Chapter 7 trustee for the Debtors' Bankruptcy Estate ("Estate").

3.      The last date to file claims in the case was August 14, 2017.  Government claims were due by August 7, 2017.  The Court's Claims Register indicates there have been nine claims filed totaling $43,880.14, consisting of $506.71 in priority claims and $43,373.43 in general unsecured claims.

4.      Property of the Estate includes the Debtors' interest in the real property located at 1339 Alta Avenue, Upland, California 91786 ("Property").

5.      On their Schedule A, the Debtors valued their interest in the Property at $413,306.00 and listed two liens on their Schedule D in favor of (i) Cenlar (first trust deed) in the amount of $265,390.00 and (ii)  Specialized Loan Servicing, LLC in the amount of $122,323.00, for total liens of $387,713.00 (collectively the "Secured Creditors"). On their Schedule C, the Debtors claimed an   exemption in the Property of $25,593.00 under C.C.P. § 703.140(b)(1).   Based on the Schedules there does not appear to be equity in the Property for the benefit of the Estate.

6.      The Court has ordered Secured Creditors' relief from the automatic stay in this case.[1] The Debtors have advised the Trustee that they do not want a foreclosure on their record and would like the Trustee to short sell the Property.

7.      After reviewing potential options, the Trustee and the Debtors have determined it may be in the best interest of the Estate and its creditors to negotiate to obtain the Secured Creditors' consent to a short sale of the Property that would provide for payment of all expenses associated with the short sale, including (i) payment of a 6% real estate brokerage commission

---

[1]  On March 29, 2018, the Court entered an order (docket 39) granting Lakeview Loan Servicing, LLC (loan servicer for the current beneficiary of first trust deed on the Property) relief from automatic stay of 11 U.S.C. § 362(a) to allow it to move forward with a foreclosure upon and to obtain possession of the Property in accordance with applicable non-bankruptcy law.

On April 17, 2018, the Court entered an order (docket 44) granting Deutsche Bank National Trust Company, as Trustee, for IndyMac Home Equity Mortgage Loan Asset-backed Trust, Series 2006-H1 (current beneficiary of the second trust deed on the Property) relief from automatic stay of 11 U.S.C. § 362(a) to allow it to move forward with a foreclosure upon and to obtain possession of the Property in accordance with applicable non-bankruptcy law.

1

## Exhibit 5

<u>and</u> (ii) a meaningful carve-out to the Estate to be paid by the buyer at the close of escrow to provide for a meaningful distribution on allowed unsecured claims.

8.    The Parties desire to resolve any and all disputes related to the administration of the Property upon the terms and conditions set forth hereinafter.

## II.    <u>AGREEMENT</u>

**NOW THEREFORE, FOR GOOD AND VALUABLE CONSIDERATION**, the adequacy of which is hereby acknowledged by each party hereto, and in consideration of the mutual promises and covenants set forth below, the Parties hereto agree as follows:

1.    <u>Cooperation for the Sale of the Property</u>.

    a.    The Debtors agree to cooperate with the Trustee's efforts to market the Property for a short sale and cooperate in the short sale process, including providing information as necessary and cooperate with the Trustee's proposed real estate broker team of (i) Gregory Shipp of Sentinel Real Estate & Investments, and (ii) BK Global Real Estate Services ("Broker Team").

    b.    The Trustee will file a Motion with the Bankruptcy Court to request approval of the short sale that provides payment of all expenses associated with the short sale, including (i) payment of a standard real estate brokerage commission to the Trustee's Broker Team and reimbursement of the Broker Team's out-of-pocket expenses, and (ii) a payment to the Estate to provide for meaningful distribution on allowed unsecured claims.  The Property will not be sold unless the Estate receives funds to pay creditors.

    c.    The Trustee will be listing the Property for sale in her capacity as the Chapter 7 trustee for the Estate, and not in her personal capacity, and no liability or obligations shall accrue to her personally as a result of such listing.

    d.    The Trustee reserves the right, in her sole discretion, to determine not to sell the Property if doing so does not benefit the Estate.

2.    <u>Split of the Short Sale Proceeds</u>.  The Debtors and the Trustee agree that any "net proceeds" generated from the Trustee's short sale of the Property shall be split as follows:  50% to the Estate ("Estate Settlement Amount"), and 50% to the Debtors ("Debtors' Settlement Amount").  As used herein, the term "net proceeds" shall mean the gross proceeds generated from the sale of the Property, *less* (i) satisfaction of the Secured Creditors' liens, including all arrearages; (ii) payment of all outstanding property taxes; and (iii) typical pro-rations and closing costs, including escrow fees and real estate commissions.  The Debtors agree that the Estate Settlement Amount shall be used by the Estate for payment of administrative claims of the Estate and allowed unsecured claims against the Estate.    The Trustee reserves the right to abandon the Property if the net proceeds decrease to such an amount that would make administrating the case cost-prohibitive.

3.    <u>Waiver of Exemption Claim</u>.  As the Property is encumbered by liens that exceed its value and there is no equity, in exchange for the Debtors' Settlement Amount,  the Debtors agree to waive their claimed exemption in the Property of $25,593.00 under C.C.P. § 703.140(b)(1).  The

2

# Exhibit 5

Debtors agree that they will not be entitled nor will they file amended schedules to claim an exemption in the Property and/or the Estate's Settlement Amount .

4. <u>Possession of the Property</u>.  The Debtors are not making the mortgage payments. The Trustee will not demand any mortgage or rental payment from the Debtors for allowing the Debtors to reside in the Property since the Petition Date without paying the monthly payments on the loans secured by deeds of trust on the Property.  However, the Debtors shall continue to maintain the Property and cooperate with the Trustee's Broker Team for all showings and open houses.

5. <u>Additional Conditions to be Performed by the Debtors</u>.  Until such time that the Trustee closes on the sale of the Property, the Debtors agree that they shall or shall cause to maintain and preserve the Property for the benefit of the Estate and its creditors, and shall or shall cause to:

a.   Not place or record, or allow to be placed or recorded, any liens or encumbrances on the Property.

b.   Maintain current all insurance on the Property.

c.   Name the Trustee as the loss payee on insurance against the Property at no cost to the Trustee or the Estate.

d.   Provide the Trustee with proof of insurance naming the Trustee as the loss payee on insurance against the Property no later than ten (10) days after the execution of this Agreement.

6. <u>Motion for Approval of Compromise</u>.  Upon receipt of a fully executed copy of this Agreement, the Trustee shall promptly file a motion with the Bankruptcy Court to obtain approval of this Agreement ("Compromise Motion").  This Agreement is contingent upon and expressly conditioned on the issuance of an order by the Bankruptcy Court in the Chapter 7 proceeding approving this Agreement pursuant to Federal Rule of Bankruptcy Procedure 9019.  Unless and until approved by the Bankruptcy Court, this Agreement shall have no force or effect whatsoever.

7. <u>Vacating the Property</u>.  The Debtors agree to deliver the Property in an unoccupied broom clean condition, including removing all of their personal property, seven (7) days prior to close of escrow.

## III.   **REPRESENTATION AND WARRANTIES**

1.   Each of the parties to this Agreement represents, warrants, and agrees as to themselves as follows:

a.   No party (nor any officer, agent, employee, representative, or attorney of or for any party) has made any statement or representation to any other party regarding any fact relied upon in entering into this Agreement, and each party does not rely upon any statement, representation or promise of any other party (or of any officer, agent, employee, representative, or attorney for the other

**Exhibit 5**

party), in executing this Agreement, or in making the settlement provided for herein, except as expressly stated in this Agreement

b. Each party to this Agreement has made such investigation of facts pertaining to this settlement and this Agreement and of all the matters pertaining thereto as they deem necessary.

c. Each party has read this Agreement and understands its contents.

d. The Parties acknowledge that they have either been represented in negotiations for and in the preparation of this Agreement by counsel of their choice or that they have had an opportunity to retain counsel and that they have read this Agreement and have had an opportunity to have it fully explained to them by such counsel, and that they are fully aware of the contents of this Agreement and of its legal effect.

e. The Parties acknowledge that this Agreement is the result of extensive good faith negotiations between the Parties and their respective counsel and is not to be construed as an admission of liability on the part of any of the Parties hereto, their agents, employees or officers, by whom liability is expressly denied.

f. The Parties are bound by this Agreement subject only to Bankruptcy Court approval and waive any right to object to approval by the Bankruptcy Court.

## IV. __MISCELLANEOUS__

1. <u>Jurisdiction of the Bankruptcy Court</u>.   Should any dispute arise regarding this Agreement, the United States Bankruptcy Court for the Central District of California, Riverside Division shall have exclusive jurisdiction to determine the same.

2. <u>Trustee Capacity</u>.  The Trustee is signing this Agreement in her capacity solely as Chapter 7 Trustee of the Estate.  Nothing contained herein shall in any way impute liability to the Trustee, personally or as a member of any professional organization, or anyone acting on her behalf, including but not limited to her counsel.

3. <u>Further Documentation of Settlement</u>.  The Parties agree that they will execute any and all further and additional documents and take all further and additional steps, which may be necessary or convenient to consummate the terms of this Agreement and accomplish the purposes thereof.

4. <u>Entire Agreement</u>.   This Agreement constitutes the entire understanding and agreement between the Parties hereto concerning the subject matter hereof and supersedes all prior and contemporaneous agreements, understandings, terms, conditions and representations, written or oral, made by any of the Parties hereto or their agents, concerning the matters covered by this Agreement.

5. <u>Modification and/or Amendment</u>.  This Agreement may be amended and modified only by a written agreement signed by all of the Parties hereto specifically acknowledging and approving of the modification.

4

## Exhibit 5

6.    <u>Successors and Assigns</u>.  This Agreement shall inure to the benefit of, and shall be binding upon the Parties, and each of them, and their respective successors, assigns, heirs, partners, agents, interrogators, officers, corporations, partnerships, partners, shareholders, representatives, and each of them.

7.    <u>Controlling Law</u>.  This Agreement has been entered into in the State of California and this Agreement, including any rights, remedies, or obligations provided for hereunder, shall be construed and enforced in accordance with the laws of the State of California.

8.    <u>Severability</u>.  If any provision of this Agreement is held, determined or adjudicated to be invalid, unenforceable or void for any reason, each such provision shall be severed from the remaining portions of this Agreement and shall not affect the validity and enforceability of such remaining provisions.

9.    <u>Effect of Headings</u>.  The titles and headings of this Agreement are for convenience and identification only, and shall not be deemed to limit, amplify, or define the contents of the respective sections or paragraphs to which they pertain.

10.    <u>Gender</u>.  Whenever in this document the context may so require, the masculine gender shall be deemed to include the feminine and neuter genders, and vice-versa.

11.    <u>Recitals</u>.  Each term of this Agreement is contractual and not merely a recital.

12.    <u>Counter-Parts</u>.  This Agreement may be executed in one or more counter-parts (multiple signatures) each of which shall be deemed an original, and all of which constitute one and the same instrument.

13.    Attorneys' Fees.  All Parties shall bear their own attorneys' fees and costs.  In the event any claim, dispute and/or litigation arises out of this Agreement, the prevailing party shall be entitled to recovery of its attorneys' fees and costs incurred in prosecuting or defending said claim, dispute and/or litigation.

**SIGNATURES ON THE FOLLOWING PAGE**

**Exhibit 5**

BY SIGNING THIS AGREEMENT WHERE INDICATED BELOW I CERTIFY THAT I HAVE READ THE FOREGOING AGREEMENT IN ITS ENTIRETY, THAT I FULLY UNDERSTAND ALL THE WORDS, LANGUAGE, TERMS AND CONDITIONS CONTAINED HEREIN AND THAT I AGREE TO BE BOUND BY ALL THE TERMS AND CONDITIONS SET FORTH HEREIN.

Dated:  August 3 , 2018

_____
Lynda T. Bui
Solely in her capacity as the Chapter 7 Bankruptcy
Trustee for the bankruptcy estate of *In re Peggy Irene Clelland
and Joel Douglas Clelland,* Case No. 6:17-bk-10928-WJ

Dated:  August     , 2018

_____
Peggy Irene Clelland
Debtor

Dated:  August     , 2018

_____
Joel Douglas Clelland
Debtor

**APPROVED AS TO FORM:**

Dated:  August     , 2018        **OAKTREE LAW**

_____
Julie J Villalobos
Attorneys for the Debtors,
Peggy Irene Clelland and Joel Douglas Clelland

# Exhibit 5

**BY SIGNING THIS AGREEMENT WHERE INDICATED BELOW I CERTIFY THAT I HAVE READ THE FOREGOING AGREEMENT IN ITS ENTIRETY, THAT I FULLY UNDERSTAND ALL THE WORDS, LANGUAGE, TERMS AND CONDITIONS CONTAINED HEREIN AND THAT I AGREE TO BE BOUND BY ALL THE TERMS AND CONDITIONS SET FORTH HEREIN.**

Dated: August ____, 2018

_____
Lynda T. Bui
Solely in her capacity as the Chapter 7 Bankruptcy
Trustee for the bankruptcy estate of *In re Peggy Irene Clelland and Joel Douglas Clelland*, Case No. 6:17-bk-10928-WJ

Dated: August 17, 2018

_____
Peggy Irene Clelland
Debtor

Dated: August 17, 2018

_____
Joel Douglas Clelland
Debtor

**APPROVED AS TO FORM:**

Dated: August 17, 2018        **OAKTREE LAW**

_____
Julie J. Villalobos
Attorneys for the Debtors,
Peggy Irene Clelland and Joel Douglas Clelland

6

# Exhibit 5

# EXHIBIT 6

DocuSign Envelope ID: C4607E9B-4C9E-4E36-BEC9-6E09324E6DF3

**CALIFORNIA
ASSOCIATION
OF REALTORS®**

# DISCLOSURE REGARDING
# REAL ESTATE AGENCY RELATIONSHIP
(Selling Firm to Buyer)
(As required by the Civil Code)
(C.A.R. Form AD, Revised 12/14)

☐ (If checked) This form is being provided in connection with a transaction for a leasehold interest exceeding one year as per Civil Code section 2079.13(k), (l) and (m).

When you enter into a discussion with a real estate agent regarding a real estate transaction, you should from the outset understand what type of agency relationship or representation you wish to have with the agent in the transaction.

**SELLER'S AGENT**
A Seller's agent under a listing agreement with the Seller acts as the agent for the Seller only. A Seller's agent or a subagent of that agent has the following affirmative obligations:
To the Seller: A Fiduciary duty of utmost care, integrity, honesty and loyalty in dealings with the Seller.
To the Buyer and the Seller:
    (a) Diligent exercise of reasonable skill and care in performance of the agent's duties.
    (b) A duty of honest and fair dealing and good faith.
    (c) A duty to disclose all facts known to the agent materially affecting the value or desirability of the property that are not known to, or within the diligent attention and observation of, the parties. An agent is not obligated to reveal to either party any confidential information obtained from the other party that does not involve the affirmative duties set forth above.

**BUYER'S AGENT**
A selling agent can, with a Buyer's consent, agree to act as agent for the Buyer only. In these situations, the agent is not the Seller's agent, even if by agreement the agent may receive compensation for services rendered, either in full or in part from the Seller. An agent acting only for a Buyer has the following affirmative obligations:
To the Buyer: A fiduciary duty of utmost care, integrity, honesty and loyalty in dealings with the Buyer.
To the Buyer and the Seller:
    (a) Diligent exercise of reasonable skill and care in performance of the agent's duties.
    (b) A duty of honest and fair dealing and good faith.
    (c) A duty to disclose all facts known to the agent materially affecting the value or desirability of the property that are not known to, or within the diligent attention and observation of, the parties.
An agent is not obligated to reveal to either party any confidential information obtained from the other party that does not involve the affirmative duties set forth above.

**AGENT REPRESENTING SELLER AND BUYER**
A real estate agent, either acting directly or through one or more associate licensees, can legally be the agent of both the Seller and the Buyer in a transaction, but only with the knowledge and consent of both the Seller and the Buyer.
In a dual agency situation, the agent has the following affirmative obligations to both the Seller and the Buyer:
    (a) A fiduciary duty of utmost care, integrity, honesty and loyalty in the dealings with either the Seller or the Buyer.
    (b) Other duties to the Seller and the Buyer as stated above in their respective sections.
In representing both Seller and Buyer, the agent may not, without the express permission of the respective party, disclose to the other party that the Seller will accept a price less than the listing price or that the Buyer will pay a price greater than the price offered. The above duties of the agent in a real estate transaction do not relieve a Seller or Buyer from the responsibility to protect his or her own interests. You should carefully read all agreements to assure that they adequately express your understanding of the transaction. A real estate agent is a person qualified to advise about real estate. If legal or tax advice is desired, consult a competent professional. Throughout your real property transaction you may receive more than one disclosure form, depending upon the number of agents assisting in the transaction. The law requires each agent with whom you have more than a casual relationship to present you with this disclosure form. You should read its contents each time it is presented to you, considering the relationship between you and the real estate agent in your specific transaction. **This disclosure form includes the provisions of Sections 2079.13 to 2079.24, inclusive, of the Civil Code set forth on page 2. Read it carefully. I/WE ACKNOWLEDGE RECEIPT OF A COPY OF THIS DISCLOSURE AND THE PORTIONS OF THE CIVIL CODE PRINTED ON THE BACK (OR A SEPARATE PAGE).**

☒ Buyer ☐ Seller ☐ Landlord ☐ Tenant _Yao Juan Xu_____ Date _____ 10/22/2018 | 13:38:14 PDT
    Yao Juan Xu

☐ Buyer ☐ Seller ☐ Landlord ☐ Tenant _____ Date _____

Agent _**Sentinel Real Estate & Investments**_____ DRE Lic. # _**01835117**_
    Real Estate Broker (Firm)
By _____ DRE Lic. # _**02011647**_ Date _____ 10/22/2018 | 13:13:27 PDT
    (Salesperson or Broker-Associate) _**Jameson Shipp**_

Agency Disclosure Compliance (Civil Code §2079.14):
• When the listing brokerage company also represents Buyer/Tenant: The Listing Agent shall have one AD form signed by Seller/Landlord and a different AD form signed by Buyer/Tenant.
• When Seller/Landlord and Buyer/Tenant are represented by different brokerage companies: (i) the Listing Agent shall have one AD form signed by Seller/Landlord and (ii) the Buyer's/Tenant's Agent shall have one AD form signed by Buyer/Tenant and either that same or a different AD form presented to Seller/Landlord for signature prior to presentation of the offer. If the same form is used, Seller may sign here:

Seller/Landlord _____ Date _____ Seller/Landlord _____ Date _____
_**Lynda Bui, BK Trustee for the Estate of Joel &**_

© 1991-2010, California Association of REALTORS®, Inc.

**AD REVISED 12/14 (PAGE 1 OF 2)**

**DISCLOSURE REGARDING REAL ESTATE AGENCY RELATIONSHIP (AD PAGE 1 OF 2)**



Sentinel Real Estate, 8780 19th Street #350 Alta Loma CA 91701    Phone: 909-944-6900    Fax: 909-912-8350    1339 Alta Ave -
Gregory Shipp    Produced with zipForm® by zipLogix 18070 Fifteen Mile Road, Fraser, Michigan 48026 www.zipLogix.com

# Exhibit 6

CIVIL CODE SECTIONS 2079.24 (2079.16 APPEARS ON THE FRONT)

**2079.13** As used in Sections 2079.14 to 2079.24, inclusive, the following terms have the following meanings: **(a)** "Agent" means a person acting under provisions of Title 9 (commencing with Section 2295) in a real property transaction, and includes a person who is licensed as a real estate broker under Chapter 3 (commencing with Section 10130) of Part 1 of Division 4 of the Business and Professions Code, and under whose license a listing is executed or an offer to purchase is obtained. **(b)** "Associate licensee" means a person who is licensed as a real estate broker or salesperson under Chapter 3 (commencing with Section 10130) of Part 1 of Division 4 of the Business and Professions Code and who is either licensed under a broker or has entered into a written contract with a broker to act as the broker's agent in connection with acts requiring a real estate license and to function under the broker's supervision in the capacity of an associate licensee. The agent in the real property transaction bears responsibility for his or her associate licensees who perform as agents of the agent. When an associate licensee owes a duty to any principal, or to any buyer or seller who is not a principal, in a real property transaction, that duty is equivalent to the duty owed to that party by the broker for whom the associate licensee functions. **(c)** "Buyer" means a transferee in a real property transaction, and includes a person who executes an offer to purchase real property from a seller through an agent, or who seeks the services of an agent in more than a casual, transitory, or preliminary manner, with the object of entering into a real property transaction. "Buyer" includes vendee or lessee. **(d)** "Commercial real property" means all real property in the state, except single-family residential real property, dwelling units made subject to Chapter 2 (commencing with Section 1940) of Title 5, mobilehomes, as defined in Section 798.3, or recreational vehicles, as defined in Section 799.29. **(e)** "Dual agent" means an agent acting, either directly or through an associate licensee, as agent for both the seller and the buyer in a real property transaction. **(f)** "Listing agreement" means a contract between an owner of real property and an agent, by which the agent has been authorized to sell the real property or to find or obtain a buyer. **(g)** "Listing agent" means a person who has obtained a listing of real property to act as an agent for compensation. **(h)** "Listing price" is the amount expressed in dollars specified in the listing for which the seller is willing to sell the real property through the listing agent. **(i)** "Offering price" is the amount expressed in dollars specified in an offer to purchase for which the buyer is willing to buy the real property. **(j)** "Offer to purchase" means a written contract executed by a buyer acting through a selling agent that becomes the contract for the sale of the real property upon acceptance by the seller. **(k)** "Real property" means any estate specified by subdivision (1) or (2) of Section 761 in property that constitutes or is improved with one to four dwelling units, any commercial real property, any leasehold in these types of property exceeding one year's duration, and mobilehomes, when offered for sale or sold through an agent pursuant to the authority contained in Section 10131.6 of the Business and Professions Code. **(l)** "Real property transaction" means a transaction for the sale of real property in which an agent is employed by one or more of the principals to act in that transaction, and includes a listing or an offer to purchase. **(m)** "Sell," "sale," or "sold" refers to a transaction for the transfer of real property from the seller to the buyer, and includes exchanges of real property between the seller and buyer, transactions for the creation of a real property sales contract within the meaning of Section 2985, and transactions for the creation of a leasehold exceeding one year's duration. **(n)** "Seller" means the transferor in a real property transaction, and includes an owner who lists real property with an agent, whether or not a transfer results, or who receives an offer to purchase real property of which he or she is the owner from an agent on behalf of another. "Seller" includes both a vendor and a lessor. **(o)** "Selling agent" means a listing agent who acts alone, or an agent who acts in cooperation with a listing agent, and who sells or finds and obtains a buyer for the real property, or an agent who locates property for a buyer or who finds a buyer for a property for which no listing exists and presents an offer to purchase to the seller. **(p)** "Subagent" means a person to whom an agent delegates agency powers as provided in Article 5 (commencing with Section 2349) of Chapter 1 of Title 9. However, "subagent" does not include an associate licensee who is acting under the supervision of an agent in a real property transaction.

**2079.14** Listing agents and selling agents shall provide the seller and buyer in a real property transaction with a copy of the disclosure form specified in Section 2079.16, and, except as provided in subdivision (c), shall obtain a signed acknowledgement of receipt from that seller or buyer, except as provided in this section or Section 2079.15, as follows: **(a)** The listing agent, if any, shall provide the disclosure form to the seller prior to entering into the listing agreement. **(b)** The selling agent shall provide the disclosure form to the seller as soon as practicable prior to presenting the seller with an offer to purchase, unless the selling agent previously provided the seller with a copy of the disclosure form pursuant to subdivision (a). **(c)** Where the selling agent does not deal on a face-to-face basis with the seller, the disclosure form prepared by the selling agent may be furnished to the seller (and acknowledgement of receipt obtained for the selling agent from the seller) by the listing agent, or the selling agent may deliver the disclosure form by certified mail addressed to the seller at his or her last known address, in which case no signed acknowledgement of receipt is required. **(d)** The selling agent shall provide the disclosure form to the buyer as soon as practicable prior to execution of the buyer's offer to purchase, except that if the offer to purchase is not prepared by the selling agent, the selling agent shall present the disclosure form to the buyer not later than the next business day after the selling agent receives the offer to purchase from the buyer.

**2079.15** In any circumstance in which the seller or buyer refuses to sign an acknowledgement of receipt pursuant to Section 2079.14, the agent, or an associate licensee acting for an agent, shall set forth, sign, and date a written declaration of the facts of the refusal.

**2079.16** Reproduced on Page 1 of this AD form.

**2079.17 (a)** As soon as practicable, the selling agent shall disclose to the buyer and seller whether the selling agent is acting in the real property transaction exclusively as the buyer's agent, exclusively as the seller's agent, or as a dual agent representing both the buyer and the seller. This relationship shall be confirmed in the contract to purchase and sell real property or in a separate writing executed or acknowledged by the seller, the buyer, and the selling agent prior to or coincident with execution of that contract by the buyer and the seller, respectively. **(b)** As soon as practicable, the listing agent shall disclose to the seller whether the listing agent is acting in the real property transaction exclusively as the seller's agent, or as a dual agent representing both the seller and buyer. This relationship shall be confirmed in the contract to purchase and sell real property or in a separate writing executed or acknowledged by the seller and the listing agent prior to or coincident with the execution of that contract by the seller.

**(c)**   The confirmation required by subdivisions (a) and (b) shall be in the following form.

_____(DO NOT COMPLETE. SAMPLE ONLY)_____ is the agent of (check one): ☐ the seller exclusively; or ☐ both the buyer and seller.
(Name of Listing Agent)

_____(DO NOT COMPLETE. SAMPLE ONLY)_____ is the agent of (check one): ☐ the buyer exclusively; or ☐ the seller exclusively; or
(Name of Selling Agent if not the same as the Listing Agent) ☐ both the buyer and seller.

**(d)**   The disclosures and confirmation required by this section shall be in addition to the disclosure required by Section 2079.14.

**2079.18** No selling agent in a real property transaction may act as an agent for the buyer only, when the selling agent is also acting as the listing agent in the transaction.

**2079.19** The payment of compensation or the obligation to pay compensation to an agent by the seller or buyer is not necessarily determinative of a particular agency relationship between an agent and the seller or buyer. A listing agent and a selling agent may agree to share any compensation or commission paid, or any right to any compensation or commission for which an obligation arises as the result of a real estate transaction, and the terms of any such agreement shall not necessarily be determinative of a particular relationship.

**2079.20** Nothing in this article prevents an agent from selecting, as a condition of the agent's employment, a specific form of agency relationship not specifically prohibited by this article if the requirements of Section 2079.14 and Section 2079.17 are complied with.

**2079.21** A dual agent shall not disclose to the buyer that the seller is willing to sell the property at a price less than the listing price, without the express written consent of the seller. A dual agent shall not disclose to the seller that the buyer is willing to pay a price greater than the offering price, without the express written consent of the buyer. This section does not alter in any way the duty or responsibility of a dual agent to any principal with respect to confidential information other than price.

**2079.22** Nothing in this article precludes a listing agent from also being a selling agent, and the combination of these functions in one agent does not, of itself, make that agent a dual agent.

**2079.23** A contract between the principal and agent may be modified or altered to change the agency relationship at any time before the performance of the act which is the object of the agency with the written consent of the parties to the agency relationship.

**2079.24** Nothing in this article shall be construed to either diminish the duty of disclosure owed buyers and sellers by agents and their associate licensees, subagents, and employees or to relieve agents and their associate licensees, subagents, and employees from liability for their conduct in connection with acts governed by this article or for any breach of a fiduciary duty or a duty of disclosure.

Published and Distributed by:
REAL ESTATE BUSINESS SERVICES, INC.
a subsidiary of the California Association of REALTORS®
● 525 South Virgil Avenue, Los Angeles, California 90020

© 1991-2010, California Association of REALTORS®, Inc. [THIS FORM HAS BEEN APPROVED BY THE CALIFORNIA ASSOCIATION OF REALTORS® (C.A.R.). NO REPRESENTATION IS MADE AS TO THE LEGAL VALIDITY OR ACCURACY OF ANY PROVISION IN ANY SPECIFIC TRANSACTION. A REAL ESTATE BROKER IS THE PERSON QUALIFIED TO ADVISE ON REAL ESTATE TRANSACTIONS. IF YOU DESIRE LEGAL OR TAX ADVICE, CONSULT AN APPROPRIATE PROFESSIONAL.



**AD REVISED 12/14 (PAGE 2 OF 2)**

**DISCLOSURE REGARDING REAL ESTATE AGENCY RELATIONSHIP (AD PAGE 2 OF 2)**

Produced with zipForm® by zipLogix 18070 Fifteen Mile Road, Fraser, Michigan 48026   www.zipLogix.com        1339 Alta Ave -

**Exhibit 6**

CALIFORNIA
ASSOCIATION
OF REALTORS®

**POSSIBLE REPRESENTATION OF MORE THAN ONE BUYER
OR SELLER - DISCLOSURE AND CONSENT**
(C.A.R. Form PRBS, 11/14)

A real estate broker (Broker), whether a corporation, partnership or sole proprietorship, may represent more than one buyer or seller. This multiple representation can occur through an individual licensed as a broker or salesperson or through different individual broker's or salespersons (associate licensees) acting under the Broker's license. The associate licensees may be working out of the same or different office locations.

**Multiple Buyers:** Broker (individually or through its associate licensees) may be working with many prospective buyers at the same time. These prospective buyers may have an interest in, and make offers on, the same properties. Some of these properties may be listed with Broker and some may not. Broker will not limit or restrict any particular buyer from making an offer on any particular property whether or not Broker represents other buyers interested in the same property.

**Multiple Sellers:** Broker (individually or through its associate licensees) may have listings on many properties at the same time. As a result, Broker will attempt to find buyers for each of those listed properties. Some listed properties may appeal to the same prospective buyers. Some properties may attract more prospective buyers than others. Some of these prospective buyers may be represented by Broker and some may not. Broker will market all listed properties to all prospective buyers whether or not Broker has another or other listed properties that may appeal to the same prospective buyers.

**Dual Agency:** If Seller is represented by Broker, Seller acknowledges that broker may represent prospective buyers of Seller's property and consents to Broker acting as a dual agent for both seller and buyer in that transaction. If Buyer is represented by Broker, buyer acknowledges that Broker may represent sellers of property that Buyer is interested in acquiring and consents to Broker acting as a dual agent for both buyer and seller with regard to that property.

In the event of dual agency, seller and buyer agree that: **(a)** Broker, without the prior written consent of the Buyer, will not disclose to seller that the Buyer is willing to pay a price greater than the offered price; **(b)** Broker, without the prior written consent of the seller, will not disclose to the buyer that seller is willing to sell property at a price less than the listing price; and **(c)** other than as set forth in (a) and (b) above, a dual agent is obligated to disclose known facts materially affecting the value or desirability of the property to both parties.

**Offers not necessarily confidential:** Buyer is advised that seller or listing agent may disclose the existence, terms, or conditions of buyer's offer unless all parties and their agent have signed a written confidentiality agreement. Whether any such information is actually disclosed depends on many factors, such as current market conditions, the prevailing practice in the real estate community, the listing agent's marketing strategy and the instructions of the seller.

Buyer and seller understand that Broker may represent more than one buyer or more than one seller and even both buyer and seller on the same transaction and consents to such relationships.

**Seller and/or Buyer acknowledges reading and understanding this Possible Representation of More Than One Buyer or Seller - Disclosure and Consent and agrees to the agency possibilities disclosed.**

Seller _____ *Lynda Bui, BK Trustee for the Estate of Joel &* Date _____
Seller _____ Date _____
Buyer *Yao Juan Xu* — *Yao Juan Xu* Date 10/22/2018 | 13:3
F4567764858B46A...
Buyer _____ Date _____

Real Estate Broker (Firm) *SENTINEL REAL ESTATE & INVEST.* DRE Lic # *01835117* Date *10/19/2018*
By *Gregory Shipp* DRE Lic # *01006314* Date 10/22/2018 | 13:5
*GREGORY SHIPP*

Real Estate Broker (Firm) *Sentinel Real Estate & Investments* DRE Lic # *01835117* Date *10/19/2018*
By _____ DRE Lic # *02011647* Date 10/22/2018 | 13:1
*Jameson Shipp*

© 2014, California Association of REALTORS®, Inc. United States copyright law (Title 17 U.S. Code) forbids the unauthorized distribution, display and reproduction of this form, or any portion thereof, by photocopy machine or any other means, including facsimile or computerized formats.
THIS FORM HAS BEEN APPROVED BY THE CALIFORNIA ASSOCIATION OF REALTORS® (C.A.R.). NO REPRESENTATION IS MADE AS TO THE LEGAL VALIDITY OR ACCURACY OF ANY PROVISION IN ANY SPECIFIC TRANSACTION. A REAL ESTATE BROKER IS THE PERSON QUALIFIED TO ADVISE ON REAL ESTATE TRANSACTIONS. IF YOU DESIRE LEGAL OR TAX ADVICE, CONSULT AN APPROPRIATE PROFESSIONAL.
This form is made available to real estate professionals through an agreement with or purchase from the California Association of REALTORS®. It is not intended to identify the user as a REALTOR®. REALTOR® is a registered collective membership mark which may be used only by members of the NATIONAL ASSOCIATION OF REALTORS® who subscribe to its Code of Ethics.

Published and Distributed by:
REAL ESTATE BUSINESS SERVICES, INC.
*a subsidiary of the California Association of REALTORS®*
525 South Virgil Avenue, Los Angeles, California 90020



**PRBS 11/14 (PAGE 1 OF 1)**
**POSSIBLE REPRESENTATION OF MORE THAN ONE BUYER OR SELLER (PRBS PAGE 1 OF 1)**

## Exhibit 6

# CALIFORNIA ASSOCIATION OF REALTORS®

## WIRE FRAUD AND ELECTRONIC FUNDS TRANSFER ADVISORY
### (C.A.R. Form WFA, Revised 12/17)

Property Address: **_1339 Alta Ave, Upland, CA  91786-2812_** _____ ("Property").

## WIRE FRAUD AND ELECTRONIC FUNDS TRANSFERS ADVISORY:

The ability to communicate and conduct business electronically is a convenience and reality in nearly all parts of our lives. At the same time, it has provided hackers and scammers new opportunities for their criminal activity. Many businesses have been victimized and the real estate business is no exception.

While wiring or electronically transferring funds is a welcome convenience, we all need to exercise extreme caution. Emails attempting to induce fraudulent wire transfers have been received and have appeared to be legitimate. Reports indicate that some hackers have been able to intercept emailed transfer instructions, obtain account information and, by altering some of the data, redirect the funds to a different account. It also appears that some hackers were able to provide false phone numbers for verifying the wiring or funds transfer instructions. In those cases, the victim called the number provided to confirm the instructions, and then unwittingly authorized a transfer to somewhere or someone other than the intended recipient.

## ACCORDINGLY, YOU ARE ADVISED:

1. **Obtain phone numbers and account numbers only from Escrow Officers, Property Managers, or Landlords at the beginning of the transaction.**
2. **DO NOT EVER WIRE OR ELECTRONICALLY TRANSFER FUNDS PRIOR TO CALLING TO CONFIRM THE TRANSFER INSTRUCTIONS. ONLY USE A PHONE NUMBER YOU WERE PROVIDED PREVIOUSLY. Do not use any different phone number or account number included in any emailed transfer instructions.**
3. **Orally confirm the transfer instruction is legitimate and confirm the bank routing number, account numbers and other codes before taking steps to transfer the funds.**
4. **Avoid sending personal information in emails or texts.  Provide such information in person or over the telephone directly to the Escrow Officer, Property Manager, or Landlord.**
5. **Take steps to secure the system you are using with your email account. These steps include creating strong passwords, using secure WiFi, and not using free services.**

If you believe you have received questionable or suspicious wire or funds transfer instructions, immediately notify your bank, and the other party, and the Escrow Office, Landlord, or Property Manager. The sources below, as well as others, can also provide information:

Federal Bureau of Investigation: https://www.fbi.gov/; the FBI's IC3 at www.ic3.gov; or 310-477-6565

National White Collar Crime Center: http://www.nw3c.org/

On Guard Online: https://www.onguardonline.gov/

**NOTE: There are existing alternatives to electronic and wired fund transfers such as cashier's checks. By signing below, the undersigned acknowledge that each has read, understands and has received a copy of this Wire Fraud and Electronic Funds Transfer Advisory.**

| | | |
|---|---|---|
| Buyer/Tenant *Yao Juan Xu* | *Yao Juan Xu* Date | 10/22/2018 \| 13:38:1 |
| Buyer/Tenant _____ | Date _____ | |
| Seller/Landlord _____ *Lynda Bui, BK Trustee for the Estate of Joel & Peggy Clelland* | Date _____ | |
| Seller/Landlord _____ | Date _____ | |

©2016-2017, California Association of REALTORS®, Inc. United States copyright law (Title 17 U.S. Code) forbids the unauthorized distribution, display and reproduction of this form, or any portion thereof, by photocopy machine or any other means, including facsimile or computerized formats.
THIS FORM HAS BEEN APPROVED BY THE CALIFORNIA ASSOCIATION OF REALTORS®. NO REPRESENTATION IS MADE AS TO THE LEGAL VALIDITY OR ACCURACY OF ANY PROVISION IN ANY SPECIFIC TRANSACTION. A REAL ESTATE BROKER IS THE PERSON QUALIFIED TO ADVISE ON REAL ESTATE TRANSACTIONS. IF YOU DESIRE LEGAL OR TAX ADVICE, CONSULT AN APPROPRIATE PROFESSIONAL.
This form is made available to real estate professionals through an agreement with or purchase from the California Association of REALTORS®. It is not intended to identify the user as a REALTOR®. REALTOR® is a registered collective membership mark which may be used only by members of the NATIONAL ASSOCIATION OF REALTORS® who subscribe to its Code of Ethics.

Published and Distributed by:
REAL ESTATE BUSINESS SERVICES, INC.
*a subsidiary of the California Association of REALTORS®*
525 South Virgil Avenue, Los Angeles, California 90020



**WFA REVISED 12/17 (PAGE 1 OF 1)**
**WIRE FRAUD AND ELECTRONIC FUNDS TRANSFER ADVISORY (WFA PAGE 1 OF 1)**

# Exhibit 6

**CALIFORNIA**
**ASSOCIATION**
**OF REALTORS®**

**CALIFORNIA**
**RESIDENTIAL PURCHASE AGREEMENT**
**AND JOINT ESCROW INSTRUCTIONS**
(C.A.R. Form RPA-CA, Revised 12/15 )

**Date Prepared:** _10/19/2018_

**1. OFFER:**

 **A. THIS IS AN OFFER FROM** _Yao Juan Xu_ ("Buyer").

 **B. THE REAL PROPERTY** to be acquired is _1339 Alta Ave, Upland, CA  91786-2812_ , situated in _Upland_ (City), _San Bernardino_ (County), California, _91786-2812_ (Zip Code), Assessor's Parcel No. _1045455180000_ ("Property").

 **C. THE PURCHASE PRICE** offered is _Three Hundred Eighty-Two Thousand, Two Hundred Fifty_
 Dollars $ _382,250.00_ .

 **D. CLOSE OF ESCROW** shall occur on ☐ (date)(or ☒ _10_ **Days** After Acceptance).

 **E.** Buyer and Seller are referred to herein as the "Parties." Brokers are not Parties to this Agreement.

**2. AGENCY:**

 **A. DISCLOSURE:** The Parties each acknowledge receipt of a ☒ "Disclosure Regarding Real Estate Agency Relationships" (C.A.R. Form AD).

 **B. CONFIRMATION:** The following agency relationships are hereby confirmed for this transaction:
 Listing Agent _SENTINEL REAL ESTATE & INVEST._ (Print Firm Name) is the agent of (check one):
 ☐ the Seller exclusively; or ☒ both the Buyer and Seller.
 Selling Agent _Sentinel Real Estate & Investments_ (Print Firm Name) (if not the same as the Listing Agent) is the agent of (check one): ☐ the Buyer exclusively; or ☐ the Seller exclusively; or ☒ both the Buyer and Seller.

 **C. POTENTIALLY COMPETING BUYERS AND SELLERS:** The Parties each acknowledge receipt of a ☒ "Possible Representation of More than One Buyer or Seller - Disclosure and Consent" (C.A.R. Form PRBS).

**3. FINANCE TERMS:** Buyer represents that funds will be good when deposited with Escrow Holder.

 **A. INITIAL DEPOSIT:** Deposit shall be in the amount of . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . $ _10,000.00_
 **(1)** Buyer Direct Deposit: Buyer shall deliver deposit directly to Escrow Holder by electronic funds transfer, ☐ cashier's check, ☐ personal check, ☐ other _____ within 3 business days after Acceptance (or _____ );
 **OR (2)** ☐ Buyer Deposit with Agent: Buyer has given the deposit by personal check (or _____ ) to the agent submitting the offer (or to _____ ), made payable to _____ . The deposit shall be held uncashed until Acceptance and then deposited with Escrow Holder within 3 business days after Acceptance (or _____ ).
 Deposit checks given to agent shall be an original signed check and not a copy.
 (Note: Initial and increased deposits checks received by agent shall be recorded in Broker's trust fund log.)

 **B. INCREASED DEPOSIT:** Buyer shall deposit with Escrow Holder an increased deposit in the amount of . . . . . . . . $ _____
 within _____ **Days** After Acceptance (or _____ ).
 If the Parties agree to liquidated damages in this Agreement, they also agree to incorporate the increased deposit into the liquidated damages amount in a separate liquidated damages clause (C.A.R. Form RID) at the time the increased deposit is delivered to Escrow Holder.

 **C.** ☒ **ALL CASH OFFER:** No loan is needed to purchase the Property. This offer is NOT contingent on Buyer obtaining a loan. Written verification of sufficient funds to close this transaction IS ATTACHED to this offer or ☐ Buyer shall, within **3 (or _____ ) Days** After Acceptance, Deliver to Seller such verification.

 **D. LOAN(S):**
 **(1) FIRST LOAN:** in the amount of . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . $ _____
 This loan will be conventional financing or ☐ FHA, ☐ VA, ☐ Seller financing (C.A.R. Form SFA), ☐ assumed financing (C.A.R. Form AFA), ☐ Other _____ . This loan shall be at a fixed rate not to exceed _____ % or, ☐ an adjustable rate loan with initial rate not to exceed _____ %. Regardless of the type of loan, Buyer shall pay points not to exceed _____ % of the loan amount.
 **(2)** ☐ **SECOND LOAN** in the amount of . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . $ _____
 This loan will be conventional financing or ☐ Seller financing (C.A.R. Form SFA), ☐ assumed financing (C.A.R. Form AFA), ☐ Other _____ . This loan shall be at a fixed rate not to exceed _____ % or, ☐ an adjustable rate loan with initial rate not to exceed _____ %. Regardless of the type of loan, Buyer shall pay points not to exceed _____ % of the loan amount.
 **(3) FHA/VA:** For any FHA or VA loan specified in 3D(1), Buyer has **17 (or _____ ) Days** After Acceptance to Deliver to Seller written notice (C.A.R. Form FVA) of any lender-required repairs or costs that Buyer requests Seller to pay for or otherwise correct. Seller has no obligation to pay or satisfy lender requirements unless agreed in writing. A FHA/VA amendatory clause (C.A.R. Form FVAC) shall be a part of this Agreement.

 **E. ADDITIONAL FINANCING TERMS:** _____

 **F. BALANCE OF DOWN PAYMENT OR PURCHASE PRICE** in the amount of . . . . . . . . . . . . . . . . . . . . . . . . $ _372,250.00_
 to be deposited with Escrow Holder pursuant to Escrow Holder instructions.

 **G. PURCHASE PRICE (TOTAL):** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . $ _382,250.00_

Buyer's Initials ( _YJX_ ) ( _____ )

Seller's Initials ( _____ ) ( _____ )

© 1991-2015, California Association of REALTORS®, Inc.

**RPA-CA REVISED 12/15 (PAGE 1 OF 10)**

**CALIFORNIA RESIDENTIAL PURCHASE AGREEMENT (RPA-CA PAGE 1 OF 10)**

**Exhibit 6**

DocuSign Envelope ID: C460ZE9B-4C9E-4E36-BEC9-6E09324E6DF3

Case 6:17-bk-10928-WJ    Doc 58    Filed 12/18/18    Entered 12/18/18 18:00:18    Desc
Property Address: *1339 Alta Ave, Upland, CA 91786* Main Document    Page 75 of 97    Date: *October 19, 2018*

**H. VERIFICATION OF DOWN PAYMENT AND CLOSING COSTS:** Buyer (or Buyer's lender or loan broker pursuant to paragraph 3J(1)) shall, within **3 (or ____ ) Days** After Acceptance, Deliver to Seller written verification of Buyer's down payment and closing costs. ( ☐ Verification attached.)

**I. APPRAISAL CONTINGENCY AND REMOVAL:** This Agreement is (or ☒ is NOT) contingent upon a written appraisal of the Property by a licensed or certified appraiser at no less than the purchase price. Buyer shall, as specified in paragraph 14B(3), in writing, remove the appraisal contingency or cancel this Agreement within **17 (or ____ ) Days** After Acceptance.

**J. LOAN TERMS:**

**(1) LOAN APPLICATIONS:** Within **3 (or ____ ) Days** After Acceptance, Buyer shall Deliver to Seller a letter from Buyer's lender or loan broker stating that, based on a review of Buyer's written application and credit report, Buyer is prequalified or preapproved for any NEW loan specified in paragraph 3D. If any loan specified in paragraph 3D is an adjustable rate loan, the prequalification or preapproval letter shall be based on the qualifying rate, not the initial loan rate. ( ☐ Letter attached.)

**(2) LOAN CONTINGENCY:** Buyer shall act diligently and in good faith to obtain the designated loan(s). Buyer's qualification for the loan(s) specified above **is a contingency** of this Agreement unless otherwise agreed in writing. If there is no appraisal contingency or the appraisal contingency has been waived or removed, then failure of the Property to appraise at the purchase price does not entitle Buyer to exercise the cancellation right pursuant to the loan contingency if Buyer is otherwise qualified for the specified loan. Buyer's contractual obligations regarding deposit, balance of down payment and closing costs **are not contingencies** of this Agreement.

**(3) LOAN CONTINGENCY REMOVAL:**

Within **21 (or ____ ) Days** After Acceptance, Buyer shall, as specified in paragraph 14, in writing, remove the loan contingency or cancel this Agreement. If there is an appraisal contingency, removal of the loan contingency shall not be deemed removal of the appraisal contingency.

**(4)** ☐ **NO LOAN CONTINGENCY:** Obtaining any loan specified above is NOT a contingency of this Agreement. If Buyer does not obtain the loan and as a result does not purchase the Property, Seller may be entitled to Buyer's deposit or other legal remedies.

**(5) LENDER LIMITS ON BUYER CREDITS:** Any credit to Buyer, from any source, for closing or other costs that is agreed to by the Parties ("Contractual Credit") shall be disclosed to Buyer's lender. If the total credit allowed by Buyer's lender ("Lender Allowable Credit") is less than the Contractual Credit, then (i) the Contractual Credit shall be reduced to the Lender Allowable Credit, and (ii) in the absence of a separate written agreement between the Parties, there shall be no automatic adjustment to the purchase price to make up for the difference between the Contractual Credit and the Lender Allowable Credit.

**K. BUYER STATED FINANCING:** Seller is relying on Buyer's representation of the type of financing specified (including but not limited to, as applicable, all cash, amount of down payment, or contingent or non-contingent loan). Seller has agreed to a specific closing date, purchase price and to sell to Buyer in reliance on Buyer's covenant concerning financing. Buyer shall pursue the financing specified in this Agreement. Seller has no obligation to cooperate with Buyer's efforts to obtain any financing other than that specified in the Agreement and the availability of any such alternate financing does not excuse Buyer from the obligation to purchase the Property and close escrow as specified in this Agreement.

**4. SALE OF BUYER'S PROPERTY:**

**A.** This Agreement and Buyer's ability to obtain financing are NOT contingent upon the sale of any property owned by Buyer.

**OR B.** ☐ This Agreement and Buyer's ability to obtain financing are contingent upon the sale of property owned by Buyer as specified in the attached addendum (C.A.R. Form COP).

**5. ADDENDA AND ADVISORIES:**

A. ADDENDA:

| | |
|---|---|
| ☐ Addendum # _____ (C.A.R. Form ADM) | |
| ☐ Back Up Offer Addendum (C.A.R. Form BUO) | ☐ Court Confirmation Addendum (C.A.R. Form CCA) |
| ☐ Septic, Well and Property Monument Addendum (C.A.R. Form SWPI) | |
| ☒ Short Sale Addendum (C.A.R. Form SSA) | ☐ Other |

B. BUYER AND SELLER ADVISORIES:

| | |
|---|---|
| | ☒ Buyer's Inspection Advisory (C.A.R. Form BIA) |
| ☐ Probate Advisory (C.A.R. Form PA) | ☒ Statewide Buyer and Seller Advisory (C.A.R. Form SBSA) |
| ☐ Trust Advisory (C.A.R. Form TA) | ☐ REO Advisory (C.A.R. Form REO) |
| ☒ Short Sale Information and Advisory (C.A.R. Form SSIA) | ☒ Other *BK Global Purchase Addendum* |

**6. OTHER TERMS:** _____

_____

_____

**7. ALLOCATION OF COSTS**

**A. INSPECTIONS, REPORTS AND CERTIFICATES:** Unless otherwise agreed in writing, this paragraph only determines who is to pay for the inspection, test, certificate or service ("Report") mentioned; it **does not determine who is to pay for any work recommended or identified in the Report.**

**(1)** ☐ Buyer ☒ Seller shall pay for a natural hazard zone disclosure report, including tax ☐ environmental ☐ Other: _____ prepared by *seller's choice* .

**(2)** ☐ Buyer ☐ Seller shall pay for the following Report _____ prepared by _____ .

**(3)** ☐ Buyer ☐ Seller shall pay for the following Report _____ prepared by _____ .

Buyer's Initials ( YJX ) ( _____ )    Seller's Initials ( _____ ) ( _____ )

# Exhibit 6

Property Address: *1339 Alta Ave, Upland, CA 91786*   Date: *October 19, 2018*

**B. GOVERNMENT REQUIREMENTS AND RETROFIT:**
    **(1)** ☐ Buyer ☐ Seller shall pay for smoke alarm and carbon monoxide device installation and water heater bracing, if required by Law. Prior to Close Of Escrow ("COE"), Seller shall provide Buyer written statement(s) of compliance in accordance with state and local Law, unless Seller is exempt.
    **(2) (i)** ☐ Buyer ☐ Seller shall pay the cost of compliance with any other minimum mandatory government inspections and reports if required as a condition of closing escrow under any Law.
       **(ii)** ☐ Buyer ☐ Seller shall pay the cost of compliance with any other minimum mandatory government retrofit standards required as a condition of closing escrow under any Law, whether the work is required to be completed before or after COE.
       **(iii)** Buyer shall be provided, within the time specified in paragraph 14A, a copy of any required government conducted or point-of-sale inspection report prepared pursuant to this Agreement or in anticipation of this sale of the Property.

**C. ESCROW AND TITLE:**
    **(1) (a)** ☒ Buyer ☒ Seller shall pay escrow fee *50/50 split between buyer and seller* _____ .
       **(b)** Escrow Holder shall be *Brightline Title* _____ .
       **(c)** The Parties shall, within **5 (or ___ ) Days** After receipt, sign and return Escrow Holder's general provisions.
    **(2) (a)** ☐ Buyer ☒ Seller shall pay for **owner's** title insurance policy specified in paragraph 13E _____ .
       **(b)** Owner's title policy to be issued by *seller's choice* _____ .
       (Buyer shall pay for any title insurance policy insuring Buyer's **lender**, unless otherwise agreed in writing.)

**D. OTHER COSTS:**
    **(1)** ☐ Buyer ☒ Seller shall pay County transfer tax or fee _____ .
    **(2)** ☐ Buyer ☐ Seller shall pay City transfer tax or fee _____ .
    **(3)** ☐ Buyer ☐ Seller shall pay Homeowners' Association ("HOA") transfer fee _____ .
    **(4)** Seller shall pay HOA fees for preparing documents required to be delivered by Civil Code §4525.
    **(5)** ☐ Buyer ☐ Seller shall pay HOA fees for preparing all documents other than those required by Civil Code §4525.
    **(6)** Buyer to pay for any HOA certification fee.
    **(7)** ☐ Buyer ☐ Seller shall pay for any private transfer fee _____ .
    **(8)** ☐ Buyer ☐ Seller shall pay for _____ .
    **(9)** ☐ Buyer ☐ Seller shall pay for _____ .
    **(10)** ☐ Buyer ☐ Seller shall pay for the cost, not to exceed $ _____ , of a standard (or ☐ upgraded) one-year home warranty plan, issued by _____ , with the following optional coverages: ☐ Air Conditioner ☐ Pool/Spa ☐ Other: _____
       Buyer is informed that home warranty plans have many optional coverages in addition to those listed above. Buyer is advised to investigate these coverages to determine those that may be suitable for Buyer.
    **OR** ☒ **Buyer waives the purchase of a home warranty plan. Nothing in this paragraph precludes Buyer's purchasing a home warranty plan during the term of this Agreement.**

**8. ITEMS INCLUDED IN AND EXCLUDED FROM SALE:**
    **A. NOTE TO BUYER AND SELLER:** Items listed as included or excluded in the MLS, flyers or marketing materials are **not** included in the purchase price or excluded from the sale unless specified in paragraph 8 B or C.
    **B. ITEMS INCLUDED IN SALE:** Except as otherwise specified or disclosed,
      **(1)** All EXISTING fixtures and fittings that are attached to the Property;
      **(2)** EXISTING electrical, mechanical, lighting, plumbing and heating fixtures, ceiling fans, fireplace inserts, gas logs and grates, solar power systems, built-in appliances, window and door screens, awnings, shutters, window coverings, attached floor coverings, television antennas, satellite dishes, air coolers/conditioners, pool/spa equipment, garage door openers/remote controls, mailbox, in-ground landscaping, trees/shrubs, water features and fountains, water softeners, water purifiers, security systems/alarms and the following if checked: ☐ all stove(s), except _____ ; ☐ all refrigerator(s) except _____ ; ☐ all washer(s) and dryer(s), except _____ ;
      **(3)** The following additional items: _____
      **(4)** Existing integrated phone and home automation systems, including necessary components such as intranet and Internet-connected hardware or devices, control units (other than non-dedicated mobile devices, electronics and computers) and applicable software, permissions, passwords, codes and access information, are ( ☐ are NOT) included in the sale.
      **(5) LEASED OR LIENED ITEMS AND SYSTEMS:** Seller shall, within the time specified in paragraph 14A, (i) disclose to Buyer if any item or system specified in paragraph 8B or otherwise included in the sale is leased, or not owned by Seller, or specifically subject to a lien or other encumbrance, and (ii) Deliver to Buyer all written materials (such as lease, warranty, etc.) concerning any such item. Buyer's ability to assume any such lease, or willingness to accept the Property subject to any such lien or encumbrance, is a contingency in favor of Buyer and Seller as specified in paragraph 14B and C.
      **(6)** Seller represents that all items included in the purchase price, unless otherwise specified, (i) are owned by Seller and shall be transferred free and clear of liens and encumbrances, except the items and systems identified pursuant to 8B(5) and _____ _____ , and (ii) are transferred without Seller warranty regardless of value.
    **C. ITEMS EXCLUDED FROM SALE:** Unless otherwise specified, the following items are excluded from sale: (i) audio and video components (such as flat screen TVs, speakers and other items) if any such item is not itself attached to the Property, even if a bracket or other mechanism attached to the component or item is attached to the Property; (ii) furniture and other items secured to the Property for earthquake purposes; and (iii) _____

_____ . **Brackets attached to walls, floors or ceilings for any such component, furniture or item shall remain with the Property (or** ☐ **will be removed and holes or other damage shall be repaired, but not painted).**

Buyer's Initials ( *UJX* ) ( _____ )                Seller's Initials ( _____ ) ( _____ )

**RPA-CA REVISED 12/15 (PAGE 3 OF 10)**

# Exhibit 6

DocuSign Envelope ID: C4607E9B-4C9E-4E36-BEC9-6E09324E6DF3

Case 6:17-bk-10928-WJ   Doc 58   Filed 12/18/18   Entered 12/18/18 18:00:18   Desc
Property Address: **1339 Alta Ave, Upland, CA 91784**   Main Document   Page 77 of 97   Date: **October 19, 2018**

**9. CLOSING AND POSSESSION:**

   **A.** Buyer intends (or ☒ does not intend) to occupy the Property as Buyer's primary residence.

   **B.** **Seller-occupied or vacant property:** Possession shall be delivered to Buyer: (i) at 6 PM or (____ ☐ AM/☐ PM) on the date of Close Of Escrow; (ii) ☐ no later than ____ calendar days after Close Of Escrow; or (iii) ☐ at ____ ☐ AM/☐ PM on _____.

   **C.** **Seller remaining in possession After Close Of Escrow:** If Seller has the right to remain in possession after Close Of Escrow, (i) the Parties are advised to sign a separate occupancy agreement such as ☐ C.A.R. Form SIP, for Seller continued occupancy of less than 30 days, ☐ C.A.R. Form RLAS for Seller continued occupancy of 30 days or more; and (ii) the Parties are advised to consult with their insurance and legal advisors for information about liability and damage or injury to persons and personal and real property; and (iii) Buyer is advised to consult with Buyer's lender about the impact of Seller's occupancy on Buyer's loan.

   **D.** **Tenant-occupied property:** Property shall be vacant at least **5 (or ____ ) Days** Prior to Close Of Escrow, unless otherwise agreed in writing. **Note to Seller: If you are unable to deliver Property vacant in accordance with rent control and other applicable Law, you may be in breach of this Agreement.**

   **OR** ☐ **Tenant to remain in possession** (C.A.R. Form TIP).

   **E.** At Close Of Escrow: Seller assigns to Buyer any assignable warranty rights for items included in the sale; and Seller shall Deliver to Buyer available Copies of any such warranties. Brokers cannot and will not determine the assignability of any warranties.

   **F.** At Close Of Escrow, unless otherwise agreed in writing, Seller shall provide keys, passwords, codes and/or means to operate all locks, mailboxes, security systems, alarms, home automation systems and intranet and Internet-connected devices included in the purchase price, and garage door openers. If the Property is a condominium or located in a common interest subdivision, Buyer may be required to pay a deposit to the Homeowners' Association ("HOA") to obtain keys to accessible HOA facilities.

**10. STATUTORY AND OTHER DISCLOSURES (INCLUDING LEAD-BASED PAINT HAZARD DISCLOSURES) AND CANCELLATION RIGHTS:**

   **A. (1)** Seller shall, within the time specified in paragraph 14A, Deliver to Buyer: (i) if required by Law, a fully completed: Federal Lead-Based Paint Disclosures (C.A.R. Form FLD) and pamphlet ("Lead Disclosures"); and **(ii)** unless exempt, fully completed disclosures or notices required by sections 1102 et. seq. and 1103 et. seq. of the Civil Code ("Statutory Disclosures"). Statutory Disclosures include, but are not limited to, a Real Estate Transfer Disclosure Statement ("TDS"), a Natural Hazard Disclosure Statement ("NHD"), notice or actual knowledge of release of illegal controlled substance, notice of special tax and/or assessments (or, if allowed, substantially equivalent notice regarding the Mello-Roos Community Facilities Act of 1982 and Improvement Bond Act of 1915) and, if Seller has actual knowledge, of industrial use and military ordnance location (C.A.R. Form SPQ or ESD).

   **(2)** Any Statutory Disclosure required by this paragraph is considered fully completed if Seller has answered all questions and completed and signed the Seller section(s) and the Listing Agent, if any, has completed and signed the Listing Broker section(s), or, if applicable, an Agent Visual Inspection Disclosure (C.A.R. Form AVID). Nothing stated herein relieves a Buyer's Broker, if any, from the obligation to (i) conduct a reasonably competent and diligent visual inspection of the accessible areas of the Property and disclose, on Section IV of the TDS, or an AVID, material facts affecting the value or desirability of the Property that were or should have been revealed by such an inspection or (ii) complete any sections on all disclosures required to be completed by Buyer's Broker.

   **(3) Note to Buyer and Seller:** Waiver of Statutory and Lead Disclosures is prohibited by Law.

   **(4)** Within the time specified in paragraph 14A, **(i)** Seller, unless exempt from the obligation to provide a TDS, shall, complete and provide Buyer with a Seller Property Questionnaire (C.A.R. Form SPQ); ii) if Seller is not required to provide a TDS, Seller shall complete and provide Buyer with an Exempt Seller Disclosure (C.A.R. Form ESD).

   **(5)** Buyer shall, within the time specified in paragraph 14B(1), return Signed Copies of the Statutory, Lead and other disclosures to Seller.

   **(6)** In the event Seller or Listing Broker, prior to Close Of Escrow, becomes aware of adverse conditions materially affecting the Property, or any material inaccuracy in disclosures, information or representations previously provided to Buyer, Seller shall promptly provide a subsequent or amended disclosure or notice, in writing, covering those items. **However, a subsequent or amended disclosure shall not be required for conditions and material inaccuracies** of which Buyer is otherwise aware, or which are **disclosed in reports provided to or obtained by Buyer or ordered and paid for by Buyer.**

   **(7)** If any disclosure or notice specified in paragraph 10A(1), or subsequent or amended disclosure or notice is Delivered to Buyer after the offer is Signed, Buyer shall have the right to cancel this Agreement within **3 Days** After Delivery in person, or **5 Days** After Delivery by deposit in the mail, by giving written notice of cancellation to Seller or Seller's agent.

   **B.** **NATURAL AND ENVIRONMENTAL HAZARD DISCLOSURES AND OTHER BOOKLETS:** Within the time specified in paragraph 14A, Seller shall, if required by Law: **(i)** Deliver to Buyer earthquake guide(s) (and questionnaire), environmental hazards booklet, and home energy rating pamphlet; **(ii)** even if exempt from the obligation to provide a TDS, if the Property is located in a Special Flood Hazard Area; Potential Flooding (Inundation) Area; Very High Fire Hazard Zone; State Fire Responsibility Area; Earthquake Fault Zone; and Seismic Hazard Zone; and **(iii)** disclose any other zone as required by Law and provide any other information required for those zones.

   **C.** **WITHHOLDING TAXES:** Within the time specified in paragraph 14A, to avoid required withholding, Seller shall Deliver to Buyer or qualified substitute, an affidavit sufficient to comply with federal (FIRPTA) and California withholding Law (C.A.R. Form AS or QS).

   **D.** **MEGAN'S LAW DATABASE DISCLOSURE:** Notice: Pursuant to Section 290.46 of the Penal Code, information about specified registered sex offenders is made available to the public via an Internet Web site maintained by the Department of Justice at **www.meganslaw.ca.gov.** Depending on an offender's criminal history, this information will include either the address at which the offender resides or the community of residence and ZIP Code in which he or she resides. (Neither Seller nor Brokers are required to check this website. If Buyer wants further information, Broker recommends that Buyer obtain information from this website during Buyer's inspection contingency period. Brokers do not have expertise in this area.)

   **E.** **NOTICE REGARDING GAS AND HAZARDOUS LIQUID TRANSMISSION PIPELINES:** This notice is being provided simply to inform you that information about the general location of gas and hazardous liquid transmission pipelines is available to the public via the National Pipeline Mapping System (NPMS) Internet Web site maintained by the United States Department of Transportation at **http://www.npms.phmsa.dot.gov/.** To seek further information about possible transmission pipelines near the Property, you may contact your local gas utility or other pipeline operators in the area. Contact information for pipeline operators is searchable by ZIP Code and county on the NPMS Internet Web site.

   **F.** **CONDOMINIUM/PLANNED DEVELOPMENT DISCLOSURES:**
   **(1) SELLER HAS: 7 (or ____ ) Days** After Acceptance to disclose to Buyer if the Property is a condominium, or is located in a planned development or other common interest subdivision (C.A.R. Form SPQ or ESD).

Buyer's Initials ( _JJX_ ) ( _____ )          Seller's Initials ( _____ ) ( _____ )

**RPA-CA REVISED 12/15 (PAGE 4 OF 10)**

**CALIFORNIA RESIDENTIAL PURCHASE AGREEMENT   (RPA-CA PAGE 4 OF 10)**

**Exhibit 6**

Property Address: *1339 Alta Ave, Upland, CA 91786-2821*    Date: *October 19, 2018*

(2) If the Property is a condominium or is located in a planned development or other common interest subdivision, Seller has **3 (or ___) Days** After Acceptance to request from the HOA (C.A.R. Form HOA1): **(i)** Copies of any documents required by Law; **(ii)** disclosure of any pending or anticipated claim or litigation by or against the HOA; **(iii)** a statement containing the location and number of designated parking and storage spaces; **(iv)** Copies of the most recent 12 months of HOA minutes for regular and special meetings; and **(v)** the names and contact information of all HOAs governing the Property (collectively, "CI Disclosures"). **(vi)** private transfer fees; **(vii)** Pet fee restrictions; and **(viii)** smoking restrictions. Seller shall itemize and Deliver to Buyer all CI Disclosures received from the HOA and any CI Disclosures in Seller's possession. Buyer's approval of CI Disclosures is a contingency of this Agreement as specified in paragraph 14B(3). The Party specified in paragraph 7, as directed by escrow, shall deposit funds into escrow or direct to HOA or management company to pay for any of the above.

**11. CONDITION OF PROPERTY:** Unless otherwise agreed in writing: **(i)** the Property is sold (a) "AS-IS" in its PRESENT physical condition as of the date of Acceptance and (b) subject to Buyer's Investigation rights; **(ii)** the Property, including pool, spa, landscaping and grounds, is to be maintained in substantially the same condition as on the date of Acceptance; and **(iii)** all debris and personal property not included in the sale shall be removed by Close Of Escrow.
   **A.** Seller shall, within the time specified in paragraph 14A, DISCLOSE KNOWN MATERIAL FACTS AND DEFECTS affecting the Property, including known insurance claims within the past five years, and make any and all other disclosures required by law.
   **B.** Buyer has the right to conduct Buyer Investigations of the Property and, as specified in paragraph 14B, based upon information discovered in those investigations: (i) cancel this Agreement; or (ii) request that Seller make Repairs or take other action.
   **C. Buyer is strongly advised to conduct investigations of the entire Property in order to determine its present condition. Seller may not be aware of all defects affecting the Property or other factors that Buyer considers important. Property improvements may not be built according to code, in compliance with current Law, or have had permits issued.**

**12. BUYER'S INVESTIGATION OF PROPERTY AND MATTERS AFFECTING PROPERTY:**
   **A.** Buyer's acceptance of the condition of, and any other matter affecting the Property, is a contingency of this Agreement as specified in this paragraph and paragraph 14B. Within the time specified in paragraph 14B(1), Buyer shall have the right, at Buyer's expense unless otherwise agreed, to conduct inspections, investigations, tests, surveys and other studies ("Buyer Investigations"), including, but not limited to: **(i)** a general physical inspection; **(ii)** an inspection specifically for wood destroying pests and organisms. Any inspection for wood destroying pests and organisms shall be prepared by a registered Structural Pest Control company; shall cover the main building and attached structures; may cover detached structures; shall NOT include water tests of shower pans on upper level units unless the owners of property below the shower consent; shall NOT include roof coverings; and, if the Property is a unit in a condominium or other common interest subdivision, the inspection shall include only the separate interest and any exclusive-use areas being transferred, and shall NOT include common areas; and shall include a report ("Pest Control Report") showing the findings of the company which shall be separated into sections for evident infestation or infections (Section 1) and for conditions likely to lead to infestation or infection (Section 2); **(iii)** inspect for lead-based paint and other lead-based paint hazards; **(iv)** satisfy Buyer as to any matter specified in the attached Buyer's Inspection Advisory (C.A.R. Form BIA); (v) review the registered sex offender database; **(vi)** confirm the insurability of Buyer and the Property including the availability and cost of flood and fire insurance; and **(vii)** review and seek approval of leases that may need to be assumed by Buyer. Without Seller's prior written consent, Buyer shall neither make nor cause to be made: invasive or destructive Buyer Investigations, except for minimally invasive testing required to prepare a Pest Control Report; or inspections by any governmental building or zoning inspector or government employee, unless required by Law.
   **B.** Seller shall make the Property available for all Buyer Investigations. Buyer shall **(i)** as specified in paragraph 14B, complete Buyer Investigations and either remove the contingency or cancel this Agreement, and **(ii)** give Seller, at no cost, complete Copies of all such Investigation reports obtained by Buyer, which obligation shall survive the termination of this Agreement.
   **C.** Seller shall have water, gas, electricity and all operable pilot lights on for Buyer's Investigations and through the date possession is made available to Buyer.
   **D. Buyer indemnity and seller protection for entry upon property:** Buyer shall: **(i)** keep the Property free and clear of liens; **(ii)** repair all damage arising from Buyer Investigations; and **(iii)** indemnify and hold Seller harmless from all resulting liability, claims, demands, damages and costs. Buyer shall carry, or Buyer shall require anyone acting on Buyer's behalf to carry, policies of liability, workers' compensation and other applicable insurance, defending and protecting Seller from liability for any injuries to persons or property occurring during any Buyer Investigations or work done on the Property at Buyer's direction prior to Close Of Escrow. Seller is advised that certain protections may be afforded Seller by recording a "Notice of Non-Responsibility" (C.A.R. Form NNR) for Buyer Investigations and work done on the Property at Buyer's direction. Buyer's obligations under this paragraph shall survive the termination of this Agreement.

**13. TITLE AND VESTING:**
   **A.** Within the time specified in paragraph 14, Buyer shall be provided a current preliminary title report ("Preliminary Report"). The Preliminary Report is only an offer by the title insurer to issue a policy of title insurance and may not contain every item affecting title. Buyer's review of the Preliminary Report and any other matters which may affect title are a contingency of this Agreement as specified in paragraph 14B. The company providing the Preliminary Report shall, prior to issuing a Preliminary Report, conduct a search of the General Index for all Sellers except banks or other institutional lenders selling properties they acquired through foreclosure (REOs), corporations, and government entities. Seller shall within 7 Days After Acceptance, give Escrow Holder a completed Statement of Information.
   **B.** Title is taken in its present condition subject to all encumbrances, easements, covenants, conditions, restrictions, rights and other matters, whether of record or not, as of the date of Acceptance except for: **(i)** monetary liens of record (which Seller is obligated to pay off) unless Buyer is assuming those obligations or taking the Property subject to those obligations; and **(ii)** those matters which Seller has agreed to remove in writing.
   **C.** Within the time specified in paragraph 14A, Seller has a duty to disclose to Buyer all matters known to Seller affecting title, whether of record or not.
   **D.** At Close Of Escrow, Buyer shall receive a grant deed conveying title (or, for stock cooperative or long-term lease, an assignment of stock certificate or of Seller's leasehold interest), including oil, mineral and water rights if currently owned by Seller. Title shall vest as designated in Buyer's supplemental escrow instructions. THE MANNER OF TAKING TITLE MAY HAVE SIGNIFICANT LEGAL AND TAX CONSEQUENCES. CONSULT AN APPROPRIATE PROFESSIONAL.

Buyer's Initials (_*YJX*_) (_____)    Seller's Initials (_____) (_____)



**RPA-CA REVISED 12/15 (PAGE 5 OF 10)**

**CALIFORNIA RESIDENTIAL PURCHASE AGREEMENT  (RPA-CA PAGE 5 OF 10)**

Exhibit 6

Property Address: **1339 Alta Ave, Upland, CA 91786**    Date: **October 19, 2018**

**E.** Buyer shall receive a CLTA/ALTA "Homeowner's Policy of Title Insurance", if applicable to the type of property and buyer. If not, Escrow Holder shall notify Buyer. A title company can provide information about the availability, coverage, and cost of other title policies and endorsements. If the Homeowner's Policy is not available, Buyer shall choose another policy, instruct Escrow Holder in writing and shall pay any increase in cost.

**14. TIME PERIODS; REMOVAL OF CONTINGENCIES; CANCELLATION RIGHTS:** The following time periods may only be extended, altered, modified or changed by mutual written agreement. Any removal of contingencies or cancellation under this paragraph by either Buyer or Seller must be exercised in good faith and in writing (C.A.R. Form CR or CC).

**A. SELLER HAS: 7 (or ____ ) Days** After Acceptance to Deliver to Buyer all Reports, disclosures and information for which Seller is responsible under paragraphs 5, 6, 7, 8B(5), 10A, B, C, and F, 11A and 13A. If, by the time specified, Seller has not Delivered any such item, Buyer after first Delivering to Seller a Notice to Seller to Perform (C.A.R. Form NSP) may cancel this Agreement.

**B. (1) BUYER HAS: 17 (or ____ ) Days** After Acceptance, unless otherwise agreed in writing, to: **(i)** complete all Buyer Investigations; review all disclosures, reports, lease documents to be assumed by Buyer pursuant to paragraph 8B(5), and other applicable information, which Buyer receives from Seller; and approve all matters affecting the Property; and **(ii)** Deliver to Seller Signed Copies of Statutory and Lead Disclosures and other disclosures Delivered by Seller in accordance with paragraph 10A.

**(2)** Within the time specified in paragraph 14B(1), Buyer may request that Seller make repairs or take any other action regarding the Property (C.A.R. Form RR). Seller has no obligation to agree to or respond to (C.A.R. Form RRRR) Buyer's requests.

**(3)** By the end of the time specified in paragraph 14B(1) (or as otherwise specified in this Agreement), Buyer shall Deliver to Seller a removal of the applicable contingency or cancellation (C.A.R. Form CR or CC) of this Agreement. However, if any report, disclosure or information for which Seller is responsible is not Delivered within the time specified in paragraph 14A, then Buyer has **5 (or ____ ) Days** After Delivery of any such items, or the time specified in paragraph 14B(1), whichever is later, to Deliver to Seller a removal of the applicable contingency or cancellation of this Agreement.

**(4) Continuation of Contingency:** Even after the end of the time specified in paragraph 14B(1) and before Seller cancels, if at all, pursuant to paragraph 14D, Buyer retains the right, in writing, to either (i) remove remaining contingencies, or (ii) cancel this Agreement based on a remaining contingency. Once Buyer's written removal of all contingencies is Delivered to Seller, Seller may not cancel this Agreement pursuant to paragraph 14D(1).

**(5)** Access to Property: Buyer shall have access to the Property to conduct inspections and investigations for **17 (or ____ ) Days** After Acceptance, whether or not any part of the Buyer's Investigation Contingency has been waived or removed.

**C.** [X] **REMOVAL OF CONTINGENCIES WITH OFFER:** Buyer removes the contingencies specified in the attached Contingency Removal form (C.A.R. Form CR). If Buyer removes any contingency without an adequate understanding of the Property's condition or Buyer's ability to purchase, Buyer is acting against the advice of Broker.

**D. SELLER RIGHT TO CANCEL:**

**(1) Seller right to Cancel; Buyer Contingencies:** If, by the time specified in this Agreement, Buyer does not Deliver to Seller a removal of the applicable contingency or cancellation of this Agreement, then Seller, after first Delivering to Buyer a Notice to Buyer to Perform (C.A.R. Form NBP), may cancel this Agreement. In such event, Seller shall authorize the return of Buyer's deposit, except for fees incurred by Buyer.

**(2) Seller right to Cancel; Buyer Contract Obligations:** Seller, after first delivering to Buyer a NBP, may cancel this Agreement if, by the time specified in this Agreement, Buyer does not take the following action(s): **(i)** Deposit funds as required by paragraph 3A, or 3B or if the funds deposited pursuant to paragraph 3A or 3B are not good when deposited; **(ii)** Deliver a notice of FHA or VA costs or terms as required by paragraph 3D(3) (C.A.R. Form FVA); **(iii)** Deliver a letter as required by paragraph 3J(1); **(iv)** Deliver verification, or a satisfactory verification if Seller reasonably disapproves of the verification already provided, as required by paragraph 3C or 3H; **(v)** In writing assume or accept leases or liens specified in 8B5; **(vi)** Return Statutory and Lead Disclosures as required by paragraph 10A(5); or **(vii)** Sign or initial a separate liquidated damages form for an increased deposit as required by paragraphs 3B and 21B; or **(viii)** Provide evidence of authority to sign in a representative capacity as specified in paragraph 19. In such event, Seller shall authorize the return of Buyer's deposit, except for fees incurred by Buyer.

**E. NOTICE TO BUYER OR SELLER TO PERFORM:** The NBP or NSP shall: **(i)** be in writing; **(ii)** be signed by the applicable Buyer or Seller; and **(iii)** give the other Party at least **2 (or ____ ) Days** After Delivery (or until the time specified in the applicable paragraph, whichever occurs last) to take the applicable action. A NBP or NSP may not be Delivered any earlier than **2 Days** Prior to the expiration of the applicable time for the other Party to remove a contingency or cancel this Agreement or meet an obligation specified in paragraph 14.

**F. EFFECT OF BUYER'S REMOVAL OF CONTINGENCIES:** If Buyer removes, in writing, any contingency or cancellation rights, unless otherwise specified in writing, Buyer shall conclusively be deemed to have: **(i)** completed all Buyer Investigations, and review of reports and other applicable information and disclosures pertaining to that contingency or cancellation right; **(ii)** elected to proceed with the transaction; and **(iii)** assumed all liability, responsibility and expense for Repairs or corrections pertaining to that contingency or cancellation right, or for the inability to obtain financing.

**G. CLOSE OF ESCROW:** Before Buyer or Seller may cancel this Agreement for failure of the other Party to close escrow pursuant to this Agreement, Buyer or Seller must first Deliver to the other Party a demand to close escrow (C.A.R. Form DCE). The DCE shall: **(i)** be signed by the applicable Buyer or Seller; and **(ii)** give the other Party at least **3 (or ____ ) Days** After Delivery to close escrow. A DCE may not be Delivered any earlier than **3 Days** Prior to the scheduled close of escrow.

**H. EFFECT OF CANCELLATION ON DEPOSITS:** If Buyer or Seller gives written notice of cancellation pursuant to rights duly exercised under the terms of this Agreement, the Parties agree to Sign mutual instructions to cancel the sale and escrow and release deposits, if any, to the party entitled to the funds, less fees and costs incurred by that party. Fees and costs may be payable to service providers and vendors for services and products provided during escrow. Except as specified below, **release of funds will require mutual Signed release instructions from the Parties, judicial decision or arbitration award.** If either Party fails to execute mutual instructions to cancel escrow, one Party may make a written demand to Escrow Holder for the deposit. (C.A.R. Form BDRD or SDRD). Escrow Holder, upon receipt, shall promptly deliver notice of the demand to the other Party. If, within 10 Days After Escrow Holder's notice, the other Party does not object to the demand, Escrow Holder shall disburse the deposit to the Party making the demand. If Escrow Holder complies with the preceding process, each Party shall be deemed to have released Escrow Holder from any and all claims or liability related to the disbursal of the deposit. Escrow Holder, at its discretion, may nonetheless require mutual cancellation instructions. **A Party may be subject to a civil penalty of up to $1,000 for refusal to sign cancellation instructions if no good faith dispute exists as to who is entitled to the deposited funds** (Civil Code §1057.3).

Buyer's Initials (____) (____)    Seller's Initials (____) (____)

Produced with zipForm® by zipLogix 18070 Fifteen Mile Road, Fraser, Michigan 48026    www.zipLogix.com    1339 Alta Ave -

**Exhibit 6**

DocuSign Envelope ID: C460ZE9B-4C9E-4E36-BEC9-6E09324E6DF3

Case 6:17-bk-10928-WJ   Doc 58   Filed 12/18/18   Entered 12/18/18 18:00:18   Desc
Property Address: *1339 Alta Ave, Upland, CA 91786-2021*   Main Document   Page 80 of 97   Date: *October 19, 2018*

**15. FINAL VERIFICATION OF CONDITION:** Buyer shall have the right to make a final verification of the Property within **5 (or [    ] ) Days** Prior to Close Of Escrow, NOT AS A CONTINGENCY OF THE SALE, but solely to confirm: **(i)** the Property is maintained pursuant to paragraph 11; **(ii)** Repairs have been completed as agreed; and **(iii)** Seller has complied with Seller's other obligations under this Agreement (C.A.R. Form VP).

**16. REPAIRS:** Repairs shall be completed prior to final verification of condition unless otherwise agreed in writing. Repairs to be performed at Seller's expense may be performed by Seller or through others, provided that the work complies with applicable Law, including governmental permit, inspection and approval requirements. Repairs shall be performed in a good, skillful manner with materials of quality and appearance comparable to existing materials. It is understood that exact restoration of appearance or cosmetic items following all Repairs may not be possible. Seller shall: **(i)** obtain invoices and paid receipts for Repairs performed by others; **(ii)** prepare a written statement indicating the Repairs performed by Seller and the date of such Repairs; and **(iii)** provide Copies of invoices and paid receipts and statements to Buyer prior to final verification of condition.

**17. PRORATIONS OF PROPERTY TAXES AND OTHER ITEMS:** Unless otherwise agreed in writing, the following items shall be PAID CURRENT and prorated between Buyer and Seller as of Close Of Escrow: real property taxes and assessments, interest, rents, HOA regular, special, and emergency dues and assessments imposed prior to Close Of Escrow, premiums on insurance assumed by Buyer, payments on bonds and assessments assumed by Buyer, and payments on Mello-Roos and other Special Assessment District bonds and assessments that are now a lien. The following items shall be assumed by Buyer WITHOUT CREDIT toward the purchase price: prorated payments on Mello-Roos and other Special Assessment District bonds and assessments and HOA special assessments that are now a lien but not yet due. Property will be reassessed upon change of ownership. Any supplemental tax bills shall be paid as follows: **(i)** for periods after Close Of Escrow, by Buyer; and **(ii)** for periods prior to Close Of Escrow, by Seller (see C.A.R. Form SPT or SBSA for further information). TAX BILLS ISSUED AFTER CLOSE OF ESCROW SHALL BE HANDLED DIRECTLY BETWEEN BUYER AND SELLER. Prorations shall be made based on a 30-day month.

**18. BROKERS:**
  **A. COMPENSATION:** Seller or Buyer, or both, as applicable, agree to pay compensation to Broker as specified in a separate written agreement between Broker and that Seller or Buyer. Compensation is payable upon Close Of Escrow, or if escrow does not close, as otherwise specified in the agreement between Broker and that Seller or Buyer.
  **B. SCOPE OF DUTY:** Buyer and Seller acknowledge and agree that Broker: **(i)** Does not decide what price Buyer should pay or Seller should accept; **(ii)** Does not guarantee the condition of the Property; **(iii)** Does not guarantee the performance, adequacy or completeness of inspections, services, products or repairs provided or made by Seller or others; **(iv)** Does not have an obligation to conduct an inspection of common areas or areas off the site of the Property; **(v)** Shall not be responsible for identifying defects on the Property, in common areas, or offsite unless such defects are visually observable by an inspection of reasonably accessible areas of the Property or are known to Broker; **(vi)** Shall not be responsible for inspecting public records or permits concerning the title or use of Property; **(vii)** Shall not be responsible for identifying the location of boundary lines or other items affecting title; **(viii)** Shall not be responsible for verifying square footage, representations of others or information contained in Investigation reports, Multiple Listing Service, advertisements, flyers or other promotional material; **(ix)** Shall not be responsible for determining the fair market value of the Property or any personal property included in the sale; **(x)** Shall not be responsible for providing legal or tax advice regarding any aspect of a transaction entered into by Buyer or Seller; and **(xi)** Shall not be responsible for providing other advice or information that exceeds the knowledge, education and experience required to perform real estate licensed activity. Buyer and Seller agree to seek legal, tax, insurance, title and other desired assistance from appropriate professionals.

**19. REPRESENTATIVE CAPACITY:** If one or more Parties is signing this Agreement in a representative capacity and not for him/herself as an individual then that Party shall so indicate in paragraph 31 or 32 and attach a Representative Capacity Signature Disclosure (C.A.R. Form RCSD). Wherever the signature or initials of the representative identified in the RCSD appear on this Agreement or any related documents, it shall be deemed to be in a representative capacity for the entity described and not in an individual capacity, unless otherwise indicated. The Party acting in a representative capacity (i) represents that the entity for which that party is acting already exists and (ii) shall Deliver to the other Party and Escrow Holder, within **3 Days** After Acceptance, evidence of authority to act in that capacity (such as but not limited to: applicable portion of the trust or Certification Of Trust (Probate Code §18100.5), letters testamentary, court order, power of attorney, corporate resolution, or formation documents of the business entity).

**20. JOINT ESCROW INSTRUCTIONS TO ESCROW HOLDER:**
  **A.** The following paragraphs, or applicable portions thereof, of this Agreement constitute the joint escrow instructions of Buyer and Seller to Escrow Holder, which Escrow Holder is to use along with any related counter offers and addenda, and any additional mutual instructions to close the escrow: paragraphs 1, 3, 4B, 5A, 6, 7, 10C, 13, 14G, 17, 18A, 19, 20, 26, 29, 30, 31, 32 and paragraph D of the section titled Real Estate Brokers on page 10. If a Copy of the separate compensation agreement(s) provided for in paragraph 18A, or paragraph D of the section titled Real Estate Brokers on page 10 is deposited with Escrow Holder by Broker, Escrow Holder shall accept such agreement(s) and pay out from Buyer's or Seller's funds, or both, as applicable, the Broker's compensation provided for in such agreement(s). The terms and conditions of this Agreement not set forth in the specified paragraphs are additional matters for the information of Escrow Holder, but about which Escrow Holder need not be concerned. Buyer and Seller will receive Escrow Holder's general provisions, if any, directly from Escrow Holder and will execute such provisions within the time specified in paragraph 7C(1)(c). To the extent the general provisions are inconsistent or conflict with this Agreement, the general provisions will control as to the duties and obligations of Escrow Holder only. Buyer and Seller will execute additional instructions, documents and forms provided by Escrow Holder that are reasonably necessary to close the escrow and, as directed by Escrow Holder, within **3 (or [    ] ) Days,** shall pay to Escrow Holder or HOA or HOA management company or others any fee required by paragraphs 7, 10 or elsewhere in this Agreement.
  **B.** A Copy of this Agreement including any counter offer(s) and addenda shall be delivered to Escrow Holder within **3 Days** After Acceptance (or _____). Buyer and Seller authorize Escrow Holder to accept and rely on Copies and Signatures as defined in this Agreement as originals, to open escrow and for other purposes of escrow. The validity of this Agreement as between Buyer and Seller is not affected by whether or when Escrow Holder Signs this Agreement. Escrow Holder shall provide Seller's Statement of Information to Title company when received from Seller. If Seller delivers an affidavit to Escrow Holder to satisfy Seller's FIRPTA obligation under paragraph 10C, Escrow Holder shall deliver to Buyer a Qualified Substitute statement that complies with federal Law.

Buyer's Initials (_____) (_____)        Seller's Initials (_____) (_____)

**RPA-CA REVISED 12/15 (PAGE 7 OF 10)**

**CALIFORNIA RESIDENTIAL PURCHASE AGREEMENT  (RPA-CA PAGE 7 OF 10)**

**Exhibit 6**

Property Address: *1339 Alta Ave, Upland, CA 91786-2021*          Date: *October 19, 2018*

  **C.** Brokers are a party to the escrow for the sole purpose of compensation pursuant to paragraph 18A and paragraph D of the section titled Real Estate Brokers on page 10. Buyer and Seller irrevocably assign to Brokers compensation specified in paragraph 18A, and irrevocably instruct Escrow Holder to disburse those funds to Brokers at Close Of Escrow or pursuant to any other mutually executed cancellation agreement. Compensation instructions can be amended or revoked only with the written consent of Brokers. Buyer and Seller shall release and hold harmless Escrow Holder from any liability resulting from Escrow Holder's payment to Broker(s) of compensation pursuant to this Agreement.

  **D.** Upon receipt, Escrow Holder shall provide Seller and Seller's Broker verification of Buyer's deposit of funds pursuant to paragraph 3A and 3B. Once Escrow Holder becomes aware of any of the following, Escrow Holder shall immediately notify all Brokers: **(i)** if Buyer's initial or any additional deposit or down payment is not made pursuant to this Agreement, or is not good at time of deposit with Escrow Holder; or **(ii)** if Buyer and Seller instruct Escrow Holder to cancel escrow.

  **E.** A Copy of any amendment that affects any paragraph of this Agreement for which Escrow Holder is responsible shall be delivered to Escrow Holder within **3** Days after mutual execution of the amendment.

**21. REMEDIES FOR BUYER'S BREACH OF CONTRACT:**

  **A. Any clause added by the Parties specifying a remedy (such as release or forfeiture of deposit or making a deposit non-refundable) for failure of Buyer to complete the purchase in violation of this Agreement shall be deemed invalid unless the clause independently satisfies the statutory liquidated damages requirements set forth in the Civil Code.**

  **B. LIQUIDATED DAMAGES: If Buyer fails to complete this purchase because of Buyer's default, Seller shall retain, as liquidated damages, the deposit actually paid. If the Property is a dwelling with no more than four units, one of which Buyer intends to occupy, then the amount retained shall be no more than 3% of the purchase price. Any excess shall be returned to Buyer. Except as provided in paragraph 14H, release of funds will require mutual, Signed release instructions from both Buyer and Seller, judicial decision or arbitration award. AT THE TIME OF ANY INCREASED DEPOSIT BUYER AND SELLER SHALL SIGN A SEPARATE LIQUIDATED DAMAGES PROVISION INCORPORATING THE INCREASED DEPOSIT AS LIQUIDATED DAMAGES (C.A.R. FORM RID).**

Buyer's Initials _____ / _____          Seller's Initials _____ / _____

**22. DISPUTE RESOLUTION:**

  **A. MEDIATION:** The Parties agree to mediate any dispute or claim arising between them out of this Agreement, or any resulting transaction, before resorting to arbitration or court action through the C.A.R. Real Estate Mediation Center for Consumers (**www.consumermediation.org**) or through any other mediation provider or service mutually agreed to by the Parties. The Parties **also agree to mediate any disputes or claims with Broker(s), who, in writing, agree to such mediation prior to, or within a reasonable time after, the dispute or claim is presented to the Broker.** Mediation fees, if any, shall be divided equally among the Parties involved. If, for any dispute or claim to which this paragraph applies, any Party (i) commences an action without first attempting to resolve the matter through mediation, or (ii) before commencement of an action, refuses to mediate after a request has been made, then that Party shall not be entitled to recover attorney fees, even if they would otherwise be available to that Party in any such action. THIS MEDIATION PROVISION APPLIES WHETHER OR NOT THE ARBITRATION PROVISION IS INITIALED. **Exclusions from this mediation agreement are specified in paragraph 22C.**

  **B. ARBITRATION OF DISPUTES:**

    **The Parties agree that any dispute or claim in Law or equity arising between them out of this Agreement or any resulting transaction, which is not settled through mediation, shall be decided by neutral, binding arbitration. The Parties also agree to arbitrate any disputes or claims with Broker(s), who, in writing, agree to such arbitration prior to, or within a reasonable time after, the dispute or claim is presented to the Broker. The arbitrator shall be a retired judge or justice, or an attorney with at least 5 years of residential real estate Law experience, unless the parties mutually agree to a different arbitrator. The Parties shall have the right to discovery in accordance with Code of Civil Procedure §1283.05. In all other respects, the arbitration shall be conducted in accordance with Title 9 of Part 3 of the Code of Civil Procedure. Judgment upon the award of the arbitrator(s) may be entered into any court having jurisdiction. Enforcement of this agreement to arbitrate shall be governed by the Federal Arbitration Act. Exclusions from this arbitration agreement are specified in paragraph 22C.**

    **"NOTICE: BY INITIALING IN THE SPACE BELOW YOU ARE AGREEING TO HAVE ANY DISPUTE ARISING OUT OF THE MATTERS INCLUDED IN THE 'ARBITRATION OF DISPUTES' PROVISION DECIDED BY NEUTRAL ARBITRATION AS PROVIDED BY CALIFORNIA LAW AND YOU ARE GIVING UP ANY RIGHTS YOU MIGHT POSSESS TO HAVE THE DISPUTE LITIGATED IN A COURT OR JURY TRIAL. BY INITIALING IN THE SPACE BELOW YOU ARE GIVING UP YOUR JUDICIAL RIGHTS TO DISCOVERY AND APPEAL, UNLESS THOSE RIGHTS ARE SPECIFICALLY INCLUDED IN THE 'ARBITRATION OF DISPUTES' PROVISION. IF YOU REFUSE TO SUBMIT TO ARBITRATION AFTER AGREEING TO THIS PROVISION, YOU MAY BE COMPELLED TO ARBITRATE UNDER THE AUTHORITY OF THE CALIFORNIA CODE OF CIVIL PROCEDURE. YOUR AGREEMENT TO THIS ARBITRATION PROVISION IS VOLUNTARY."**

    **"WE HAVE READ AND UNDERSTAND THE FOREGOING AND AGREE TO SUBMIT DISPUTES ARISING OUT OF THE MATTERS INCLUDED IN THE 'ARBITRATION OF DISPUTES' PROVISION TO NEUTRAL ARBITRATION."**

Buyer's Initials _____ / _____          Seller's Initials _____ / _____

  **C. ADDITIONAL MEDIATION AND ARBITRATION TERMS:**

    **(1) EXCLUSIONS:** The following matters are excluded from mediation and arbitration: (i) a judicial or non-judicial foreclosure or other action or proceeding to enforce a deed of trust, mortgage or installment land sale contract as defined in Civil Code §2985; (ii) an unlawful detainer action; and (iii) any matter that is within the jurisdiction of a probate, small claims or bankruptcy court.

Buyer's Initials ( _____ ) ( _____ )          Seller's Initials ( _____ ) ( _____ )

# Exhibit 6

DocuSign Envelope ID: C460ZE9B-4C9E-4E36-BEC9-6E09324E6DF3

Property Address: **1339 Alta Ave, Upland, CA 91786-3602**    Date: **October 19, 2018**

    **(2) PRESERVATION OF ACTIONS: The following shall not constitute a waiver nor violation of the mediation and arbitration provisions: (i) the filing of a court action to preserve a statute of limitations; (ii) the filing of a court action to enable the recording of a notice of pending action, for order of attachment, receivership, injunction, or other provisional remedies; or (iii) the filing of a mechanic's lien.**

    **(3) BROKERS: Brokers shall not be obligated nor compelled to mediate or arbitrate unless they agree to do so in writing. Any Broker(s) participating in mediation or arbitration shall not be deemed a party to this Agreement.**

**23. SELECTION OF SERVICE PROVIDERS:** Brokers do not guarantee the performance of any vendors, service or product providers ("Providers"), whether referred by Broker or selected by Buyer, Seller or other person. Buyer and Seller may select ANY Providers of their own choosing.

**24. MULTIPLE LISTING SERVICE ("MLS"):** Brokers are authorized to report to the MLS a pending sale and, upon Close Of Escrow, the sales price and other terms of this transaction shall be provided to the MLS to be published and disseminated to persons and entities authorized to use the information on terms approved by the MLS.

**25. ATTORNEY FEES:** In any action, proceeding, or arbitration between Buyer and Seller arising out of this Agreement, the prevailing Buyer or Seller shall be entitled to reasonable attorney fees and costs from the non-prevailing Buyer or Seller, except as provided in paragraph 22A.

**26. ASSIGNMENT:** Buyer shall not assign all or any part of Buyer's interest in this Agreement without first having obtained the separate written consent of Seller to a specified assignee. Such consent shall not be unreasonably withheld. Any total or partial assignment shall not relieve Buyer of Buyer's obligations pursuant to this Agreement unless otherwise agreed in writing by Seller. (C.A.R. Form AOAA).

**27. EQUAL HOUSING OPPORTUNITY:** The Property is sold in compliance with federal, state and local anti-discrimination Laws.

**28. TERMS AND CONDITIONS OF OFFER:**

    This is an offer to purchase the Property on the above terms and conditions. The liquidated damages paragraph or the arbitration of disputes paragraph is incorporated in this Agreement if initialed by all Parties or if incorporated by mutual agreement in a counter offer or addendum. If at least one but not all Parties initial, a counter offer is required until agreement is reached. Seller has the right to continue to offer the Property for sale and to accept any other offer at any time prior to notification of Acceptance. The Parties have read and acknowledge receipt of a Copy of the offer and agree to the confirmation of agency relationships. If this offer is accepted and Buyer subsequently defaults, Buyer may be responsible for payment of Brokers' compensation. This Agreement and any supplement, addendum or modification, including any Copy, may be Signed in two or more counterparts, all of which shall constitute one and the same writing.

**29. TIME OF ESSENCE; ENTIRE CONTRACT; CHANGES:** Time is of the essence. All understandings between the Parties are incorporated in this Agreement. Its terms are intended by the Parties as a final, complete and exclusive expression of their Agreement with respect to its subject matter, and may not be contradicted by evidence of any prior agreement or contemporaneous oral agreement. If any provision of this Agreement is held to be ineffective or invalid, the remaining provisions will nevertheless be given full force and effect. Except as otherwise specified, this Agreement shall be interpreted and disputes shall be resolved in accordance with the Laws of the State of California. **Neither this Agreement nor any provision in it may be extended, amended, modified, altered or changed, except in writing Signed by Buyer and Seller.**

**30. DEFINITIONS:** As used in this Agreement:

    **A. "Acceptance"** means the time the offer or final counter offer is accepted in writing by a Party and is delivered to and personally received by the other Party or that Party's authorized agent in accordance with the terms of this offer or a final counter offer.

    **B. "Agreement"** means this document and any counter offers and any incorporated addenda, collectively forming the binding agreement between the Parties. Addenda are incorporated only when Signed by all Parties.

    **C. "C.A.R. Form"** means the most current version of the specific form referenced or another comparable form agreed to by the parties.

    **D. "Close Of Escrow"**, including "COE", means the date the grant deed, or other evidence of transfer of title, is recorded.

    **E. "Copy"** means copy by any means including photocopy, NCR, facsimile and electronic.

    **F. "Days"** means calendar days. However, after Acceptance, the last **Day** for performance of any act required by this Agreement (including Close Of Escrow) shall not include any Saturday, Sunday, or legal holiday and shall instead be the next Day.

    **G. "Days After"** means the specified number of calendar days after the occurrence of the event specified, not counting the calendar date on which the specified event occurs, and ending at 11:59 PM on the final day.

    **H. "Days Prior"** means the specified number of calendar days before the occurrence of the event specified, not counting the calendar date on which the specified event is scheduled to occur.

    **I. "Deliver", "Delivered"** or **"Delivery"**, unless otherwise specified in writing, means and shall be effective upon: personal receipt by Buyer or Seller or the individual Real Estate Licensee for that principal as specified in the section titled Real Estate Brokers on page 10, regardless of the method used (i.e., messenger, mail, email, fax, other).

    **J. "Electronic Copy"** or **"Electronic Signature"** means, as applicable, an electronic copy or signature complying with California Law. Buyer and Seller agree that electronic means will not be used by either Party to modify or alter the content or integrity of this Agreement without the knowledge and consent of the other Party.

    **K. "Law"** means any law, code, statute, ordinance, regulation, rule or order, which is adopted by a controlling city, county, state or federal legislative, judicial or executive body or agency.

    **L. "Repairs"** means any repairs (including pest control), alterations, replacements, modifications or retrofitting of the Property provided for under this Agreement.

    **M. "Signed"** means either a handwritten or electronic signature on an original document, Copy or any counterpart.

**31. EXPIRATION OF OFFER:** This offer shall be deemed revoked and the deposit, if any, shall be returned to Buyer unless the offer is Signed by Seller and a Copy of the Signed offer is personally received by Buyer, or by _____ **Greg Shipp** _____, who is authorized to receive it, by 5:00 PM on the third Day after this offer is signed by Buyer (or by _____ □ AM/ □ PM, on _____ (date)).

□ One or more Buyers is signing this Agreement in a representative capacity and not for him/herself as an individual. See attached Representative Capacity Signature Disclosure (C.A.R. Form RCSD-B) for additional terms.

Date 10/22/2018 | 13:38:14 PDT    BUYER _Yao Juan Xu_

(Print name) _Yao Juan Xu_

Date _____ BUYER _____

(Print name) _____

□ Additional Signature Addendum attached (C.A.R. Form ASA).

Seller's Initials (_____) (_____)

**RPA-CA REVISED 12/15 (PAGE 9 OF 10)**

**CALIFORNIA RESIDENTIAL PURCHASE AGREEMENT  (RPA-CA PAGE 9 OF 10)**

Produced with zipForm® by zipLogix 18070 Fifteen Mile Road, Fraser, Michigan 48026    www.zipLogix.com    1339 Alta Ave -

**Exhibit 6**

Property Address: *1339 Alta Ave, Upland, CA 91786-3822*      Date: *October 19, 2018*

**32. ACCEPTANCE OF OFFER:** Seller warrants that Seller is the owner of the Property, or has the authority to execute this Agreement. Seller accepts the above offer, and agrees to sell the Property on the above terms and conditions. Seller has read and acknowledges receipt of a Copy of this Agreement, and authorizes Broker to Deliver a Signed Copy to Buyer.

☐ (If checked) SELLER'S ACCEPTANCE IS **SUBJECT TO ATTACHED COUNTER OFFER (C.A.R. Form SCO or SMCO) DATED:**
_____

☐ One or more Sellers is signing this Agreement in a representative capacity and not for him/herself as an individual. See attached Representative Capacity Signature Disclosure (C.A.R. Form RCSD-S) for additional terms.

Date _____ SELLER _____

**(Print name)** *Lynda Bui, BK Trustee for the Estate of Joel & Peggy Clelland* _____

Date _____ SELLER _____

**(Print name)** _____

☐ Additional Signature Addendum attached (C.A.R. Form ASA).

( _____ / _____ ) **(Do not initial if making a counter offer.) CONFIRMATION OF ACCEPTANCE:** A Copy of Signed Acceptance was
(Initials)   personally received by Buyer or Buyer's authorized agent on (date) _____ at _____
   ☐ AM/ ☐ PM. **A binding Agreement is created when a Copy of Signed Acceptance is personally received by Buyer or Buyer's authorized agent whether or not confirmed in this document. Completion of this confirmation is not legally required in order to create a binding Agreement; it is solely intended to evidence the date that Confirmation of Acceptance has occurred.**

**REAL ESTATE BROKERS:**
**A. Real Estate Brokers are not parties to the Agreement between Buyer and Seller.**
**B. Agency relationships are confirmed as stated in paragraph 2.**
**C.** If specified in paragraph 3A(2), Agent who submitted the offer for Buyer acknowledges receipt of deposit.
**D. COOPERATING BROKER COMPENSATION:** Listing Broker agrees to pay Cooperating Broker **(Selling Firm)** and Cooperating Broker agrees to accept, out of Listing Broker's proceeds in escrow, the amount specified in the MLS, provided Cooperating Broker is a Participant of the MLS in which the Property is offered for sale or a reciprocal MLS. If Listing Broker and Cooperating Broker are not both Participants of the MLS, or a reciprocal MLS, in which the Property is offered for sale, then compensation must be specified in a separate written agreement (C.A.R. Form CBC). Declaration of License and Tax (C.A.R. Form DLT) may be used to document that tax reporting will be required or that an exemption exists.

Real Estate Broker (Selling Firm) *Sentinel Real Estate & Investments* _____ DRE Lic. # *01835117*
By *Jameson Shipp* DRE Lic. # *02011647*   Date 10/22/2018 | 13:13:27 PDT
By _____ DRE Lic. # _____   Date _____
Address *8780 19th Street #350*   City *Alta Loma*   State *CA*   Zip *91701*
Telephone *(909)944-6900*   Fax *(909)912-8350*   E-mail *jamesonshipp715@gmail.com*
Real Estate Broker (Listing Firm) *SENTINEL REAL ESTATE & INVEST.* _____ DRE Lic. # *01835117*
By *GREGORY SHIPP* DRE Lic. # *01006314*   Date 10/22/2018 | 13:59:59 PDT
By _____ DRE Lic. # _____   Date _____
Address *8795 ORANGE STREET*   City *ALTA LOMA*   State *CA*   Zip *91701*
Telephone *(909)944-6900*   Fax *(909)912-8350*   E-mail *gregoryshipp@hotmail.com*

**ESCROW HOLDER ACKNOWLEDGMENT:**
Escrow Holder acknowledges receipt of a Copy of this Agreement, (if checked, ☐ a deposit in the amount of $ _____ ),
counter offer numbers _____ ☐ Seller's Statement of Information and _____
_____ , and agrees to act as Escrow Holder subject to paragraph 20 of this Agreement, any supplemental escrow instructions and the terms of Escrow Holder's general provisions.

Escrow Holder is advised that the date of Confirmation of Acceptance of the Agreement as between Buyer and Seller is _____

Escrow Holder _____ Escrow # _____
By _____ Date _____
Address _____
Phone/Fax/E-mail _____
Escrow Holder has the following license number # _____
☐ Department of Business Oversight, ☐ Department of Insurance, ☐ Department of Real Estate.

**PRESENTATION OF OFFER: (** _____ **) (** _____ **)** Listing Broker presented this offer to Seller on _____ (date).
   Broker or Designee Initials

**REJECTION OF OFFER: (** _____ **) (** _____ **)** No counter offer is being made. This offer was rejected by Seller on _____ (date).
   Seller's Initials

©1991- 2015, California Association of REALTORS®, Inc. United States copyright law (Title 17 U.S. Code) forbids the unauthorized distribution, display and reproduction of this form, or any portion thereof, by photocopy machine or any other means, including facsimile or computerized formats.
THIS FORM HAS BEEN APPROVED BY THE CALIFORNIA ASSOCIATION OF REALTORS® (C.A.R.). NO REPRESENTATION IS MADE AS TO THE LEGAL VALIDITY OR ACCURACY OF ANY PROVISION IN ANY SPECIFIC TRANSACTION. A REAL ESTATE BROKER IS THE PERSON QUALIFIED TO ADVISE ON REAL ESTATE TRANSACTIONS. IF YOU DESIRE LEGAL OR TAX ADVICE, CONSULT AN APPROPRIATE PROFESSIONAL.

Published and Distributed by:   Buyer Acknowledges that page 10 is part of this Agreement ( _____ ) ( _____ )
REAL ESTATE BUSINESS SERVICES, INC.   Buyer's Initials
*a subsidiary of the CALIFORNIA ASSOCIATION OF REALTORS®*
®525 South Virgil Avenue, Los Angeles, California 90020

**RPA-CA REVISED 12/15 (PAGE 10 of 10)**

**CALIFORNIA RESIDENTIAL PURCHASE AGREEMENT  (RPA-CA PAGE 10 OF 10)**

# Exhibit 6

CALIFORNIA
ASSOCIATION
OF REALTORS®

## BUYER'S INSPECTION ADVISORY
(C.A.R. Form BIA, Revised 11/14)

Property Address *1339 Alta Ave, Upland, CA 91786-2812*

**1. IMPORTANCE OF PROPERTY INVESTIGATION:** The physical condition of the land and improvements being purchased is not guaranteed by either Seller or Brokers. You have an affirmative duty to exercise reasonable care to protect yourself, including discovery of the legal, practical and technical implications of disclosed facts, and the investigation and verification of information and facts that you know or that are within your diligent attention and observation. A general physical inspection typically does not cover all aspects of the Property nor items affecting the Property that are not physically located on the Property. If the professionals recommend further investigations, including a recommendation by a pest control operator to inspect inaccessible areas of the Property, you should contact qualified experts to conduct such additional investigations.

**2. BROKER OBLIGATIONS:** Brokers do not have expertise in all areas and therefore cannot advise you on many items, such as those listed below. If Broker gives you referrals to professionals, Broker does not guarantee their performance.

**3. YOU ARE STRONGLY ADVISED TO INVESTIGATE THE CONDITION AND SUITABILITY OF ALL ASPECTS OF THE PROPERTY, INCLUDING BUT NOT LIMITED TO THE FOLLOWING. IF YOU DO NOT DO SO, YOU ARE ACTING AGAINST THE ADVICE OF BROKERS.**

  **A. GENERAL CONDITION OF THE PROPERTY, ITS SYSTEMS AND COMPONENTS:** Foundation, roof (condition, age, leaks, useful life), plumbing, heating, air conditioning, electrical, mechanical, security, pool/spa (cracks, leaks, operation), other structural and nonstructural systems and components, fixtures, built-in appliances, any personal property included in the sale, and energy efficiency of the Property.

  **B. SQUARE FOOTAGE, AGE, BOUNDARIES:** Square footage, room dimensions, lot size, age of improvements and boundaries. Any numerical statements regarding these items are APPROXIMATIONS ONLY and have not been verified by Seller and cannot be verified by Brokers. Fences, hedges, walls, retaining walls and other barriers or markers do not necessarily identify true Property boundaries.

  **C. WOOD DESTROYING PESTS:** Presence of, or conditions likely to lead to the presence of wood destroying pests and organisms.

  **D. SOIL STABILITY:** Existence of fill or compacted soil, expansive or contracting soil, susceptibility to slippage, settling or movement, and the adequacy of drainage.

  **E. WATER AND UTILITIES; WELL SYSTEMS AND COMPONENTS; WASTE DISPOSAL:** Water and utility availability, use restrictions and costs. Water quality, adequacy, condition, and performance of well systems and components. The type, size, adequacy, capacity and condition of sewer and septic systems and components, connection to sewer, and applicable fees.

  **F. ENVIRONMENTAL HAZARDS:** Potential environmental hazards, including, but not limited to, asbestos, lead-based paint and other lead contamination, radon, methane, other gases, fuel oil or chemical storage tanks, contaminated soil or water, hazardous waste, waste disposal sites, electromagnetic fields, nuclear sources, and other substances, materials, products, or conditions (including mold (airborne, toxic or otherwise), fungus or similar contaminants).

  **G. EARTHQUAKES AND FLOODING:** Susceptibility of the Property to earthquake/seismic hazards and propensity of the Property to flood.

  **H. FIRE, HAZARD AND OTHER INSURANCE:** The availability and cost of necessary or desired insurance may vary. The location of the Property in a seismic, flood or fire hazard zone, and other conditions, such as the age of the Property and the claims history of the Property and Buyer, may affect the availability and need for certain types of insurance. Buyer should explore insurance options early as this information may affect other decisions, including the removal of loan and inspection contingencies.

  **I. BUILDING PERMITS, ZONING AND GOVERNMENTAL REQUIREMENTS:** Permits, inspections, certificates, zoning, other governmental limitations, restrictions, and requirements affecting the current or future use of the Property, its development or size.

  **J. RENTAL PROPERTY RESTRICTIONS:** Some cities and counties impose restrictions that limit the amount of rent that can be charged, the maximum number of occupants, and the right of a landlord to terminate a tenancy. Deadbolt or other locks and security systems for doors and windows, including window bars, should be examined to determine whether they satisfy legal requirements.

  **K. SECURITY AND SAFETY:** State and local Law may require the installation of barriers, access alarms, self-latching mechanisms and/or other measures to decrease the risk to children and other persons of existing swimming pools and hot tubs, as well as various fire safety and other measures concerning other features of the Property.

  **L. NEIGHBORHOOD, AREA, SUBDIVISION CONDITIONS; PERSONAL FACTORS:** Neighborhood or area conditions, including schools, law enforcement, crime statistics, registered felons or offenders, fire protection, other government services, availability, adequacy and cost of internet connections or other technology services and installations, commercial, industrial or agricultural activities, existing and proposed transportation, construction and development that may affect noise, view, or traffic, airport noise, noise or odor from any source, wild and domestic animals, other nuisances, hazards, or circumstances, protected species, wetland properties, botanical diseases, historic or other governmentally protected sites or improvements, cemeteries, facilities and condition of common areas of common interest subdivisions, and possible lack of compliance with any governing documents or Homeowners' Association requirements, conditions and influences of significance to certain cultures and/or religions, and personal needs, requirements and preferences of Buyer.

**By signing below, Buyers acknowledge that they have read, understand, accept and have received a Copy of this Advisory. Buyers are encouraged to read it carefully.**

Buyer *Yao Juan Xu*                          10/22/2018 | 13:38:14 PDT      Buyer
*Yao Juan Xu*

©1991-2004, California Association of REALTORS®, Inc. THIS FORM HAS BEEN APPROVED BY THE CALIFORNIA ASSOCIATION OF REALTORS® (C.A.R.). NO REPRESENTATION IS MADE AS TO THE LEGAL VALIDITY OR ACCURACY OF ANY PROVISION IN ANY SPECIFIC TRANSACTION. A REAL ESTATE BROKER IS THE PERSON QUALIFIED TO ADVISE ON REAL ESTATE TRANSACTIONS. IF YOU DESIRE LEGAL OR TAX ADVICE, CONSULT AN APPROPRIATE PROFESSIONAL.

Published and Distributed by:
REAL ESTATE BUSINESS SERVICES, INC.
*a subsidiary of the California Association of REALTORS®*
525 South Virgil Avenue, Los Angeles, California 90020

**BIA REVISED 11/14 (PAGE 1 OF 1)**

**BUYER'S INSPECTION ADVISORY (BIA PAGE 1 OF 1)**

EQUAL HOUSING OPPORTUNITY

## Exhibit 6

DocuSign Envelope ID: 89D81072-5EDC-4794-9356-9170FC63D897



## Purchase & Sale of Real Property Contract Addendum

| 1339 Alta Avenue Upland, CA 91786 |
|---|

### Property Address

**1**  Buyer acknowledges that this property is subject to Short Sale Lender Approval & Bankruptcy Court Approval.

**2**  The Bankruptcy Estate Fee is to be paid by the Sellers proceeds or through a buyer's premium and made payable to the Bankruptcy Estate.

**3**  Buyer acknowledges that the property is sold "AS IS". Absolutely no repairs will be authorized. The Seller is unable to remove any debris or personal property left on the Property and does not warrant that there will be any appliances or other personal property left on the Property.

**4**  Seller shall make no concessions and can pay no closing costs for the buyer.

**5**  Escrow will be opened with:

| | |
|---|---|
| COMPANY NAME: | Brightline Title |
| ADDRESS: | 5404 Cypress Center Dr. Suite 300 |
| CITY, STAT, ZIP: | Tampa, FL 33609 |
| PHONE: | 813-454-0300 |
| EMAIL: | customersupport@alaw.net |

**6**  Earnest money deposit will be no less than 1 % of the purchase price. Upon acceptance, earnest money will be deposited with the Escrow/Title Company in the form of a cashier's check or bank wire within 48 hours of acceptance.

**7**  The Seller in this transaction is exempt from providing the Home Owner's Association documents, as this is a court-ordered sale. Buyer will be solely responsible for any application, transfer, capital contributions and initial membership fees charged by the Association. Buyer is aware it may take up to 10 days to receive a response from the Federal Bankruptcy Trustee (Seller).

**8**  Buyer may cancel the Residential Purchase Agreement for any reason without penalty any time after 120 days from Seller's acceptance date, if Short Sale Investor Approval has not been received.

**9**  Upon Investor approval of sale, buyer shall be prepared to close escrow within 45 days. Upon Bankruptcy Court Approval of sale, buyer agrees to close escrow per Federal Bankruptcy Trustee instructions.

**10**  Any issues regarding permitting will be the responsibility of the buyer and will not be part of the contract and not a requirement of closing.

**11**  Buyer shall be responsible for connecting utilities to perform inspections requested as part of the due diligence period. Buyer shall use this period to satisfy themselves of all mechanical, structural, functional related concerns regarding the property.  Buyer shall have the same amount of time to obtain, review, & satisfy themselves of any association rules, regulations & fees, if applicable.  Buyer shall release inspection contingency within 5 days of Short Sale Lender Approval, if applicable.  Seller will not pay any upfront expenses related to plowing the road for access to the property.  Should the Buyer require the septic system be pumped and inspected this will be done at the buyer's expense.

# Exhibit 6

DocuSign Envelope ID: 89D81072-5EDC-4794-9356-9174DFCB0397

12    Buyer acknowledges that the seller may not have access to garage remotes, mailbox keys or access related keys to property. Seller will tender any items available at the close of escrow but shall not be liable to provide items not in his/her possession.

13    Buyer shall immediately disclose if he/she is related to the debtor. Buyer understands that most investors require an Arm's Length Disclosure, and some investors will not allow a family relation to purchase a property in which a related debtor may have interest.

14    Should buyer be representing self as an agent, buyer understands that some investors will not allow Buyer(s) to receive any funds or commissions from the sale of the property.

15    Offers in the name of a corporation, trust, LLC or partnership will need to show proof of all owners and shall provide a copy of the articles of organization to include authority of signer to sign on behalf of the entity.

16    Seller will not pay for Appraisal and/or Home Warranty.


Buyer understands and agrees that this addendum shall take precedence where any terms conflict with the original Residential Purchase Agreement.

10/20/2018 | 10:32:25 PDT

DATED this        day of        , 201

**Trustee**                                         **Buyer**

_____       _____
Signature                                           Signature

                                                    Yao Juan Xu

Print Name                                          Print Name


                                                    Title

                                                    **Buyer**


                                                    _____
                                                    Signature


                                                    Print Name


                                                    Title

# Exhibit 6

CALIFORNIA
ASSOCIATION
OF REALTORS®

## SHORT SALE ADDENDUM
(C.A.R. Form SSA, Revised 4/12)

This is an addendum to the [X] California Residential Purchase Agreement, [ ] Counter Offer, [ ] Other _____
("Agreement"), dated _October 19, 2018_ ,
on property known as _1339 Alta Ave, Upland, CA  91786-2812_
("Property"), between _Yao Juan Xu_
("Buyer") and _Lynda Bui, BK Trustee for the Estate of Joel & Peggy Clelland_
("Seller").

## 1. SHORT SALE APPROVAL:

**A.** This Agreement is contingent upon Seller's receipt of and delivery to Buyer of written consent ("Short Sale Lenders' Consent") to the Agreement from all existing secured lenders and lienholders ("Short Sale Lenders"), by 5:00 P.M. no later than **45 (or** [X] _90_ ) Days After Acceptance (or [ ] on _____ (date) ("Short Sale Contingency Date"). If Buyer or Seller cancels this Agreement prior to the Short Sale Contingency Date, that party may be in breach of the Agreement unless the cancellation is made pursuant to some other paragraph in this addendum or in the Agreement, whether or not time periods in the Agreement have commenced.

**B.** Short Sale Lenders' Consent means that all Short Sale Lenders shall collectively agree to reduce their respective loan balances by an amount sufficient to permit the proceeds from the sale of the Property to pay the existing balances on loans secured by the Property, real property taxes, brokerage commissions, closing costs, and other monetary obligations the Agreement requires Seller to pay at Close Of Escrow (including, but not limited to, escrow charges, title charges, documentary transfer taxes, prorations, retrofit costs, Homeowners Association Fees and Repairs) without requiring Seller to place any funds into escrow or have any continuing obligation to Short Sale Lenders.

**C. (i)** Seller shall Deliver to Buyer a copy of Short Sale Lenders' Consent or term sheet(s) within 3 (or [ ] _____ ) Days After receipt by Seller. **(ii)** Seller's presentation to Buyer of Short Sale Lender's Consent satisfying 1B removes the contingency in 1A.

**D.** If by the Short Sale Contingency Date, **(i)** Seller has not received Short Sale Lenders' Consent satisfying 1B, Seller may in writing cancel this Agreement, or **(ii)** Buyer has not received a copy of Short Sale Lenders' Consent satisfying 1B, Buyer may cancel this Agreement in writing. In either case, Buyer shall be entitled to return of any remaining deposit delivered to escrow.

**E.** Seller shall reasonably cooperate with existing Short Sale Lenders in the short sale process, but neither Seller nor Buyer is obligated to change the terms of their Agreement to satisfy Short Sale Lenders' consent or term sheet(s).

**F.** If Short Sale Lenders' written consent or term sheet(s) provided to Seller require changes to the Agreement in order to satisfy the terms of 1B, **(i)** neither Buyer nor Seller shall be obligated to continue negotiations to satisfy any of the requirements of the term sheet(s) **(ii)** either party may in writing cancel this Agreement and **(iii)** Seller is advised to seek legal, accounting and tax advice before agreeing to any such changes. If the Agreement is cancelled pursuant to this paragraph, Buyer shall be entitled to return of any remaining deposit delivered to escrow.

## 2. TIME PERIODS. Time periods in the Agreement for inspections, contingencies, covenants, and other obligations:
**(i)** shall begin the Day After Seller delivers to Buyer Short Sale Lenders' Consent satisfying 1B. However, time periods for providing pre-approval/pre-qualification letters and verification of down payment and closing costs shall nonetheless begin as otherwise specified in the Agreement; or **(ii)** (if checked) [X] shall begin as specified in the Agreement.

Buyer's Initials ( _YJX_ ) ( _____ )          Seller's Initials ( _____ ) ( _____ )

© 2007-2012, California Association of REALTORS®, Inc.

SSA 4/12 (PAGE 1 OF 2)

**SHORT SALE ADDENDUM (SSA PAGE 1 OF 2)**

## Exhibit 6

Property Address: *1339 Alta Ave, Upland, CA  91786-2812*_____ Date: *October 19, 2018*_____

**3. BUYER'S DEPOSIT CHECK.** Buyer's deposit check shall be delivered to escrow within:
**(i)** 3 business Days After Seller delivers to Buyer Short Sale Lenders' Consent satisfying 1B, or **(ii)** (if checked) **X** as specified in the Agreement.

**4. NO ASSURANCE OF LENDER APPROVAL.** Buyer and Seller understand that Short Sale Lenders: **(i)** are not obligated to give consent to a short sale; **(ii)** may require Seller to forward any other offer received; and **(iii)** may give consent to other offers. Additionally, Short Sale Lenders may require that, in order to obtain their approval for a short sale, some terms of the Agreement, such as the Close of Escrow, be amended or that Seller sign a personal note or some other obligation for all or a portion of the amount of the secured debt reduction. Buyer and Seller do not have to agree to any of Short Sale Lenders' proposed terms. Buyer, Seller and Brokers do not have control over whether Short Sale Lenders will consent to a short sale, or control over any act, omission, or decision by any Short Sale Lender in the short sale process.

**5. BUYER AND SELLER COSTS.** Buyer and Seller acknowledge that each of them may incur costs in connection with rights or obligations under the Agreement. These costs may include, but are not limited to, payments for loan applications, inspections, appraisals, and other reports. Such costs will be the sole responsibility of the party incurring them if Short Sale Lenders do not consent to the transaction or either party cancels the transaction pursuant to the Agreement.

**6. OTHER OFFERS.** Unless otherwise agreed in writing, after Buyer's offer has been accepted by Seller, **(i)** Seller has the right to continue to market the Property for back-up offers; **(ii)** Seller has the right to accept back-up offers (C.A.R. Form PAA, Paragraph 1), and subject to Short Sale Lender(s) requirements present to Short Sale Lender(s) any accepted back-up offers that are received; and **(iii)** Seller shall notify buyer when any accepted back-up offers, are presented to Short Sale Lender(s).

**7. CREDIT, LEGAL AND TAX ADVICE.** Seller is informed that a short sale may have credit or legal consequences and may result in taxable income to **Seller. Seller is advised to seek advice from an attorney, certified public accountant or other expert regarding such potential consequences of a short sale.**

**By signing below, Buyer and Seller each acknowledge that they have read, understand, accept and have received a copy of this Short Sale Addendum.**

Date 10/22/2018 | 13:38:14 PDT_____    Date _____

Buyer *Yao Juan Xu*_____    Seller _____
*Yao Juan Xu*                              *Lynda Bui, BK Trustee for the Estate of Joel & Peggy Clelland*

Buyer _____    Seller _____

© 2007-2012, California Association of REALTORS®, Inc.  United States copyright law (Title 17 U.S. Code) forbids the unauthorized distribution, display and reproduction of this form, or any portion thereof, by photocopy machine or any other means, including facsimile or computerized formats.
THIS FORM HAS BEEN APPROVED BY THE CALIFORNIA ASSOCIATION OF REALTORS® (C.A.R.). NO REPRESENTATION IS MADE AS TO THE LEGAL VALIDITY OR ACCURACY OF ANY PROVISION IN ANY SPECIFIC TRANSACTION. A REAL ESTATE BROKER IS THE PERSON QUALIFIED TO ADVISE ON REAL ESTATE TRANSACTIONS. IF YOU DESIRE LEGAL OR TAX ADVICE, CONSULT AN APPROPRIATE PROFESSIONAL.
This form is made available to real estate professionals through an agreement with or purchase from the California Association of REALTORS®. It is not intended to identify the user as a REALTOR®. REALTOR® is a registered collective membership mark which may be used only by members of the NATIONAL ASSOCIATION OF REALTORS® who subscribe to its Code of Ethics.

Published and Distributed by:
REAL ESTATE BUSINESS SERVICES, INC.
*a subsidiary of the California Association of REALTORS®*
525 South Virgil Avenue, Los Angeles, California 90020

**SSA REVISED 4/12 (PAGE 2 OF 2)**



**SHORT SALE ADDENDUM (SSA PAGE 2 OF 2)**

# Exhibit 6

**CALIFORNIA
ASSOCIATION
OF REALTORS®**

## CONTINGENCY REMOVAL No. ___
### (C.A.R. Form CR, Revised, 6/16)

In accordance with the terms and conditions of the: ☒ Residential Purchase Agreement (C.A.R. Form RPA-CA), ☐ Request For Repair
(C.A.R. Form RR), ☐ Response And Reply To Request For Repair (C.A.R. Form RRRR) or ☐ Other _____
_____ ("Agreement"),
dated _10/19/2018_, on property known as _1339 Alta Ave, Upland, CA  91786-2812_ ("Property"),
between _Yao Juan Xu_ ("Buyer")
and _Lynda Bui, BK Trustee for the Estate of Joel & Peggy Clelland_ ("Seller").

**I.    BUYER REMOVAL OF BUYER CONTINGENCIES:**

   **1.**  With respect to any contingency and cancellation right that Buyer removes, unless otherwise specified in a separate written
      agreement between Buyer and Seller, Buyer shall conclusively be deemed to have: **(i)** completed all Buyer Investigations and
      review of reports and other applicable information and disclosures; **(ii)** elected to proceed with the transaction; and **(iii)**
      assumed all liability, responsibility and, expense, **if any,** for Repairs, corrections, or for the inability to obtain financing. Waiver
      of statutory disclosures is prohibited by law.

   **2.**  Buyer removes those contingencies specified below.
      **A.    ONLY the following individually checked Buyer contingencies are removed:**
         1.  ☐ Loan (Paragraph 3J)
         2.  ☐ Appraisal (Paragraph 3I)
         3.  ☐ Buyer's Physical Inspection (Paragraph 12)
         4.  ☐ All Buyer Investigations other than a physical inspection (Paragraph 12)
         5.  ☐ Condominium/Planned Development (HOA or OA) Disclosures (Paragraph 10F)
         6.  ☐ Reports/Disclosures (Paragraphs 7 and 10)
         7.  ☐ Title: Preliminary Report (Paragraph 13)
         8.  ☐ Sale of Buyer's Property (Paragraph 4B)
         9.  ☐ Review of documentation for leased or liened items (Paragraph 8B(5)
        10.  ☐ Other: _____
        11.  ☐ Other: _____
   **OR B.**  ☒ **ALL Buyer contingencies are removed, EXCEPT:** ☐ Loan Contingency (Paragraph 3J); ☐ Appraisal Contingency
      (Paragraph 3I); ☐ Contingency for the Sale of Buyer's Property (Paragraph 4B); ☐ Condominium/Planned Development
      (HOA) Disclosures (Paragraph 10F); ☒ Other _Reports/Disclosures (Par. 7&10) and Title:Preliminary Report (Par. 13)_
   **OR C.**  ☐ **BUYER HEREBY REMOVES ANY AND ALL BUYER CONTINGENCIES.**

   **3.**  Once all contingencies are removed, whether or not Buyer has satisfied him/herself regarding all contingencies or
      received any information relating to those contingencies, Buyer may not be entitled to a return of Buyer's deposit if
      Buyer does not close escrow. This could happen even if, for example, Buyer does not approve of some aspect of the
      Property or lender does not approve Buyer's loan.

**NOTE:** Paragraph numbers refer to the California Residential Purchase Agreement (C.A.R. Form RPA-CA). Applicable paragraph
numbers for each contingency or contractual action in other C.A.R. contracts are found in Contract Paragraph Matrix (C.A.R. Form
CPM).

**Buyer** _Yao Juan Xu_           **Date** 10/22/2018 | 13:38:14 PDT
          _Yao Juan Xu_

**Buyer** _____     **Date** _____

---

**II.    SELLER REMOVAL OF SELLER CONTINGENCIES:** Seller hereby removes the following Seller contingencies:
☐ Finding of replacement property (C.A.R. Form SPRP); ☐ Closing on replacement property (C.A.R. Form SPRP)
☐ Other _____

**Seller** _____     **Date** _____

**Seller** _____     **Date** _____

---

( _____ / _____ ) (Initials) **CONFIRMATION OF RECEIPT:** A copy of this signed Contingency Removal was personally received
by ☐ Buyer ☐ Seller or authorized agent on _____ (date), at _____ ☐ AM / ☐ PM.

© 2003-2016, California Association of REALTORS®, Inc.
THIS FORM HAS BEEN APPROVED BY THE CALIFORNIA ASSOCIATION OF REALTORS®. NO REPRESENTATION IS MADE AS TO THE LEGAL VALIDITY
OR ACCURACY OF ANY PROVISION IN ANY SPECIFIC TRANSACTION. A REAL ESTATE BROKER IS THE PERSON QUALIFIED TO ADVISE ON REAL ESTATE
TRANSACTIONS. IF YOU DESIRE LEGAL OR TAX ADVICE, CONSULT AN APPROPRIATE PROFESSIONAL.

Published and Distributed by:
REAL ESTATE BUSINESS SERVICES, INC.
a subsidiary of the California Association of REALTORS®
525 South Virgil Avenue, Los Angeles, California 90020

**CR REVISED 6/16 (PAGE 1 OF 1)**

Sentinel Real Estate, 8780 19th Street #350 Alta Loma CA 91701    Phone: 909-944-6900    Fax: 909-912-8350    1339 Alta Ave -
Gregory Shipp    Produced with zipForm® by zipLogix 18070 Fifteen Mile Road, Fraser, Michigan 48026  www.zipLogix.com

**Exhibit 6**

# EXHIBIT 7

Specialized Loan Servicing LLC
8742 Lucent Boulevard
Suite 300
Highlands Ranch, CO  80129


PEGGY CLELLAND
1339 ALTA AVE
UPLAND          CA  91786


# Exhibit 7

GL6.32 11/01/17 1002541429



12/18/2018

LYNDA T. BUI                                              **RE:** Loan Number: ██████████
3550 VINE STREET, SUITE 210
RIVERSIDE        CA  992507

Property Address:   1339 ALTA AVE
                    UPLAND        CA 91786

<u>Chapter 7 Bankruptcy Trustee Short Sale, Contingent Approval</u>

Dear LYNDA T. BUI (TRUSTEE)

Pursuant to 11 U.S.C. § 363(f) SLS consents to the above-referenced Property being sold by the Trustee in accordance with the provisions of 11 U.S.C. § 363.

Specialized Loan Servicing LLC (SLS) has been authorized by the Investor to accept a "Short Sale" in connection with the above referenced property, release the lien secured by its Deed of Trust or Mortgage, and release you from liability under your promissory note, contingent on the fulfillment of the conditions listed below:

1.  Return of signed acknowledgement of this approval agreement by fax.
2.  Receipt of the final Settlement Statement by fax/email at least 24 hours prior to closing.
3.  Receipt of Minimum Net Proceeds in the amount and timeframe specified in this agreement.

The Minimum Net Proceeds from the closing in the amount of $23000.00 must be received in our office before the close of business on 1/31/19. If any of the above requested documents and information, as well as the Minimum Net Proceeds are not received in our office by the required dates and times, this approval will be null and void and you will need to contact our office for updated approval.

At least 24 hours prior to closing, a copy of the final Settlement Statement must be faxed or emailed to the attention of the Bankruptcy Department for approval. If you become aware of any changes to the approved terms and the loan cannot close or fund, you should contact this office immediately.

SLS will continue to make normal servicing disbursements for items such as taxes and insurance, which may increase the Minimum Net Proceeds required.  In the event this occurs, SLS will send an updated approval letter reflecting the increased Minimum Net Proceeds required for closing.

If you have not already done so, please send the requested documentation, along with the name of the title company's closing agent and a contact number to SLS at the fax number referenced below so that we can make arrangements for direct payment of the proceeds. If you are a customer in bankruptcy, a written approval from your attorney acknowledging acceptance of these terms must be received in order to complete this process.  Please return the approval letter to SLS with your signed documents.

**Exhibit 7**

You will NOT receive any proceeds at closing and will waive your rights to any unearned premiums for taxes and/or insurance, any escrow funds and overages for fees associated with this sale or property securing this loan or loans, which includes, but is not limited to attorney's fees, any and all pro-rations and any escrow cushion.

Please be advised the acceptance of this short sale transaction is being made in reliance upon the information provided by you to SLS, including the financial representations regarding your amounts and sources of income, your other assets, and your debt obligations.

Sincerely,
Specialized Loan Servicing LLC
Bankruptcy Department
1-800-268-9706

**\*PLEASE NOTE** -  As a result of this Short Sale Offer, debt under your Mortgage Note may have/has been forgiven and there may be tax consequences to you.  Please consult your tax advisor.

**SPECIALIZED LOAN SERVICING LLC IS REQUIRED BY FEDERAL LAW TO ADVISE YOU THAT THIS COMMUNICATION IS FROM A DEBT COLLECTOR.**

**BANKRUPTCY NOTICE - IF YOU ARE A CUSTOMER IN BANKRUPTCY OR A CUSTOMER WHO HAS RECEIVED A BANKRUPTCY DISCHARGE OF THIS DEBT: PLEASE BE ADVISED THAT THIS NOTICE IS TO ADVISE YOU OF THE STATUS OF YOUR MORTGAGE LOAN.  THIS NOTICE CONSTITUTES NEITHER A DEMAND FOR PAYMENT NOR A NOTICE OF PERSONAL LIABILITY TO ANY RECIPIENT HEREOF, WHO MIGHT HAVE RECEIVED A DISCHARGE OF SUCH DEBT IN ACCORDANCE WITH APPLICABLE BANKRUPTCY LAWS OR WHO MIGHT BE SUBJECT TO THE AUTOMATIC STAY OF SECTION 362 OF THE UNITED STATES BANKRUPTCY CODE.  HOWEVER, IT MAY BE A NOTICE OF POSSIBLE ENFORCEMENT OF THE LIEN AGAINST THE COLLATERAL PROPERTY, WHICH HAS NOT BEEN DISCHARGED IN YOUR BANKRUPTCY.  IF YOU HAVE QUESTIONS, PLEASE CONTACT US AT 1-800-306-6057.**

**NOTICES OF ERROR AND REQUESTS FOR INFORMATION (INCLUDING QUALIFIED WRITTEN REQUESTS), MUST BE SUBMITTED IN WRITING TO: SPECIALIZED LOAN SERVICING LLC, P.O. BOX 630147, LITTLETON, CO  80163-0147**

# Exhibit 7

8742 Lucent Blvd., Suite 300, Highlands Ranch, CO  80129
Direct: 1-800-268-9706 Fax: 1-303-895-2513

Loan number ███████

All seller proceeds from the sale must be made payable to Specialized Loan Servicing LLC in the form of a cashier's check and remitted immediately after closing and mailed to:

Specialized Loan Servicing LLC
Attn: Bankruptcy Cashiering Department
8742 Lucent Blvd, Suite 300
Highlands Ranch, CO 80129

Proceeds may also be wired to:

Bank Name:          Wells Fargo Bank NA
Bank Address:       420 Montgomery Street San Francisco, CA 94104
Account Number:
Bank ABA Number:    █████████
Account Name:       SLS – Wire Clearing

Reference your name, SLS Loan number, and property address to ensure payments are properly applied.

Please complete the following information so that we may update our records:

Customer's Daytime telephone number: _____

Mailing Address: _____

City, State, Zip:_____

After full completion of this document, please email all pages to: Bankruptcy@SLS.net.


**My signature below acknowledges acceptance of the above terms and conditions.**


_____    _____
**LYNDA T. BUI (TRUSTEE)**    **Date**                                          **Date**


# Exhibit 7

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding. My business address is: **100 Spectrum Center Drive, Suite 600, Irvine, California 92618**

A true and correct copy of the foregoing document entitled (*specify*): **NOTICE OF SALE OF ESTATE PROPERTY** will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner stated below:

**1. TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF):** Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On (*date*) **December 18, 2018**, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

☒ Service information continued on attached page

**2. SERVED BY UNITED STATES MAIL**:
On (*date*) **December 18, 2018**, I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge <u>will be completed</u> no later than 24 hours after the document is filed.

☒ Service information continued on attached page

**3. SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL** (state method for each person or entity served): Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on (*date*) **December 18, 2018**, I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows. Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge <u>will be completed</u> no later than 24 hours after the document is filed.

**Via Email to Trustee's Broker and Selling Broker:**
**BK Global Real Estate Services, Patrick Butler  pbutler@bkginc.com**
**Sentinel Real Estate & Investments, Attn Gregory Shipp, <u>gregoryshipp@hotmail.com</u>**
**Sentinel Real Estate & Investments, Attn JamesonShipp, <u>jamesonshipp715@gmail.com</u>**

☐ Service information continued on attached page

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

| December 18, 2018 | Lorre Clapp | /s/ Lorre Clapp |
|---|---|---|
| *Date* | *Printed Name* | *Signature* |

This form is mandatory. It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*June 2012*                                                                                   **F 9013-3.1.PROOF.SERVICE**

## NEF SERVICE LIST

- **Lynda T. Bui (TR)**    trustee.bui@shbllp.com,  C115@ecfcbis.com *Chapter 7 Trustee*
- **Tyneia Merritt**    tye@mlawinc.com,  legal@mlawinc.com, *Attorney for Deutsche Bank National Trust Company, as Trustee, for IndyMac Home Equity Mortgage Loan Asset-backed Trust, Series 2006-H1*
- **Christina J O**    christinao@mclaw.org,  CACD_ECF@mclaw.org *Attorney for Lakeview Loan Servicing, LLC*
- **Valerie Smith**    claims@recoverycorp.com *NEF for Interested Party*
- **United States Trustee (RS)**    ustpregion16.rs.ecf@usdoj.gov *United States Trustee*
- **Julie J Villalobos**    julie@oaktreelaw.com,  oakecfmail@gmail.com, villalobosjr51108@notify.bestcase.com
*Attorney for the Debtors*

## EMAIL SERVICE LIST

**Via Email to Trustee's Broker and Selling Broker:**
**BK Global Real Estate Services, Patrick Butler  pbutler@bkginc.com**
**Sentinel Real Estate & Investments, Attn Gregory Shipp, gregoryshipp@hotmail.com**
**Sentinel Real Estate & Investments, Attn JamesonShipp, jamesonshipp715@gmail.com**

## US MAIL SERVICE LIST

**Judge's Copy**
**Attn:  Honorable Wayne E. Johnson, U.S. Bankruptcy Court, 3420 Twelfth Street, Suite 385, Riverside, CA 92501**

**Buyer: Yao Juan Xu, 4394 Hiwassee, Claremont, CA 91711**

**Secured Creditor:  MTC Financial dba Trustee Corps, Attn Marisol A. Nagata, Esq., General Counsel, 17100 Gillette Ave. Irvine, CA 92614**

**Secured Creditor: Specialized Loan Servicing LLC, Attn President or Manager, 8742 Lucent Blvd, Suite 300, Highlands Ranch, CO 80129**

**Tax Collector: San Bernardino County Treasurer/Tax Collector, 268 W.  Hospitality Lane, First Fl, San Bernardino, CA 924155**

## Creditors and Parties in Interest:

**DEBTORS**
PEGGY IRENE CLELLAND
JOEL DOUGLAS CLELLAND
1339 ALTA AVE
UPLAND, CA 91786-2812

**COURT MAIL LIST**
FRANCHISE TAX BOARD
BANKRUPTCY SECTION MS: A-340
P.O. BOX 2952
SACRAMENTO, CA 95812-2952

**COURT MAIL LIST**
CAPITAL ONE
ATTN: BANKRUPTCY
PO BOX 30285
SALT LAKE CITY, UT 84130-0285

**COURT MAIL LIST**
CREDIT ONE BANK NA
PO BOX 98872
LAS VEGAS, NV 89193-8872

**UNITED STATES TRUSTEE**
UNITED STATES TRUSTEE (RS)
3801 UNIVERSITY AVENUE, SUITE 720
RIVERSIDE, CA 92501-3255

**COURT MAIL LIST**
HAHN FIFE & COMPANY
790 E COLORADO BLVD 9TH FL
PASADENA, CA 91101-2193

**CLAIM FILED**
CAPITAL ONE BANK (USA), N.A.
PO BOX 71083
CHARLOTTE, NC  28272-1083

**COURT MAIL LIST**
CREDIT ONE BANK NA
PO BOX 98873
LAS VEGAS, NV 89193-8873

**COURT MAIL LIST**
EMPLOYMENT DEVELOPMENT DEPT.
BANKRUPTCY GROUP MIC 92E
P.O. BOX 826880
SACRAMENTO, CA 94280-0001

**COURT MAIL LIST**
CAPITAL ONE
PO BOX 30285
SALT LAKE CITY UT 84130-0285

**COURT MAIL LIST**
CENLAR
ATTN PRESIDENT OR MANAGER AGENT
P.O.BOX 77404
TRENTON, NJ 08628-6404

**CLAIM FILED**
INTERNAL REVENUE SERVICE
P.O. BOX 7346
PHILADELPHIA, PA 19101-7346

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*June 2012*                                                                                        **F 9013-3.1.PROOF.SERVICE**

**COURT MAIL LIST**
LENDING CLUB CORP
71 STEVENSON PL. STE # 300
SAN FRANCISCO, CA 94105-2985

**COURT MAIL LIST**
NAVIENT
ATTN: CLAIMS DEPT
PO BOX 9500
WILKES-BARR, PA 18773-9500

**COURT MAIL LIST**
PRA RECEIVABLES MANAGEMENT, LLC
PO BOX 41021
NORFOLK, VA 23541-1021

**COURT MAIL LIST**
RISE CREDIT
PO BOX 101808
FORT WORTH, TX 76185-1808

**COURT MAIL LIST**
SPECIALIZED LOAN SERVI
8742 LUCENT BLVD.#300
HIGHLANDS RANCH, CO 80129-2386

**COURT MAIL LIST**
TARGET
PO BOX 673
MINNEAPOLIS, MN 55440-0673

**NO ADDRESS**
**COURT MAIL LIST**
SCHOOLSFIRST FCU

**NO ADDRESS**
**COURT MAIL LIST**
DEUTSCHE   BANK   NATIONAL   TRUST
COMPANY, AS TRU

**COURT MAIL LIST**
LENDING CLUB CORP
71 STEVENSON ST
SUITE 300
SAN FRANCISCO, CA 94105-2985

**COURT MAIL LIST**
NAVIENT
PO BOX 9500
WILKES BARRE, PA 18773-9500

**CLAIM FILED**
PYOD,   LLC   ITS   SUCCESSORS   AND
ASSIGNS AS ASSI
OF FNBM, LLC
RESURGENT CAPITAL SERVICES
PO BOX 19008
GREENVILLE, SC 29602-9008

**COURT MAIL LIST**
SCHOOLS FIRST FCU
2115 N BROADWAY
SANTA ANA, CA 92706-2613

**COURT MAIL LIST**
SPECIALIZED LOAN SERVI
ATTN: BANKRUPTCY
8742 LUCENT BLVD.  SUITE 300
HIGHLANDS RANCH, CO 80129-2386

**CLAIM FILED**
VERIZON
BY AMERICAN INFOSOURCE LP AS AGENT
4515 N SANTA FE AVE
OKLAHOMA CITY, OK 73118-7901

**NO ADDRESS**
**COURT MAIL LIST**
CENLAR FSB

**NO ADDRESS**
**COURT MAIL LIST**
LAKEVIEW LOAN SERVICING, LLC, AND ITS
SUCCES

**COURT MAIL LIST**
MID AMERICA BANK & TRU
5109 S BROADBAND LN
SIOUX FALLS, SD 57108-2208

**COURT MAIL LIST**
OCWEN LOAN SEVICING LLC
1661 WORTHINGTON R
WEST PALM BEAC, FL 33409-6493

**COURT MAIL LIST**
POWER SALES UNIVERSITY
2901 WEST COAST HWY #200
NEWPORT BEACH, CA 92663-4045

**CLAIM FILED**
SCHOOLS FIRST FCU
PO BOX 11547
SANTA ANA, CA 92711-1547

**COURT MAIL LIST**
TARGET
C/O FINANCIAL & RETAIL SERVICES
MAILSTOP BT PO BOX 9475
MINNEAPOLIS, MN 55440-9475

RETURNED MAIL

**NO ADDRESS**
**COURT MAIL LIST**
COURTESY NEF

**NOT APPLICABLE**
**COURT MAIL LIST**
RIVERSIDE DIVISION
3420 TWELFTH STREET,
RIVERSIDE, CA 92501-3819

---

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*June 2012*

**F 9013-3.1.PROOF.SERVICE**